Joshua Konecky, SBN 182897
Nathan Piller SBN 300569
SCHNEIDER WALLACE
COTTRELL KONECKY WOTKYNS LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
Telephone:  (415) 421-7100
Facsimile:  (415) 421-7105
jkonecky@schneiderwallace.com
npiller@schneiderwallace.com

Jeremy Pasternak, SBN 181618
LAW OFFICES OF JEREMY PASTERNAK.
A Professional Corporation
445 Bush St., Sixth Floor
San Francisco, CA  94108
Telephone:     415.693.0300
Facsimile:     415.693.0393
jdp@pasternaklaw.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HERMAN OVERPECK and KEVIN STERLING, individually and on behalf of all others similarly situated, and as a proxy of the State of California on behalf of aggrieved employees, <br><br> Plaintiffs, <br> v. <br><br> FEDEX CORPORATION and FEDEX GROUND PACKAGE SYSTEM, INC., <br><br> Defendants. | **CASE NO.** _____ <br><br> **CLASS ACTION COMPLAINT;** <br><br> **LAW ENFORCEMENT ACTION** <br><br> **(1) CALIFORNIA LABOR CODE;** <br><br> **(2) CALIFORNIA INDUSTRIAL WELFARE COMMISSION WAGE ORDERS; and** <br><br> **(3) CALIFORNIA BUSINESS AND PROFESSIONS CODE §§ 17200, _et seq_.** <br><br> **(4) COMMON LAW** <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs, Herman Overpeck and Kevin Sterling, by and through their undersigned attorneys, hereby bring this Class Action Complaint against Defendants FedEx Corporation and FedEx Ground Package System, Inc. (collectively, "FedEx"), inclusive (hereinafter collectively

referred to as "FedEx" or "Defendants") and alleges as follows:

## NATURE OF THE CASE

1.   This case is brought as a class action and civil law enforcement action under California Labor Code, Common Law, and the Private Attorneys General Act ("PAGA") to address Defendants' violations of the California Labor Code, Common Law, Industrial Welfare Commission ("IWC") Wage Orders, and Unfair Competition Law ("UCL").

2.   The FedEx Defendants operate a freight transportation system with long-haul and local delivery components. Plaintiff Herman Overpeck worked for Defendants as a long-haul team truck driver for Defendants in California. Plaintiff Kevin Sterling worked for Defendants as a local delivery driver in California.

3.   Defendants have employed and/or jointly employed numerous long-haul team drivers and local delivery Drivers in California ("Drivers"), like Mr. Overpeck and Mr. Sterling in California, who work the long hours necessary to carry out Defendants' transportation business.

4.   The long-haul team Drivers work day and night, typically transporting loads up to and often over a thousand miles, overnight, five days per week, hauling freight as part of a two-driver team. For example, Mr. Overpeck worked with another Driver hauling freight along a dedicated route back and forth between Tracy, CA and Palm Springs, CA, for a 20-22 hour day (including driving, riding in a moving truck, fueling, truck inspections, hooking and unhooking trailers, coordinating with the recipient of the freight, and waiting for freight to be available, among other tasks). Mr. Overpeck ran this route 5 times per week, pushing his hours worked to 100 or more per week. He was paid for only a fraction of this work.

5.   The local delivery drivers similarly work long hours, in the range of 60-70 per week or more. For example, Mr. Sterling delivered packages to homes and businesses throughout Northern California for 12 or more hours per day, 5-6 days per week (including loading, driving, vehicle inspections, coordinating with customers, scanning packages and communicating with FedEx's managers, among other tasks).

6.   While FedEx takes the benefit of these long work hours that it requires and oversees, it attempts to offload responsibility onto its purported "independent service providers"

(ISPs). These ISPs are little more than job placement outfits that provide a labor force exclusively for FedEx's long-haul transportation business.  They are integrated within FedEx's business, and are in service of FedEx's needs.  FedEx labels Mr. Overpeck, Mr. Sterling, and the other Drivers "employees" of these ISPs.  FedEx also misrepresents to the Drivers and other third parties that the Drivers or nothing more than "vendors" of FedEx Ground, rather than individuals who are employed and/or jointly employed by FedEx.

7.     Before instituting the "ISP" model, FedEx's labor force of Drivers was made up of individuals that it hired directly and then labeled as "independent contractors," pursuant to a standard "Operating Agreement." Following years of litigation challenging the employment status of these drivers around the country—including multiple rulings from several courts around the country holding that FedEx had misclassified its Drivers as independent contractors when they were actually employees as a matter of law—FedEx pivoted to the ISP model, whereby it hires Drivers ostensibly through the ISPs. This ISP model, however, is just a continuation of FedEx's continuing practice of misrepresenting and obscuring the true relationship between FedEx and its Drivers:  that of employer-employee.  Like the independent contractor label before it, the ISP model is a subterfuge to abdicate responsibility for providing overtime pay, minimum wage guarantees, off-duty meal and rest periods, and other employment safeguards.  FedEx also uses the ISP label to exclude the Drivers from the employee benefit pension and welfare plans it provides to the rest of its employees, as well as to evade paying payroll taxes.

8.     Despite labeling the Drivers as just the "employees" of its so-called "ISPs," FedEx treats the Drivers as its ***own employees*** in every material respect.  FedEx retains the right to exercise extensive control over the way the Drivers perform their job duties, including, among other things, the right to control the Drivers' schedules, routes, customers, equipment, and uniforms, among other terms and conditions of the job.  As just a few examples:

i.     The Drivers are required to report to work at a FedEx designated "hub" or "terminal" location to start work, where they receive paperwork and instructions from FedEx managers, clerks and other employees in the FedEx offices.

ii.     FedEx requires that the Drivers use specific equipment and have such equipment

on their vehicles when they perform work for FedEx. For example, the long-haul team Drivers are directed by FedEx to use its equipment (dollies, hooks, etc.) to attach the trailers to the trucks, and the trucks at FedEx's "hub," using FedEx's fuel pumps and gas.  Similarly, the local delivery drivers are instructed to use FedEx's specific scanner devices to ensure that the packages they will be retrieving and delivering are entered into FedEx's system.

iii.   FedEx requires that the vehicles used by the Drivers to perform their work bear the "FedEx" name and logo, and are operated under FedEx's Department of Transportation (DOT) operating authority and number.

iv.   The Drivers must wear uniforms bearing the "FedEx" logo and color scheme, and also are required to carry FedEx-marked identification badges identifying them as affiliated with FedEx and displaying a FedEx-associated ID number, which they must present to FedEx's customers.

v.   FedEx assigns the specific routes, deliveries, customers, packages and freight that the Drivers must transport, and sets the "receiving time" windows within which the packages or freight must be delivered or dropped off with a customer.

vi.   Customer comments and complaints regarding the Drivers' job performance are made directly to FedEx, which uses its own discretion on what action to take.

vii.   FedEx retains the right to disqualify or terminate Drivers as they see fit, and even posts notices in the "hub" or "terminal" workplaces warning Drivers of the potential for suspension or other penalty for breaking FedEx's rules.

viii.   The work is supervised by FedEx, including through random inspections conducted by FedEx employees, GPS monitoring of the trucks as they transport freight, a computer system tracking when deliveries are made (upon being scanned into the FedEx system) and phone calls and other communications directly from FedEx's terminals and hubs to Drivers.

9.   For all these reasons and the others discussed herein, FedEx is an employer of the Drivers under California law. *See Martinez v. Combs* (2010) 49 Cal.4th 35, 64 ("to employ ...

under the [wage order], has three alternative definitions. It means: (a) to exercise control over the wages, hours, or working conditions, or (b) to suffer or permit to work, or (c) to engage, thereby creating a common law employment relationship.")

10.   Nonetheless, FedEx does not take responsibility for: (1) providing the Drivers with the same employee benefit pension and welfare plans it already provides to the rest of its employees, as required by California Law; or (2) paying the Drivers the wages they are owed and providing them with the other work protections to which they are entitled under the California Labor Code.

11.   FedEx's subterfuge of employing Drivers through intermediary ISPs, so as to distance itself from the obligations of an employer under the California Labor Code, has resulted in two discrete categories of violations, as explained below:

12.   **First Category: Wage and Hour Violations**: Despite working well over 40 hours per week and eight hours per day working for FedEx, the Drivers are paid for only a fraction of the work they perform. The unpaid work is made up, principally, of two components: (1) the time the long-haul team Drivers are confined to a the small "sleeper berth" of a moving truck while under the control of FedEx and in service of FedEx's objectives; and (2) the time long-haul and local delivery Drivers spend performing non-driving tasks at the direction of FedEx.  In addition, FedEx also fails to pay overtime premiums for work in excess of 8 hours in a day and/or 40 hours in a week.

13.   Unpaid Sleeper Berth Time: Long-haul Drivers work in a "team" configuration whereby one team member drives while the other attempts to rest in the truck's cramped "sleeper berth." The Department of Transportation's safety regulations require drivers who have already been driving for 11 hours to log 10 consecutive hours as "off duty" before driving again. By having the Drivers switch off in the "team configuration," FedEx can have the truck move continuously (save for restroom breaks, and other short stops), without stopping for 10 hours, like solo driver would have to. In turn, the "team" configuration maximizes efficiency for FedEx by enabling it to meet the tight delivery deadlines it promises to its customers. The time the Drivers spend in the sleeper berth is primarily for FedEx's benefit because it allows the trucks to move as

efficiently as possible and maximizes the amount of freight FedEx can deliver to its customers in the shortest amount of time.

14.     Because the truck is constantly moving in a "team" configuration, whereby the two team drivers switch off with one another, team members in Fed-Ex long-haul trucks are forced to attempt to rest in the truck's cramped sleeper berth ***while the truck is moving***. While in the "sleeper berth" of a moving truck, the Drivers cannot, of course, get out and do what they want; they are subject to FedEx's control and in fact are waiting in a workplace prescribed by FedEx, for FedEx's benefit.  The long haul Drivers also are monitored during this time via FedEx's GPS tracking system, and are subject to being contacted by FedEx's line haul office regarding their progress on the route.  FedEx employees in the line haul office periodically contact the Drivers to check on their progress, and require Drivers to reach out to them if they expect to be late to the destination.

15.     The long-haul Drivers are subject to the control of FedEx during the time they are confined to the truck's sleeper berth and are not free to use this time for their own purposes. Time during which employees are subject to the control of the employer and/or are unable to use the time effectively for their own purposes is compensable under California law. *Morrillion v. Royal Packing Co.*, 22 Cal. 4th 575 (2000).

16.     <u>Unpaid Non-Driving Work</u>: FedEx and the so-called "ISPs" alike also fail to fully compensate the local delivery and long-haul Drivers wages for time spent performing specific tasks at the behest of FedEx, including but not limited to loading, scanning packages, performing truck inspections, fueling, hooking and unhooking truck trailers, tending to truck breakdowns and maintenance issues, coordinating with customers and delivery agents, and remaining in a standby capacity for transports to be made available, among other tasks.

17.     <u>Noncompliant Meal and Rest Breaks</u>: Nor do the Drivers receive timely and compliant off-duty meal and rest periods, whether during the time they are in the sleeper berth, or all the other time they are out on the road, subject to the control of FedEx.

18.     FedEx simply does nothing to provide meal periods that are truly off-duty to the local delivery Drivers. There are no scheduled meal periods and FedEx does not purport to

provide the local delivery Drivers with meal periods. Instead, FedEx assigns the local delivery drivers a route with deliveries and pickups to take place within specified receiving time windows, placing time pressures on the Drivers that prevent them from taking even a short break to eat, during which they are completely relieved of duty. Instead of being completely relieved of duty for at least 30 consecutive minutes by the end of the fifth hour of work, and again by the end of the tenth hour of work, the local delivery Drivers must simply eat while they drive.

19.     The only thing FedEx arguably does to "provide" meal periods to the long-haul team Drivers is to have them abide by Department of Transportation (DOT) regulations, which merely require a single 30-minute break after 8 hours of driving.

20.     This policy is facially deficient in several respects. First, it flatly violates the Labor Code and applicable Wage Order, which require that employers provide a meal period *by the end of the fifth hour of work*, and *another by the end of the tenth hour of work*. Second, FedEx's policy only applies to the individual who is driving the truck. The other individual, who attempts to rest in the sleeper berth while his team member drives, is not provided any off-duty meal break even though he or she will routinely be confined to the sleeper berth for 10 or more hours while his or her team member drives. By definition, meal periods cannot be "off duty" or compliant, under California law, if the employee's movement is constrained, which it is while in the small sleeper berth of a moving truck.

21.     The policy is also deficient because FedEx does not completely relieve the Drivers of any duty, and leaves them subject to interruption even during these 30 minutes of non-driving time.  Indeed, the Drivers are required and/or are subject to having to perform various non-diving tasks during such time, including, but not limited to performing safety inspections and communicating with the other "team" driver, among other duties.

22.     FedEx also does nothing to authorize and permit rest periods that are in compliance with the Labor Code and the Wage Order. The Labor Code and Wage Order require that employees be completely relieved of duty and not subject to interruption for at least ten minutes, for every fourth hours of work or major fraction thereof. Again, FedEx does not purport to provide rest breaks to local delivery Drivers. And, FedEx's only arguable policy as to breaks for long haul

1  team Drivers is to have them comply with the DOT regulations, which do not provide for breaks,

2  aside from the 30-minutes of non-driving time after 8 hours of driving.

3       23.    Even if Drivers manage to take some kind of "break" from time to time, these

4  "breaks" are not free from physical constraint. In addition, the Drivers are required to, and/or

5  subject to being interrupted to perform non-diving tasks during such time.

6       24.    **Second Category: Denial of Employee Benefits**: FedEx has been the

7  administrator of several employee benefit pension and welfare plans, including but not limited to:

8  a 401(k) and/or retirement plan; a group life and supplemental life insurance plan; a short-term

9  disability plan; a group long term disability plan; a medical, dental, and vision care plan, and a

10  dependent care plan.

11       25.    FedEx purports to make these benefits plans available to all of its "employees."

12  However, FedEx denies these benefits to individuals—including Plaintiffs and the Class

13  Members—whose employee status FedEx has disclaimed, but who are nonetheless its employees

14  as a matter of law. FedEx's arbitrary denial of benefits to Plaintiffs and the Class Members is

15  contrary to law. *Vizcaino v. Microsoft Corp.*, 120 F.3d 1006 (9th Cir. 1997) (holding that workers

16  who are employees as a matter of law are eligible for benefits provided to acknowledged

17  employees under an employer-sponsored plan, even if the employer has labeled them as non-

18  employees).

19       26.    Defendants did not make such plans available to Plaintiffs and the Class Members,

20  but rather have made them available only to its acknowledged "employees," including some

21  FedEx drivers in similar ground transportation sectors of FedEx's business who FedEx has

22  classified as employees.

23       27.    FedEx abdicated its responsibilities as an employer by offloading them onto its so-

24  called "ISPs," despite treating Plaintiffs and Class Members as employees in every material

25  respect.  Although FedEx knows or should know that Plaintiffs and the Class Members are its

26  employees as a matter of law, FedEx has fraudulently misrepresented the employment status of

27  Plaintiffs and the Class Members by labeling them as merely "vendors" of FedEx rather than

28  employees.  As a result of this fraudulent misrepresentation, Plaintiffs and Class Members were

prevented from availing themselves of the benefits that FedEx makes available to its acknowledged employees.

28.     FedEx orchestrated this subterfuge with the specific intent of interfering with Plaintiffs' and Class Members' attainment of 401k contributions, matched contributions or retirement benefit rights, denying health insurance and other benefits, and making no contributions for Plaintiffs and Class Members' to either the 401k or retirement plans.

29.     FedEx knew or should have known that its "ISP" model and classification of the Drivers as mere employees of the ISPs is unlawful.  FedEx nonetheless intentionally misled the Plaintiffs and Class Members as to their employment status, or made such representations recklessly and/or negligently, and deliberately concealed from and/or failed to disclose to the Drivers the nature and extent of FedEx's actual control over them.

30.     Plaintiffs and Class Members have suffered irreparable damages and will continue to suffer such damages unless Defendants are restrained from violating the law.

31.     As further defined herein, Plaintiffs bring this class action on behalf of themselves and other similarly situated individuals who have worked as long-haul Drivers and/or local delivery Drivers for FedEx in California, while being labeled by FedEx as the "employees" of the so-called "ISPs" with which FedEx contracts, at any time beginning four years before the filing of this Complaint ("Class").

32.     Plaintiffs seek injunctive and declaratory relief, payment and/or credit for all employee benefits to which the Drivers are retroactively entitled, restitution and compensation all uncompensated work, liquidated and/or other damages as permitted by applicable law, and penalties, interest, attorneys' fees, and costs.

33.     Plaintiffs, on their own behalf and on behalf of all members of the Class, bring this action pursuant to the Common Law, Labor Code §§ 201-203, 226.3, 226.2, 226.7, 226.8, 400-410, 510, 512, 1182, 1174, 1194, 1197, and 1197.1; and California Code of Regulations, Title 8 §11090 §§ 7 & 11-12 (Wage Order No. 9). Plaintiffs challenge Defendants' policies of: (1) failing to provide Plaintiffs and the members of the Class all benefits to which they are entitled; (2) failing to pay Plaintiffs and the members of the Class minimum wage; (3) failing to pay Plaintiffs

and the members of the Class overtime; (4) failing to pay Plaintiffs and the Class straight time for all hours worked; (5) failing to provide, authorize, permit and/or make available meal and rest periods to Plaintiffs and the members of the Class as required by California law; (6) failing to provide Plaintiffs and the members of the Class with accurate, itemized wage statements; and (7) failing to timely pay Plaintiffs and the members of the Class full wages upon termination or resignation.  Plaintiffs seek compensation, damages, penalties, and interest to the full extent permitted by the California Labor Code, the applicable IWC Wage Orders, and the Common Law.

34.    Plaintiffs, on behalf of themselves and all others similarly situated, also bring this action pursuant to Business & Professions Code §§ 17200-17208, for unfair competition due to Defendants' unlawful violations of the Labor Code and IWC Wage Orders.  Plaintiffs, on behalf of themselves and all others similarly situated, seek declaratory and injunctive relief, including restitution under §17203.

35.    Plaintiffs, on behalf of themselves and all other aggrieved employees, also seek penalties under the Labor Code Private Attorneys General Act of 2004 (PAGA).  PAGA provides that any civil penalty assessed and collected by the Labor and Workforce Development Agency (LWDA) for violations of applicable provisions of the California Labor Code may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself and other current or former employees pursuant to procedures outlined in California Labor Code § 2699.3.  PAGA also provides that an aggrieved employee can bring a civil action on behalf of other aggrieved employees for violation of any other Labor Code provision that does not itself contain a civil penalty, in which case the civil penalties are assessed at $100 for each aggrieved employee per pay period for the initial violation and $200 for each aggrieved employee per pay period for each subsequent violation.  On August 27, 2018, Plaintiff Overpeck provided written notice to the LWDA and by certified mail to Defendants of the specific provisions of the California Labor Code alleged to have been violated, including the facts and theories to support the alleged violations. It has been more than sixty-five (65) calendar days since the postmark date of the notice given, and Plaintiffs have not received notification from the LWDA that it intends to investigate.  Accordingly, pursuant to Labor Code § 2699.3(C), Plaintiff has satisfied the

administrative prerequisites under California Labor Code Section 2699.3(a) to recover civil penalties against Defendants for violations of California Labor Code identified in this Complaint.

36.     Plaintiff, on behalf of himself and all others similarly situated, also requests reasonable attorneys' fees and costs pursuant to, inter alia, Labor Code §§ 225.5, 226, 226.7, 558, 1194, 1197, and 2699(g); and Code of Civil Procedure § 1021.5.

**JURISDICTION AND VENUE**

37.     Jurisdiction over Plaintiffs' state law claims is based upon the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2)(A), because the aggregated claims of the individual class members exceed the sum value of $5,000,000, exclusive of interest and costs, and this is a class action in which more than two-thirds of the proposed Class, on the one hand, and FedEx, on the other, are citizens of different states.

38.     This Court has supplemental jurisdiction over the California state law claims because they are so related to this action that they form part of the same case or controversy under Article III of the United States Constitution.

39.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), inasmuch as Defendants have offices, conduct business and can be found in the District, and the causes of action set forth herein have arisen and occurred in part in the District. For example, Plaintiff Sterling regularly worked for Defendants in this District.  Venue is further proper under 29 U.S.C. § 1132(e)(2) because Defendants have substantial business contacts within the state of California and in this District.

**THE PARTIES**

40.     Plaintiffs and all of the proposed Class members as set forth below are current or former long-haul team Drivers and short-haul Drivers for FedEx in California, who FedEx has labeled as the "employees" of its so-called "ISPs," at any time beginning four years before the filing of this Complaint.

41.     Plaintiff, Kevin Sterling, resides in California. Plaintiff Sterling worked as a short-haul Driver for FedEx throughout California, including in this Judicial District, and operated out of a terminal located in this Judicial District. Plaintiff Sterling has worked as a local delivery

1   Driver for FedEx throughout Northern California, from approximately January 2015 to the
2   present.

3        42.    Plaintiff, Herman Overpeck, resides in California. Plaintiff Overpeck worked as a
4   long-haul team Driver for FedEx throughout California between approximately February 19, 2018
5   through April 19, 2018.

6        43.    Defendant FedEx Corporation is and at all relevant times has been engaged in the
7   business of local delivery and long-haul transportation in the State of California. Defendant FedEx
8   Corporation has facilities and other places of business in this Judicial District.  Defendant FedEx
9   Corporation is headquartered in Memphis, TN.

10       44.    Defendant FedEx Ground Package System, Inc. is and at all relevant times has
11  been engaged in the business of local delivery and long-haul transportation in the State of
12  California. Defendant FedEx Ground Package System, Inc. has facilities and other places of
13  business in this Judicial District.  Defendant FedEx Ground Package System, Inc. is headquartered
14  in Moon Township, PA.

15       45.    Throughout this Complaint, any reference to "Defendants," "Defendant," or
16  "FedEx" is intended to refer to all Defendants jointly.

17  **FACTUAL ALLEGATIONS**

18      **A.**    **FedEx's long-haul and local delivery transportation system**

19       46.    Defendants operate a transportation system with local delivery and long-haul
20  components.

21       47.    FedEx operates a network of package handling "terminals" and freight
22  transportation "hubs" to serve its customers' transportation and delivery needs throughout
23  California. Plaintiffs and other Drivers have worked out of FedEx-owned and managed hubs and
24  terminals throughout California, where FedEx managers and other employees oversee and
25  manage the freight transportation and delivery operations.

26       48.    The Drivers service two segments of FedEx's business: (1) long haul freight
27  transportation; and (2) local delivery. Plaintiff Overpeck worked for Defendants as a long-haul
28  truck driver hauling freight for Defendants. Plaintiff Sterling worked for Defendants as a local

delivery driver transporting, retrieving and delivering packages for FedEx's customers.

49.     Plaintiffs and Class Members have performed their work on strict and predictable schedules pursuant to FedEx's freight transportation schedules and delivery windows.

50.     FedEx advertises its transportation and delivery services and negotiates with customers to provide the services that are performed by Plaintiffs and the Class Members.

51.     The work performed by Plaintiffs and other Drivers is an integral part of FedEx's business because FedEx is in the business of freight transportation and local delivery, and Plaintiffs and these other Drivers physically haul the freight, drive the vehicles, and make the deliveries.

**B.     FedEx controls the Drivers' hours and working conditions, and suffers and permits them to work the long hours necessary to carry out its transportation business**

52.     Defendants employ and/or jointly employee numerous Drivers in California, like Mr. Overpeck and Mr. Sterling, to work the long hours necessary to carry out Defendants' transportation business ("Drivers"). The Drivers, including Plaintiffs, have typically worked full-time and exclusively as FedEx Drivers, transporting freight or delivering packages to FedEx's customers, while wearing FedEx uniforms and driving vehicles bearing FedEx's logos and color scheme.

53.     The long-haul team Drivers work day and night, typically transporting loads up to and often over a thousand miles, overnight, five days per week, working as part of a two-driver team. For example, Mr. Overpeck worked with another Driver hauling freight along a dedicated route back and forth between Tracy, CA and Palm Springs, CA, for a 20-22 hour day (including driving, riding in a moving truck, fueling, truck inspections, hooking and unhooking trailers, coordinating with the recipient of the freight, and waiting for freight to be available, among other tasks). Mr. Overpeck ran this route 5 times per week, pushing his hours worked to 100 or more per week. He was paid for only a fraction of this work.

54.     The local delivery drivers similarly work long hours, up to and over 60-70 per week. For example, Mr. Sterling has delivered packages to homes and businesses throughout Northern California for 12 or more hours per day, 5-6 days per week (including loading, driving,

vehicle inspections, coordinating with customers, scanning packages and communicating with FedEx's managers, among other tasks).

55.     While FedEx takes the benefit of these long hours of work that it requires and oversees, it attempts to offload responsibility onto the so-called "Independent Service Providers" ("ISPs") who contract with FedEx. These entities are little more than job placement outfits who provide a labor force exclusively for FedEx's business.  They are integrated within FedEx's business, and are in service of FedEx's needs.  While FedEx calls Mr. Overpeck, Mr. Sterling, and the other Drivers "employees" of these "ISPs," and labels them as non-employee "vendors" of FedEx, the Drivers are in fact employees of FedEx under well-known legal criteria for defining the employee-employer relationship.  FedEx's misrepresentation to the contrary is a subterfuge to conceal FedEx's actual control over the Drivers and legal responsibility to them.

56.     Despite labeling the Drivers as the "employees" of these so-called "ISPs" and representing the same to the Drivers, FedEx treats the Drivers as its ***own employees*** in every material respect.  FedEx retains the right to exercise extensive control over the way the Drivers perform their job duties, including, among other things, the right to control the Drivers' schedules, routes, customers, equipment, uniforms, and other terms and conditions of the job.  As just a few examples:

    i.    The Drivers are required to report to work at a FedEx designated "hub" or "terminal" location to start work, where they receive paperwork and instructions from FedEx managers, clerks and other employees in the FedEx offices.

    ii.   FedEx requires that the Drivers use specific equipment and have such equipment on their vehicles when they perform work for FedEx. For example, the long-haul team Drivers are directed by FedEx to use its equipment (dollies, hooks, etc.) to attach the trailers to the trucks, and the trucks at FedEx's "hub," using FedEx's fuel pumps and gas.  As another example, the local delivery drivers are similarly instructed to use FedEx's specific scanner devices to ensure that the packages they will be retrieving and delivering are entered into FedEx's system.

    iii.  FedEx requires that the vehicles used by the Drivers to perform their work bear

the "FedEx" name and logo, and are operated under FedEx's Department of Transportation (DOT) operating authority and number.

iv.   The Drivers must wear uniforms bearing the "FedEx" logo and color scheme, and also are required to carry FedEx-marked identification badges identifying them as affiliated with FedEx and displaying a FedEx-associated ID number, which they must present to FedEx's customers.

v.   FedEx assigns the specific routes, deliveries, and customers, packages and freight that the Drivers must transport, and sets the receiving time windows within which the packages or freight must be delivered or dropped off with a customer.

vi.   Customer comments and complaints regarding the Drivers' job performance are made directly to FedEx, who uses its own discretion on what action to take.

vii.   FedEx also retains the right to disqualify or terminate Drivers as they see fit, and even posts notices in the "hub" or "terminal" workplaces warning Drivers of the potential for suspension or other penalty for breaking FedEx's rules.

viii.   The work is supervised by FedEx, including through random inspections conducted by FedEx employees, GPS monitoring of the trucks as they transport freight, a computer system tracking when deliveries are made (upon being scanned into the FedEx system) and phone calls and other communications directly from FedEx's terminals and hubs to Drivers.

57.   The named plaintiffs' experiences bring these common policies to life, as discussed below:

58.   **Plaintiff Overpeck**: Mr. Overpeck had to arrive at FedEx's Tracy, CA "hub" at 4 am, to start his workweek. From there, he reported to FedEx's line haul office, where he was presented with a "hook slip" by the clerk or other FedEx employee at the office, containing information about his work assignment, including trailer and dolly identification, and other instructions. Next, he would conduct an inspection of the tractor and trailers he would be using (which bore FedEx's corporate name, logo, and DOT motor carrier operating authority number), hook the trailers to one another and to the tractor, fill in information on the hook slip and other

1   paperwork, and then deliver the completed paperwork to the line haul office. At this point, the

2   FedEx employees in the line haul office would give him official FedEx paperwork regarding his

3   route, including times, destinations, weight, trailer numbers, and other information.  At times,

4   FedEx employees would conduct random truck inspections before he could depart.

5         59.     Thereafter, Mr. Overpeck would begin his 450 mile journey from Tracy, CA to

6   Palm Springs, CA, either driving the truck, or riding in the passenger seat or in the truck's

7   cramped "sleeper berth" while his team member drove.  During the trip, the truck might stop

8   briefly for the team members to use restroom and/or take a DOT-mandated meal break, but could

9   stop for little else given the time pressures imposed by FedEx's delivery deadlines.  Even when

10  he stopped, Mr. Overpeck was responsible for conducting truck inspections and coordinating with

11  his team member regarding the plan for the remainder of the trip.

12        60.     FedEx monitored the frequency and duration of his stops via the GPS monitoring

13  devices fitted on its trailers and tractors, and required Mr. Overpeck to call the line haul office

14  with an explanation if he was running late to his destination. When he arrived at the FedEx "Smart

15  Post" destination in Palm Springs, he would meet with another driver, and the two would

16  exchange trailers, including unhooking and re-hooking. Whichever team member had not driven

17  on the way to Palm Springs would drive back to Tracy with the new truckload, with the other

18  driver moving into the "sleeper berth" or passenger seat. Of course, Mr. Overpeck was not able

19  to use the time he was confined to a moving truck for his own purposes. He was in service of

20  FedEx and under FedEx's control during such time.

21        61.     Twenty to Twenty-two hours would pass by the time Mr. Overpeck and his team

22  member got back to Tracy, CA, sometime between midnight and 2 am on the following day. Mr.

23  Overpeck would have to start his next shift just 2-4 hours later, at 4 am. He repeated this process

24  five times per week.

25        62.     **Plaintiff Sterling**: Mr. Sterling begins each workweek with FedEx by arriving at

26  his assigned terminal at 5:30 a.m. Mr. Sterling has worked at several different FedEx terminals in

27  Northern California, but has spent the bulk of his tenure working out of the Newark, CA terminal.

28  Upon arrival, FedEx managers in the terminal office have provided Mr. Sterling with instructions

1   and paperwork showing his route assignment. Among other paperwork, Mr. Sterling has received

2   a "pickup list" showing his assigned deliveries, pickups, and "receiving time" windows within

3   which the pickups and deliveries must be completed. The FedEx managers also have provided

4   him with a specific scanner device that he has used to scan his assigned packages as they are

5   loaded onto his box truck. FedEx also has required Mr. Sterling to conduct a vehicle inspection

6   and record any problems.

7       63.   In the meantime, FedEx's "floor managers" walk around the terminal

8   communicating with one another on walkie talkie devices regarding the volume and status of the

9   packages to be delivered.  Mr. Sterling must obtain permission from a floor manager before

10   departing the terminal to embark on his assigned delivery route. On occasion, FedEx employees

11   have conducted random truck inspections before he can depart.  And, on every workday, FedEx

12   managers have inspected the vehicles before they have departed the facility.

13       64.   After receiving permission from a FedEx floor manager, Mr. Sterling departs to

14   begin making deliveries and pickups on his assigned route. When he arrives at a destination (a

15   home or business), he must get out of the truck, speak with the customer or with a corporate

16   representative and obtain their signature, and scan the packages to confirm delivery or pickup,

17   using FedEx's own required scanning device.  His routes have contained so many stops in such

18   tight windows that he has routinely been unable to stop for even 15 minutes for fast food. Instead,

19   Mr. Sterling has brought food from home and attempted to eat lunch on the road.

20       65.   If packages are "mis-delivered" or a customer or client representative complains

21   for another reason, a FedEx manager from back at the terminal calls Mr. Sterling on his cell phone

22   and requests an explanation. On many occasions, the FedEx managers have required Mr. Sterling

23   to come back to the terminal office to address delivery complaints, where they have reprimanded

24   him and required him to return to the customer location with a specific form to be signed.

25   Throughout the day, Mr. Sterling receives calls from FedEx managers back at the terminal to

26   request updates on his progress.

27       66.   By the time Mr. Sterling has completed his last delivery or pickup and returned to

28   the terminal, it would typically be 5:30 p.m., and often as late as 7:00 p.m, which amounts to a

typical workday of more than 12 hours. Mr. Sterling has repeated this same workday 5-6 times per week.

67.     For all these reasons and the others discussed herein, FedEx is an employer of Mr. Overpeck, Mr. Sterling, and the other Drivers under California law. *See Martinez v. Combs* (2010) 49 Cal.4th 35, 64 ("to employ ... under the [wage order], has three alternative definitions. It means: (a) to exercise control over the wages, hours, or working conditions, or (b) to suffer or permit to work, or (c) to engage, thereby creating a common law employment relationship.").

68.     Nonetheless, FedEx does not take responsibility for: (1) paying the Drivers the wages they are owed and providing them with the other work protections to which they are entitled under the California Labor Code; and (2) providing the Drivers with the same employee benefit pension and welfare plans it already provides to the rest of its employees, as required by California Law, as explained below:

**C.     FedEx's failure to pay wages for all hours of work**

69.      Despite working well over 40 hours per week driving for FedEx, the Drivers are paid for only a fraction of the work they perform. The unpaid work is made up, principally, of two components: (1) the time the long-haul team Drivers are confined to a small "sleeper berth" of a moving truck while under the control of FedEx and in service of FedEx's objectives; and (2) the time long-haul and local delivery Drivers spend performing non-driving tasks at the direction of FedEx.

70.     <u>Unpaid Sleeper Berth Time</u>: Long-haul Drivers work in a "team" configuration whereby one team member drives while the other attempts to rest in the truck's cramped "sleeper berth." The Department of Transportation's safety regulations require drivers who have already been driving for 11 hours to log 10 consecutive hours as "off duty" before driving again. By having the drivers switch off in the "team configuration," FedEx can have the truck move continuously (save for restroom breaks, and other short stops), without stopping for 10 hours, like solo driver would have to. In turn, the "team" configuration maximizes efficiency for FedEx by enabling it to meet the tight delivery deadlines it promises to its customers. The time the Drivers spend in the sleeper berth is primarily for FedEx's benefit because it allows the trucks to move as

efficiently as possible and maximizes the amount of freight FedEx can deliver to its customers in the shortest amount of time.

71.     Because the truck is constantly moving in a "team" configuration, whereby the two team drivers switch off with one another, team members in Fed-Ex long-haul trucks are forced to attempt to rest in the truck's cramped sleeper berth *while the truck is moving*. While in the "sleeper berth" of a moving truck, the Drivers cannot, of course, get out and do what they want; they are subject to FedEx's control and in fact are waiting in a workplace prescribed by FedEx, for FedEx's benefit.  The Drivers also are monitored during this time via FedEx's GPS tracking system, and are subject to being contacted by FedEx's line haul office regarding their progress on the route.  FedEx employees in the line haul office periodically contact the Drivers to check on their progress, and require Drivers to reach out to them if they expect to be late to the destination.

72.     The Drivers are subject to the control of FedEx during the time they are confined to the truck's sleeper berth are not free to use this time for their own purposes. Time during which employees are subject to the control of the employer and are unable to use the time effectively for their own purposes is compensable under California law. *Morrillion v. Royal Packing Co.*, 22 Cal. 4th 575 (2000).

73.     <u>Unpaid Non-Driving Work</u>: FedEx and the so-called "ISPs" alike also fail to fully compensate the local delivery and long-haul Drivers wages for time spent performing specific tasks at the behest of FedEx, including but not limited to loading, scanning packages, performing truck inspections, fueling, hooking and unhooking truck trailers, tending to truck breakdowns and maintenance issues, coordinating with customers and delivery agents, and remaining in a standby capacity for transports to be made available, among other tasks.

**D.     FedEx's failure to provide timely, off-duty meal and rest periods**

74.     Defendants fail to provide the Drivers an opportunity to take timely, off-duty meal periods of at least 30 minutes by the end of each fifth hour of work, whether during the time they are in the sleeper berth, or all the other time they are out on the road, and have failed to pay Drivers premium wages when meal breaks are not taken.

75.     FedEx simply does nothing to provide meal periods that are truly off-duty to the local delivery Drivers. There are no scheduled meal periods and FedEx does not purport to provide the local delivery Drivers with meal periods. Instead, FedEx assigns the local delivery drivers a route with specific deliveries and pickups to take place within specified time windows, placing onerous time pressures on the Drivers that prevent them from taking even a short break to eat, during which they are completely relieved of duty. Instead of being completely relieved of duty for at least 30 consecutive minutes by the end of the fifth hour of work, and again by the end of the tenth hour of work, the local delivery Drivers must simply eat while they drive.

76.     The only thing FedEx arguably does to "provide" meal periods to the long-haul team Drivers is to have them abide by Department of Transportation (DOT) regulations, which merely require a single 30-minute break after 8 hours of driving.

77.     This policy is facially deficient in several respects. First, it flatly violates the Labor Code and applicable Wage Order, which require that employers provide a meal period *by the end of the fifth hour of work*, and *another by the end of the tenth hour of work*. Second, FedEx's policy only applies to the individual who is driving the truck. The other individual that is part of the long-haul team, who attempts to rest in the sleeper berth while his team member drives, is not provided any off-duty meal break even though he or she will routinely be confined to the sleeper berth for 10 or more hours while his or her team member drives. By definition, meal periods cannot be "off duty" or compliant, under California law, if the employee's movement is constrained, which it is while in the small sleeper berth of a moving truck.

78.     The policy is also deficient because FedEx does not completely relieve the Drivers of any duty, and leaves them subject to interruption even during these 30 minutes of non-driving time.  Indeed, the Drivers are required and/or are subject to having to perform various non-diving tasks during such time, including, but not limited to performing safety inspections and communicating with the other "team" driver, among other duties.

79.     FedEx also does nothing to authorize and permit rest periods that are in compliance with the Labor Code and the Wage Order. The Labor Code and Wage Order require that employees be completely relieved of duty and not subject to interruption for at least ten minutes,

for every fourth hours of work or major fraction thereof. Again, FedEx does not purport to provide rest breaks to local delivery Drivers. And, FedEx's only arguable policy as to breaks of any kind for long haul team Drivers is to have them comply with the DOT regulations, which do not provide for breaks, aside from the 30-minutes of non-driving time after 8 hours of driving.

80.    Even if Drivers manage to take some kind of "break" from time to time, these "breaks" are not free from physical constraint. In addition, the Drivers are required to, and/or subject to being interrupted to perform non-diving tasks during such time.

### E.    FedEx's Denial of Employment Benefits

81.    At all relevant times, FedEx served as administrator of several employee benefit pension and welfare plans, including but not limited to: a 401(k) and/or retirement plan; a group life and supplemental life insurance plan; a short-term disability plan; a group long term disability plan; a medical, dental, and vision care plan, and a dependent care plan.

82.    FedEx purports to make these benefits plans available to all of its "employees." However, FedEx denies these benefits to individuals—including Plaintiffs and the Class Members—whose employee status FedEx has disclaimed, but who are nonetheless its employees as a matter of law. FedEx's arbitrary denial of benefits to Plaintiffs and the Class Members is unlawful. *Vizcaino v. Microsoft Corp.*, 120 F.3d 1006 (9th Cir. 1997) (holding that workers who are employees as a matter of law are eligible for benefits provided to acknowledged employees under employer-sponsored plan, even if the employer has labeled them as non-employees).

83.    Defendants have not made such plans available to Plaintiffs and the Class Members, but rather have made them available only to its acknowledged "employees," including FedEx drivers in similar ground transportation sectors of FedEx's business who FedEx has classified as employees.

84.    FedEx abdicated its responsibilities as an employer by offloading them onto its so-called "ISPs," despite treating Plaintiffs and Class Members as employees in every material respect.  Although FedEx knows or should know that Plaintiffs and the Class Members are its employees as a matter of law, FedEx has fraudulently misrepresented Plaintiffs' and the Class Members' status as mere "vendors" rather than employees of FedEx.  As a result of this fraudulent

1   misrepresentation, Plaintiffs and Class Members have been barred from availing themselves of

2   the benefits that FedEx makes available to its acknowledged employees.

3       85.     FedEx orchestrated this subterfuge with the specific intent of interfering with

4   Plaintiffs' and Class Members' attainment of 401k contributions, matched contributions or

5   retirement benefit rights, denying health insurance and other benefits, and making no

6   contributions for Plaintiffs and Class Members' to either the 401k or retirement plans.

7       86.     FedEx knew or should have known that its "ISP" model and classification of the

8   Drivers as mere employees of the ISPs is unlawful.  Indeed, the Drivers are working under

9   substantially the same conditions and are subject to substantially the same policies as when FedEx

10  employed its prior "independent contractor" model, which numerous courts held to be unlawful.

11  FedEx nonetheless intentionally misled the Plaintiffs and Class Members as to their employment

12  status, or made such representations recklessly and/or negligently, and deliberately concealed

13  from and/or failed to disclose to the Drivers the nature and extent of FedEx's actual control over

14  them.

15      87.     Plaintiffs and Class Members have suffered irreparable damages and will continue

16  to suffer such damages unless Defendants are restrained from violating the law.

17      **F.      FedEx's willful disregard for the responsibilities of an employer**

18      88.     FedEx knew or should have known that the Drivers have been its employees under

19  California law and entitled to the benefits under its employer sponsored plan that it makes

20  available to its acknowledged employees, minimum wages, overtime, pay for all hours worked,

21  compliant meal and rest breaks, and all other rights and benefits to which Drivers are entitled

22  under the California Labor Code and Wage Order No. 9.

23                      **CLASS ACTION ALLEGATIONS**

24      89.     Plaintiffs bring Causes of Action One through Eleven as a class action on behalf

25  of themselves and all others similarly situated pursuant to Federal Rule of Civil Procedure 23(a),

26  (b)(2) and/or (b)(3). Plaintiffs Bring the PAGA Cause of Action as a law enforcement action, not

27  as a class action.

28      90.     Plaintiffs seek to represent the following class (referred to herein as the "Class"):

"All individuals who have performed long haul transports and/or local deliveries for FedEx Corporation and/or FedEx Ground Package System, Inc. ("FedEx Ground") in California, while labeled as the "employees" of the so-called "Independent Service Providers" ("ISPs") with whom FedEx Ground contracts, but not paid as employees of FedEx, at any time beginning four years before the filing of this Complaint, until resolution of this action." ("Class").

91.     Plaintiffs seek to represent the following three subclasses within the broader Class defined above:

Subclass One:  "All individuals who have performed long haul transports in a team mode and in a truck with a sleeper berth for FedEx Corporation and/or FedEx Ground Package System, Inc. ("FedEx Ground") in California, while labeled as the "employees" of the so-called "Independent Service Providers" ("ISPs") with whom FedEx Ground contracts, but not paid as employees of FedEx, at any time beginning four years before the filing of this Complaint, until resolution of this action." ("Class").

Subclass Two:  "All individuals who are not part of Subclass One, but who still have performed long haul transports for FedEx Corporation and/or FedEx Ground Package System, Inc. ("FedEx Ground") in California, while labeled as the "employees" of the so-called "Independent Service Providers" ("ISPs") with whom FedEx Ground contracts, but not paid as employees of FedEx, at any time beginning four years before the filing of this Complaint, until resolution of this action." ("Class").

Subclass Three:  "All individuals who have performed local deliveries for FedEx Corporation and/or FedEx Ground Package System, Inc. ("FedEx Ground") in California, while labeled as the "employees" of the so-called "Independent Service Providers" ("ISPs") with whom FedEx Ground contracts, but not paid as employees of FedEx, at any time beginning four years before the filing of this Complaint, until resolution of this action." ("Class").

**G.     Ascertainability**

92.     The proposed Class is ascertainable because it is comprised of a discrete, well defined and objectively identifiable group – all individuals who have worked as team long-haul Drivers or short-haul Drivers for FedEx, while being labeled by FedEx as the "employees" of the so-called "ISPs" with which FedEx contracts, within the last four years. The Class members have been assigned Driver ID numbers and are easily identifiable from Defendants' business records.

**H.     Numerosity**

93.     Defendants have employed hundreds or thousands of Drivers in California within four years preceding the filing of this Complaint.  Class members are therefore far too numerous to be individually joined in this lawsuit.

**I.     Existence and Predominance of Common Questions of Law and/or Fact**

94.     Common questions of law and/or fact exist as to the members of the Class and, in addition, common questions of law and/or fact predominate over questions affecting only individual members of the Class.  The common questions include the following:

i.      Whether the FedEx Defendants are employers and/or joint employers of the Drivers under applicable law;

ii.     Whether Defendants have suffered or permitted the Drivers to work for them;

iii.    Whether Defendants have "engaged" Plaintiffs as employees, within the meaning of the term as it is used in the applicable Wage Order;

iv.     Whether Defendants retain the right to assign the Drivers their load transport assignments;

v.      Whether Defendants retain the right to exercise control, directly or indirectly, over the Drivers' work hours;

vi.     Whether Defendants retain the right to exercise control, directly or indirectly, over the Drivers' working conditions;

vii.    Whether the Drivers are entitled to benefits that Defendants have made available to acknowledged employees;

viii.   Whether Defendants have fraudulently misrepresented the Drivers' employment status;

ix.     Whether Defendants have converted the Drivers' interest in employment benefits by intentionally interfering with the Drivers' eligibility to receive the same employment benefits that Defendants provide to their acknowledged employees;

x.      Whether Defendants owe the Drivers payment and/or credit for all benefits they already provide to their acknowledged employees;

xi.     Whether Defendants owe the Drivers minimum wages;

xii.    Whether Defendants were required to provide the Drivers with off duty meal and rest periods in compliance with the Labor Code and Wage Order No. 9;

xiii.   Whether Defendants fail to provide the Drivers an opportunity to take off-duty meal periods as required by applicable law;

xiv.    Whether Defendants fail to authorize and permit the Drivers rest periods as required by applicable law;

xv.     Whether Defendants owe the Drivers meal and rest period premiums for meal and rest periods that were not provided;

xvi.    Whether Defendants were required to provide the Drivers with legally compliant wage statements under Cal. Labor Code § 226(a);

xvii.   Whether Drivers who had their employment relationship with Defendants terminated are entitled to penalty wages for Defendants' failure to timely pay all outstanding amounts of compensation owed upon termination of the employment relationship;

xviii.  Whether Defendants' policies and practices have resulted in violation of one or more of the Labor Code Provisions cited herein;

xix.    Whether Defendants' policies and practices are unlawful, unfair and/or fraudulent business practices in violation of California Business & Professions Code §§17200, *et seq.*;

xx.     The injunctive and/or monetary relief to which Plaintiff and the Class may be entitled as a result of the violations alleged herein.

**J.      Typicality**

95.    Plaintiffs' claims are typical of the claims of the Class.  Defendants' common course of conduct of denying the Drivers the employment benefits and wages to which they are entitled under the law caused Plaintiffs and the proposed Class to sustain the same or similar injuries and damages.  Plaintiffs' claims are thereby representative of and co-extensive with the claims of the proposed Class.

/ / / /

**K.     Adequacy**

96.     Plaintiffs are adequate representatives of the Class because they are members of the Class and their interests do not conflict with the interests of the members of the Class they seek to represent.  Plaintiffs have retained counsel competent and experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously.  Plaintiffs and their counsel will fairly and adequately protect the interests of members of the Class.

**L.     Superiority**

97.     The class action is superior to other available means for the fair and efficient adjudication of this dispute.  The injury suffered by each member of the Class, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Defendants economically feasible.  Furthermore, individualized litigation increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court, and avoids the problem of inconsistent judgments.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
**Fraudulent Misrepresentation**
**Common Law**

98.     Plaintiffs reallege and incorporate by reference the above paragraphs as though fully set forth below.

99.     Plaintiffs and the Class were purportedly hired to work as employees of the "ISPs" with which FedEx contracts, pursuant to the terms of these contracts.  In fact, FedEx knew or should have known, at all times, that its designation of the Plaintiffs and Class Members as solely the employees of the ISPs was improper and that Plaintiffs and all persons similarly situated were FedEx's own employees entitled to the benefits and protections of all laws enacted for employees.

100.     FedEx intentionally misled Plaintiffs, Class Members and third parties as to the Drivers' employment status with FedEx, and/or made such representations recklessly.  As just one example, FedEx has labeled the Drivers as merely "vendors" of FedEx, rather than FedEx's

employees.

101.   FedEx has engaged in this fraudulent misrepresentation for the purpose of realizing unjust profits from Plaintiffs' and Class Members' work and/or to avoid paying them benefits and wages to which they are entitled, as well as payroll taxes, thereby unlawfully increasing its competitiveness.

102.   At all material times, FedEx knew, or should have known, that the material representation made to Plaintiffs and Class Members concerning their employment status were false and fraudulent.

103.   At all material times, FedEx intended to and did induce Plaintiffs and Class Members to reasonably and justifiably rely to their detriment on the false and fraudulent representations made to them by FedEx concerning their employment status, including their purported disentitlement from participating in FedEx's employer-sponsored benefits plans for which FedEx makes all of its acknowledged employees eligible.

104.   Further, as a direct and proximate result of the misrepresentations of Defendant, Plaintiffs and the other Class Members have suffered additional damages in that they were deprived of wages and other benefits of employment, including the 401(k) and/or retirement plan; group life and supplemental life insurance plan; short-term disability plan; group long term disability plan; medical, dental, and vision care plan, and dependent care plan.

**SECOND CAUSE OF ACTION**
**Conversion**
**Common Law**

105.   Plaintiffs reallege and incorporate by reference the above paragraphs as though fully set forth below.

106.   Plaintiffs and the Class have been entitled to the same benefits under FedEx's employer's sponsored benefits plans, including the 401(k) and/or retirement plan; group life and supplemental life insurance plan; short-term disability plan; group long term disability plan; medical, dental, and vision care plan, and dependent care plan, all of which it makes available to its acknowledged employees.

107.   FedEx intentionally and substantially interfered with Plaintiffs' and the Class

Members' entitlement to these benefits by arbitrarily excluding the Drivers from eligibility, despite providing the same benefits to its acknowledged employees, and by misrepresenting to the Drivers that they were merely "vendors" rather than FedEx's employees as a matter of law. As a result FedEx's interference and misrepresentation, Plaintiffs and the Class Members were prevented from having access to the benefits to which they are entitled under applicable law.

108.    Plaintiffs and the Class Members did not consent to FedEx's intentional interference.

109.    Further, as a direct and proximate result of FedEx's interference and misrepresentation, Plaintiffs and the other Class Members have suffered additional damages in that they were deprived of wages and other benefits of employment, including the 401(k) and/or retirement plan; group life and supplemental life insurance plan; short-term disability plan; group long term disability plan; medical, dental, and vision care plan, and dependent care plan.

**THIRD CAUSE OF ACTION**
**Failure to Pay for All Hours Worked**
**Labor Code §§ 201, 202, 204, 221-223, and 226.2**

110.    Plaintiffs reallege and incorporate by reference the above paragraphs as though fully set forth below.

111.    California Labor Code §200 defines wages as "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis or other method of calculation."

112.    California Labor Code §§ 201 and 202 require an employer to pay all wages earned but unpaid immediately upon the involuntary discharge of an employee or within seventy-two (72) hours of an employee's voluntary termination of employment.

113.    California Labor Code §204 provides that employers must compensate employees for all hours worked "twice during each calendar month, on days designated in advance by the employer as the regular paydays."

114.    California Labor Code §§221-223 prohibit employers from withholding and deducting wages, or otherwise artificially lowering the wage scale of an employee.

115.    Defendants employ and/or jointly employ Plaintiffs and the Class.

116. Defendants have failed to fully compensate Plaintiffs Sterling and Overpeck and the other Class members for time spent performing tasks other than driving, including but not limited to loading, scanning packages, performing truck inspections, fueling, hooking and unhooking truck trailers, tending to truck breakdowns and maintenance issues, coordinating with customers and delivery agents, and remaining in a standby capacity for transports to be made available, among other tasks.

117. Defendants also have maintained and continue to maintain a policy of denying the long-haul team Drivers any compensation for time in the truck's cramped "sleeper berth" while the truck is in motion (being driven by the other "team" Driver), even though the Class members are under Defendants' control while waiting in the truck's sleeper berth entirely for FedEx's benefit.

118. Defendants' unlawful compensation scheme has denied Plaintiffs and the Class the straight time wages to which they are entitled under the law. As explained above, Plaintiffs and members of the Class frequently have worked time for which they are not compensated at their regular rates of pay, as determined by the Industrial Welfare Commission.

119. Accordingly, Defendants have artificially reduced Plaintiffs' and its other Drivers' pay rates by denying them compensation for time spent on non-driving tasks and time during which they are under Defendants' control while waiting in the sleeper berth of a moving truck, primarily for Defendants' benefit.

120. As a proximate result of these violations, Defendants have damaged Plaintiffs and the Class in amounts to be determined according to proof at trial.

121. Pursuant to Labor Code §218.6 and/or Civil Code §3287(a), Plaintiffs and other members of the Class are entitled to recover pre-judgment interest on wages earned, but not paid every pay period.

122. Plaintiffs, on behalf of themselves and all others similarly situated, seek all unpaid compensation, damages, penalties, interest and attorneys' fees and costs, recoverable under applicable law set forth below.

////

**FOURTH CAUSE OF ACTION**
**Failure to Provide Meal Periods, or Compensation in Lieu Thereof**
**Labor Code §§ 226.7 and 512; and Cal. Code Regs., Title 8 §11090 ¶¶ 7 & 11**

123.    Plaintiffs hereby reallege and incorporate by reference the paragraphs above as though fully set forth herein.

124.    California Labor Code §§ 226.7 and 512, and Title 8 of the California Code of Regulations § 11090, ¶ 11 require Defendants to provide meal periods to Plaintiffs and members of the proposed Class.  California Labor Code §§ 226.7 and 512, and Title 8 of the California Code of Regulations § 11090, § 11 prohibit employers from employing an employee for more than five hours without a meal period no less than  thirty (30) minutes and for more than ten (10) hours without a second meal period.  Unless the employee is relieved of all duty during the thirty (30) minute meal period, the employee is considered "on-duty" and the meal or rest period is counted as time worked.

125.    Defendants employ and/or jointly employ Plaintiffs and the Class.

126.    Defendants do not provide Plaintiffs and the other Class members with meal periods during which they are completely relieved of duty for at least thirty (30) minutes by the fifth hour of work and again by the tenth hour of work.

127.    FedEx simply does nothing to provide meal periods that are truly off-duty to the local delivery Drivers.

128.    With regard to the long-haul team Drivers, FedEx merely has them abide by Department of Transportation (DOT) regulations, which require only a single 30 minute break after 8 hours of driving.  This policy is facially deficient under the Labor Code and Wage Order, which require that employers provide a meal period by the end of the fifth hour of work, and another by the end of the tenth hour of work. FedEx's policy also only applies to the individual who is driving the truck, leaving the other team Driver who rests in the sleeper berth while his team member drives, without any meal period during the time he or she is confined to the sleeper berth for ten or more hours at a time.

129.    Defendants' policy also is deficient in that FedEx does not completely relive the Drivers of any duty, and leaves them subject to interruption even during these 30 minutes of non-driving time.  The Drivers are required to, and or subject to being called upon to perform various

CLASS ACTION COMPLAINT AND LAW ENFORCEMENT ACTION

non-diving tasks during such time.

130.    Defendants have failed to perform their obligations to provide Plaintiffs and Class Members off-duty meal periods by the end of the fifth hour of work and a second meal period by the end of the tenth hour of work.

131.    Defendants also have failed to pay Plaintiffs and Class Members one (1) hour of pay for each off-duty meal period that they have been denied.  Defendants' conduct described herein violates California Labor Code §§226.7 and 512 and Title 8 of the California Code of Regulations §11090.

132.    Therefore, Plaintiffs and members of the putative Class are entitled to compensation for Defendants' failure to provide meal periods, plus interest, expenses, and costs of suit pursuant to California Labor Code §§226.7(b) and Title 8 of the California Code of Regulations §11090.

### FIFTH CAUSE OF ACTION
**Failure to Provide Rest Periods, or Compensation in Lieu Thereof**
**California Labor Code §§ 226.7 and Cal. Code Regs., Title 8 § 11090 ¶ 12**

133.    Plaintiffs hereby reallege and incorporate by reference the paragraphs above as though fully set forth herein.

134.    California Labor Code §226.7 and Title 8 of the California Code of Regulations § 11050, ¶ 12 requires Defendants to authorize and permit rest periods to Plaintiff and members of the proposed Class at the rate of ten minutes net rest time per four hours or major fraction thereof.

135.    Defendants employ and/or jointly employ Plaintiffs and the Class.

136.    FedEx does nothing to authorize and permit rest periods that are in compliance with the Labor Code and the Wage Order. FedEx's only arguable policy as to breaks of any kind is to have its long-haul team Drivers comply with the DOT regulations, which do not provide for breaks, aside from the 30-minutes of non-driving time after 8 hours of driving.

137.    Even if Drivers manage to take some kind of "break" from time to time, these "breaks" are not duty free or free from the possibility of interruption. The Drivers are required to, and/or subject to being required to perform non-diving tasks during such time.

138.    Under both California Labor Code § 226.7 and Title 8 of the California Code of Regulations §11090, ¶ 12, an employer must pay an employee who was denied a required rest

period one (1) hour of pay at the employee's regular rate of compensation for each workday that the rest period was not provided.

139.    At all relevant times herein, Defendants have failed to perform their obligations to authorize and permit Plaintiffs and Class Members to take rest periods as set forth above.

140.    Defendants also failed to pay Plaintiffs and Class Members one (1) hour of pay for each rest period they have been denied.  Defendants' conduct described herein violates California Labor Code §§ 226.7 and Title 8 of the California Code of Regulations §11090.

141.    Therefore, Plaintiffs and members of the putative Class are entitled to compensation for Defendants' failure to authorize and permit rest periods, plus interest, and costs of suit pursuant to California Labor Code §§ 226.7(b), and Title 8 of the California Code of Regulations § 11090.

## SIXTH CAUSE OF ACTION
### Failure to Pay Minimum Wages
### California Labor Code §§ 1182.11, 1182.12, 1194, 1197, and 1197.1

142.    Plaintiffs hereby reallege and incorporate by reference the allegations set forth above as if fully set forth herein.

143.    During the applicable statutory period, California Labor Code §§1182.11, 1182.12 and 1197, and the Minimum Wage Order were in full force and effect and required that the Class members receive the minimum wage for all hours worked at a rate not less than nine dollars ($9.00) per hour from July 1, 2014 to December 31, 2015; and at a rate not less than ten dollars ($10.00) per hour commencing on January 1, 2016.

144.    Defendants employ and/or jointly employ Plaintiffs and the Class.

145.    The Class members, including Mr. Overpeck and Mr. Sterling, have regularly worked 60 or more hours, and often over 100 hours per week, for Defendants.  They have worked tirelessly to comply with FedEx's policies and meet its expectations.

146.    The Drivers are not paid at all—much less at the statutory minimum wage—for a large portion of these hours. For example, long-haul team Drivers are not paid for the extensive time they must spend confined to the truck's cramped "sleeper berth" while the truck is in motion (being driven by the other "team" Driver), even though the Class members—including Mr.

Overpeck—are under Defendants' control while they wait in the truck's sleeper berth entirely for FedEx's benefit. This time is compensable as a matter of law.

147.    Nor are the Drivers fully compensated for time spent performing other non-driving tasks, including but not limited to loading, scanning packages, performing truck inspections, fueling, hooking and unhooking truck trailers, tending to truck breakdowns and maintenance issues, coordinating with customers and delivery agents, and remaining in a standby capacity for transports to be made available, among other tasks.

148.    Defendants' unlawful compensation scheme has denied Plaintiffs and the Class the minimum wages to which they are entitled under the law. As explained above, Plaintiffs and members of the Class frequently have worked time for which they are not compensated even at the statutory minimum wage, as determined by the Industrial Welfare Commission.

149.    Labor Code §1194.2 provides that, in any action under §1194 to recover wages because of the payment of a wage less than minimum wage fixed by an order of the commission, an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon.

150.    Pursuant to Labor Code §218.6 or Civil Code §3287(a), Plaintiffs and other members of the Class are entitled to recover pre-judgment interest on wages earned, but not paid every pay period.

151.    As a direct and proximate result of the unlawful acts and/or omissions of Defendants, Plaintiffs and members of the Class have been deprived of minimum wages in an amount to be determined at trial, and are entitled to a recovery of such amount, plus liquidated damages, plus interest thereon, attorneys' fees, and costs of suit pursuant to Labor Code §§ 1194, 1194.2 and 1197.1.

**SEVENTH CAUSE OF ACTION**
**Failure to Pay Overtime Compensation**
**California Labor Code §§ 510, 515.5, 1194, and 1198 *et seq.***

152.    Plaintiffs hereby reallege and incorporate by reference the paragraphs above as though fully set forth herein.

153.    California Labor Code §§ 510 and 1198, and IWC Wage Order No. 9, §3, provides

1   that employees in California shall not be employed more than eight (8) hours in any workday or

2   forty (40) hours in any workweek unless they receive additional compensation beyond their

3   regular wages in amounts specified by law.

4        154.   Defendants employ and/or jointly employ Plaintiffs and the Class.

5        155.   Defendants have failed to pay Plaintiffs, and other members of the Class, overtime

6   compensation for the hours they worked in excess of the maximum hours permissible by law

7   under California Labor Code §§ 510 and 1198, and IWC Wage Order No. 9, §3.  Defendants

8   require and/or suffer and permit Plaintiffs and other members of the Class to work hours in excess

9   of 8 in a day and 12 in a day.

10       156.   Defendants' failure to pay additional, premium rate compensation to Plaintiffs and

11   members of the Class for their overtime and double time hours worked has caused Plaintiffs and

12   Class Members to suffer damages in amounts which are presently unknown to them but which

13   exceed the jurisdictional threshold of this Court and which will be ascertained according to proof

14   at trial.

15       157.   Pursuant to Labor Code §218.6 or Civil Code §3287(a), Plaintiffs and other

16   members of the Class are entitled to recover pre-judgment interest on wages earned, but not paid

17   every pay period.

18       158.   As a direct and proximate result of the unlawful acts and/or omissions of

19   Defendants, Plaintiffs and Class Members have been deprived of overtime and double time

20   compensation in an amount to be determined at trial.  Plaintiffs and other members of the class

21   request recovery of overtime and double time compensation according to proof, interest,

22   attorney's fees and costs of suit pursuant to California Labor Code §§1194(a), 554, 1194.3 and

23   1197.1, as well as the assessment of any statutory penalties against Defendants, in a sum as

24   provided by the California Labor Code and/or other statutes.

25                        **EIGHTH CAUSE OF ACTION**
                    **Failure to Keep Accurate Payroll Records**
26                  **California Labor Code §§ 1174 & 1174.5**

27       159.   Plaintiffs hereby reallege and incorporate by reference the allegations set forth

28   above as if fully set forth herein.

160.    Defendants employ and/or jointly employ Plaintiffs and the Class.

161.    California Labor Code §1174 requires Defendants to maintain payroll records showing the actual hours worked daily by Plaintiff and the Class members.

162.    Defendants knowingly, intentionally, and willfully have failed to maintain payroll records showing the actual hours worked by Plaintiffs and the Class members as required by California Labor Code §1174 and in violation of §1174.5.  As a direct result of Defendants' failure to maintain payroll records, Plaintiff and the Class members have suffered actual economic harm as they have been precluded from accurately monitoring the number of hours they have worked and thus seeking all accrued minimum wages and agreed upon wages.  As a direct and proximate result of the unlawful acts and/or omissions of Defendants, Plaintiffs and the Class members are entitled to recover damages and civil penalties in an amount to be determined at trial, plus interest, attorneys' fees, and costs of suit.

### NINTH CAUSE OF ACTION
**Failure to Furnish Accurate Wage Statements**
**California Labor Code § 226**

163.    Plaintiffs hereby reallege and incorporate by reference the paragraphs above as though fully set forth herein.

164.    California Labor Code §226(a) provides that every employer must furnish each employee with an accurate itemized wage statement, in writing, showing nine pieces of information, including: 1) gross wages earned; 2) total hours worked by the employee; 3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece rate basis; 4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item; 5) net wages earned; 6) the inclusive dates of the period for which the employee is paid; 7) the name of the employee and the last four digits of his or her social security number or an employee identification number other than a social security number; 8) the name and address of the legal entity that is the employer; and 9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

165.    California Labor Code §226(e)(1) provides that an employee suffering an injury

1   as a result of a knowing and intentional failure to provide a statement accurately itemizing the

2   information set forth in Labor Code §226(a), then the employee is entitled to recover the greater

3   of all actual damages or fifty-dollars ($50.00) for the initial violation and one-hundred dollars

4   ($100.00) for each subsequent violation, up to a maximum of four-thousand dollars ($4,000.00).

5   166.   California Labor Code §226(e)(2) provides that an employee is deemed to suffer

6   injury if the employer fails to provide wages statements that show, among other items, the amount

7   of the gross wages or net wages paid to the employee during the pay period, the total hours worked

8   by the employee during the pay period, all deductions, and all applicable hourly rates in effect

9   during the pay period. Plaintiffs' and the Class members' wage statements do not comply with

10  these requirements, including because they do not show the Class Members actual employer and

11  address, but rather the name and address of the ISP, nor do they show the accurate amount of

12  gross or net wages and deductions, and do not show all applicable hourly rates.  Accordingly,

13  Plaintiffs and the class members have suffered injury as a result of Defendant's violations of

14  California Labor Code §226.

15  167.   Defendants employ and/or jointly employ Plaintiffs and the Class.

16  168.   Defendants intentionally and willfully failed to furnish Plaintiff and Class

17  members with timely, accurate, itemized statements showing total hours worked, gross wages

18  earned, net wages earned, and the applicable hourly rates as required by California Labor Code

19  §226(a).

20  169.   Plaintiffs and the Class members have been injured by Defendants' violation of

21  California Labor Code §226(a) because they have been denied their legal right to receive and their

22  protected interest in receiving, accurate, itemized wage statements, and could not promptly and

23  easily ascertain from the wage statement alone their total hours worked, gross wages earned, net

24  wages earned, and the applicable hourly rates, among other required information.

25  170.   Plaintiffs and Class Members have also been injured as a result of having to bring

26  this action to obtain correct wage information following Defendants' refusal to comply with many

27  requirements of the California Labor Code.  As a result, Defendants are liable to Plaintiffs and

28  Class members, for the amounts, penalties, attorneys' fees, and costs of suit provided by

1   California Labor Code §226(e).

2       171.   Pursuant to Labor Code §218.6 and/or Civil Code §3287(a), Plaintiffs and other

3   members of the Class are entitled to recover pre-judgment interest on wages earned, but not paid

4   every pay period.

5       172.   Plaintiffs, on behalf of themselves and the proposed Class, request an assessment

6   of penalties as stated herein and other relief as described below.

7       173.   Plaintiffs, on behalf of themselves and all others similarly situated, seek all unpaid

8   compensation, damages, penalties, interest and attorneys' fees and costs, recoverable under

9   applicable law set forth below.

10                         **TENTH CAUSE OF ACTION**
                           **Waiting Time Penalties**
11                         **California Labor Code §§ 201-203**

12      174.   Plaintiffs hereby reallege and incorporate by reference the allegations set forth

13  above as if fully set forth herein.

14      175.   California Labor Code §201 requires an employer who discharges an employee to

15  pay all compensation due and owing to said employee immediately upon discharge.  California

16  Labor Code §202 requires an employer to promptly pay compensation due and owing to said

17  employee within seventy-two (72) hours of that employee's termination of employment by

18  resignation.  California Labor Code §203 provides that if an employer willfully fails to pay

19  compensation promptly upon discharge or resignation, as required under California Labor Code

20  §§201-202, then the employer is liable for waiting time penalties in the form of continued

21  compensation for up to thirty (30) work days.

22      176.   Defendants employ and/or jointly employ Plaintiffs and the Class.

23      177.   Members of the Class have left their employment with Defendants during the

24  statutory period.  Defendants willfully failed and refused, and continue to willfully fail and refuse,

25  to timely pay minimum wages, overtime compensation and sums wrongfully deducted from

26  compensation to proposed Class Members whose employment with Defendants have ended or

27  been terminated at any point during the statutory period.  As a result, Defendants are liable to

28  Plaintiffs and other formerly employed members of the proposed Class for waiting time penalties,

together with interest thereon, attorneys' fees, and costs of suit, under California Labor Code §203.

178.     Plaintiffs, on behalf of the proposed Class, request waiting time penalties pursuant to California Labor Code §203 and as described below.

### ELEVENTH CAUSE OF ACTION
**Unfair Competition and Unlawful Business Practices**
**California Business and Professions Code §§ 17200, et seq.**

179.     Plaintiffs hereby reallege and incorporate by reference the allegations set forth above as if fully set forth herein.

180.     California Business and Professions Code §17200 defines unfair competition to include, "unlawful, unfair or fraudulent business practices."

181.     Plaintiffs and all proposed Class members are "persons" within the meaning of Business and Professions Code §17204, who have suffered injury in fact and have lost money or property as a result of Defendants' unfair competition.

182.     Defendants have been committing, and continue to commit, acts of unfair competition by engaging in the unlawful, unfair and fraudulent business practices and acts described in this Complaint, including, but not limited to:

    i.     Violations of the Common Law, including fraudulent misrepresentation and conversion;

    ii.     violations of California Labor Code §§ 1197, 1197.1, 1198;

    iii.     violations of California Labor Code § 510;

    iv.     violations of California Labor Code §§ 226.7 and 512;

    v.     violations of California Code Regulations, Title 8 § 11090 ¶¶ 7, 11, and 12;

    vi.     violations of California Labor Code §§ 204, 221-223 and 400-410;

    vii.     violations of California Labor Code §§ 1174 and 1174.5;

    viii.     violations of California Labor Code §226; and

    ix.     violations of California Labor Code §§ 201-202.

183.     Plaintiffs reserve the right to identify additional unfair and unlawful practices by Defendants as further investigation and discovery warrants.

184.    As a result of its unlawful and/or unfair acts, Defendants have reaped and continue to reap unfair benefits and illegal profits at the expense of Plaintiffs and proposed Class members. Defendants' unlawful and/or unfair conduct has also enabled Defendants to gain an unfair competitive advantage over law-abiding employers and competitors.   Defendants must be enjoined from this activity and made to restore to Plaintiffs and proposed Class members their wrongfully withheld benefits, wages (and interest thereon), and related statutory penalties, pursuant to Business and Professions Code §§ 17202 and 17203.

185.    Business and Professions Code §17203 provides that the Court may restore to an aggrieved party any money or property acquired by means of unlawful and unfair business practices.

186.    Plaintiffs seek a court order requiring an audit and accounting of the employer-sponsored benefits and payroll records to determine the amount of restitution of the value of all employee benefits and all unpaid wages owed to themselves and members of the proposed Class, according to proof, as well as a determination of the amount of funds to be paid to current and former employees that can be identified and located pursuant to a court order and supervision.

187.    Plaintiffs, on behalf of themselves and the proposed Class, request restitution of unpaid wages, wage premiums, injunctive relief and other relief as described below.

## TWELFTH CAUSE OF ACTION
### Statutory Penalties Pursuant to PAGA (Labor Code §§2698, *et seq.*)
### (On behalf of All Aggrieved Employees)

188.    Plaintiffs hereby reallege and incorporate by reference the allegations set forth above as if fully set forth herein.

189.    At all times herein set forth, the Private Attorneys General Act of 2004 (PAGA) applied to Defendants' employment of Plaintiffs and the proposed Class members.

190.    At all times herein set forth, the PAGA provided that any provision of law under the California Labor Code that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency (LWDA) for violations of the California Labor Code may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself and other current or former employees pursuant to procedures outlined in

California Labor Code § 2699.3.

191.    A civil action under PAGA may be brought by an "aggrieved employee," any person that was employed by the alleged violator and against whom one or more of the alleged violations was committed.

192.    Plaintiffs have been employed by Defendants and the alleged violations were committed against them during their time of employment and they are, therefore, aggrieved employees.  Plaintiffs and other employees are "aggrieved employees" as defined by California Labor Code §2699(c) in that they are all current or former employees of Defendants, and one or more of the alleged violations were committed against them.

193.    At all times herein set forth, the PAGA provided that for the violation of any Labor Code provision that does not itself contain a civil penalty, there are established civil penalties of $100 for each aggrieved employee per pay period for the initial violation and $200 for each aggrieved employee per pay period for each subsequent violation.  Cal. Lab. C. § 2699(f).

194.    Pursuant to California Labor Code section 2699.3, an aggrieved employee, such as Plaintiffs, may pursue a civil action arising under PAGA after the following requirements have been met:

    i.    The aggrieved employee must file written notice online with the LWDA and by certified mail to the employer of the specific provisions of the California Labor Code alleged to have been violated, including the facts and theories to support the alleged violations;

    ii.    The notice filed with the LWDA must be accompanied by a filing fee of seventy-five dollars ($75);

    iii.    The LWDA shall notify the employer and the aggrieved employee or representative by certified mail that it does not intend to investigate the alleged violations within sixty (60) calendar days of the postmark date of the notice received pursuant to paragraph (1). Upon receipt of that notice or if no notice is provided within sixty-five (65) calendar days of the postmark date of the notice given, the aggrieved employee may commence a civil action pursuant to Section

2699.

195.    On August 27, 2018, Plaintiff Overpeck provided written notice online to the LWDA and by certified mail to Defendants of the specific provisions of the California Labor Code alleged to have been violated, including the facts and theories to support the alleged violations.

196.    It has now been more than 65 days since Mr. Overpeck's notice, and the LWDA has not provided notice of its intent to investigate. Accordingly, Plaintiffs have satisfied the administrative prerequisites under California Labor Code Section 2699.3(a) to recover civil penalties against Defendants for violations of California Labor Code stated above.

197.    Plaintiffs and the other aggrieved employees are entitled to and seek to recover civil penalties for Defendants' violations of the Labor Code during the applicable limitations period in the following amounts:

    i.    For violations of California Labor Code Section 226.8(a), Fifteen Thousand Dollars ($15,000.00) for each of Defendants' violations in addition to any other penalties or fines permitted by law (penalty amounts established by California Labor Code  § 226.8(b)) or for pattern and practice violations of California Labor Code Section 226.8(a), Twenty-Five Thousand Dollars ($25,000.00) for each of Defendants' violations in addition to any other penalties or fines permitted by law (penalty amounts established by California Labor Code § 226.8(c));

    ii.    For violations of California Labor Code Sections 200, 201, 202, 226.7, and 1198, one hundred dollars ($100.00) for each aggrieved employee per pay period for each initial violation and two hundred dollars ($200.00) for each aggrieved employee per pay period for each subsequent violation (penalty amounts established by California Labor Code  § 2699(f)(2));

    iii.    For violations of California Labor Code Section 1197, one hundred dollars ($100.00) for each aggrieved employee per pay period for each initial violation and two hundred dollars and fifty ($250.00) for each aggrieved employee per pay period for each subsequent violation regardless of whether the initial violation is

intentionally committed (penalty amounts established by California Labor Code § 1197.1);

iv.   For violations of California Labor Code Sections 221 and 223 one hundred dollars ($100.00) for each aggrieved employee for each initial violation and two hundred dollars ($200.00) for each aggrieved employee for each subsequent or willful violation, plus 25 percent of the amount unlawfully withheld. (penalty amounts established by California Labor Code  §225.5);

v.    For violations of California Labor Code Section 510 and 512 and Wage Order No. 9 Sections 3, 9, 11, and 12, fifty dollars ($50.00) for each aggrieved employee for each initial violation for pay period for which the employee was underpaid and one hundred dollars ($100.00) for each underpaid employee for each pay period for which the employee was underpaid (penalty amounts established by California Labor Code § 558);

vi.   For violations of California Labor Code Section 1174, five hundred dollars ($500.00) for each of Defendants' violations in addition to any other penalties or fines permitted by law (penalty amounts established by California Labor Code  § 1174.5);

vii.  For violations of California Labor Code Section 226, two hundred fifty dollars ($250.00) per employee for initial violation and one thousand dollars ($1,000.00) per employee for each subsequent violation (penalty amounts established by California Labor Code § 226.3); and

viii. For violations of California Labor Code Section 558, fifty dollars ($50.00) for initial violation, fifty dollars ($50.00) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover unpaid wages; for each subsequent violation, one hundred dollars ($100.00) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.

198.    Pursuant to California Labor Code Section 2699(g), Plaintiffs, on behalf of themselves and the other aggrieved employees, are entitled to an award of reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the proposed Class they seek to represent in this action, request the following relief:

a.   That the Court determine that this action may be maintained as a class action under Federal Rules of Civil Procedure, Rule 23;

b.   For an order appointing Plaintiffs as representatives of the Class

c.   For an order appointing Plaintiffs' attorneys as Class Counsel;

d.   That the Court find that Defendants have been in violation of the Common Law by engaging in fraudulent misrepresentation and conversion;

e.   For an order that requires FedEx to pay or otherwise credit Plaintiffs and the Class for all employee benefits to which they are retroactively entitled, as restitution of damages incurred as a direct and proximate result of Defendants' fraudulent misrepresentation and conversion;

f.   That the Court find that Defendants have been in violation of applicable provisions of the California Labor Code and IWC Wage Order No. 9 by failing to pay each member of the proposed Class for all hours worked, including minimum wages and wages at the designated rate;

g.   That the Court find that Defendants have been in violation of California Labor Code §§226.7 and 512 by failing to provide Plaintiffs and members of the Class with meal periods and therefore owe compensation under California Labor Code §226.7(b) with respect to violations of California Code of Regulations, Title 8 §11090, ¶¶ 7 and 11;

h.   That the Court find that Defendants have been in violation of California Labor Code §§226.7 by failing to authorize and permit rest periods for Plaintiffs and members of the Class, and therefore owe compensation under California Labor

Code §226.7(b) with respect to violations of California Code of Regulations, Title 8 §11090, ¶ 12;

i.  That the Court find that Defendants have violated the recordkeeping provisions of California Labor Code §§ 1174 and 1174.5 as to Plaintiffs and the Class;

j.  That the Court find that Defendants have been in violation of California Labor Code § 226 by failing to timely furnish Plaintiffs and members of the Class with itemized statements accurately showing the identity and address of the employer, total hours worked, vacation benefits, bonus benefits, and wages earned by each of them during each pay period;

k.  That the Court find that Defendants have been in violation of California Labor Code §§201 and 202 and therefore owe waiting time penalties under California Labor Code §203 for willful failure to pay all compensation owed at the time of termination of employment to Plaintiffs and Class members;

l.  That the Court find that Defendants have committed unfair and unlawful business practices, in violation of California Business and Professions Code §17200, *et seq.*, by their violations of the Common Law, Labor Code and Wage Orders as described above;

m.  That the Court order an accounting of the employer-sponsored benefits and payroll records and/or driver logs to determine what restitution is owed and to whom, pursuant to California Business and Professions Code §17203;

n.  That the Court award to Plaintiffs and the proposed Class members compensation and restitution for the value of all benefits withheld and wages owed, including minimum wages, wages at the designated rate, and overtime, for all wage deductions, for the value of all meal and rest periods that were not provided or authorized by Defendants, and for all reasonable and necessary business expenses incurred by Drivers;

o.  Prejudgment interest under Cal. Lab. C. § 218.6; Cal Civ. C. §§ 3287, 3289, and other applicable law;

p.  That the Court award to Plaintiffs and the proposed Class members statutory and/or civil penalties as provided herein, including but not limited to Labor Code §§ 203, 210, 226, 2699(a), 2699(f), and California Business and Professions Code § 17202;

q.  That Plaintiff and the Class be awarded reasonable attorneys' fees and costs pursuant to Labor Code §§ 203, 225.5, 226, 1194, 1197, 2699(g)(1), and 2804, Code of Civil Procedure § 1021.5,  and/or other applicable law;

r.  Any and all other applicable statutory penalties, as provided by law; and

s.  For such other and further relief as this Court deems just and proper.

Respectfully submitted,

DATED:   December 14, 2018                **SCHNEIDER WALLACE COTTRELL KONECKY WOTKYNS**

By: ____*/s/ Nathan Piller*____
        Nathan B. Piller
        Attorneys for Plaintiff

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable as a matter of right.

DATED:   December 14, 2018                    **SCHNEIDER WALLACE COTTRELL KONECKY WOTKYNS**

By:   */s/ Nathan Piller*
Nathan B. Piller
Attorneys for Plaintiff

CLASS ACTION COMPLAINT AND LAW ENFORCEMENT ACTION