UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HERMAN OVERPECK, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>FEDEX CORPORATION, et al.,<br><br>Defendants. | Case No. 18-cv-07553-PJH<br><br>**ORDER DENYING MOTION TO STRIKE AND GRANTING MOTION TO COMPEL ARBITRATION**<br><br>Re: Dkt. No. 161 |

Before the court is defendant FedEx Ground Package System, Inc.'s ("FedEx Ground" or "defendant") motion to strike or, in the alternative, compel arbitration. The matter is fully briefed and suitable for decision without oral argument. Having read the parties' papers[1] and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court rules as follows.

## BACKGROUND

On December 14, 2018, plaintiffs Herman Overpeck and Kevin Sterling filed a putative class action against FedEx Corporation ("FedEx") and FedEx Ground. Dkt. 1.

---

[1] Plaintiffs filed a response to defendant's motion, (Dkt. 172), to which defendant argues that a response by a party not implicated by the motion is procedurally improper, (Reply at 14). Defendant cites Civil Local Rule 7-3(b), which only allows a statement of nonopposition by a party "against whom the motion is directed" as prohibiting plaintiffs' response. Defendant also analogizes to Rule 56, which only allows parties to a claim to oppose that claim. Reply at 14. Plaintiffs cite no rule that affirmatively permits them to file a "response" regarding claims to which they are not a party and regarding a motion not directed against them. In a situation such as this with no clear rule, the court notes that it has the "inherent power to control [its] docket." Ready Transp., Inc. v. AAR Mfg., Inc., 627 F.3d 402, 404 (9th Cir. 2010) (citation omitted). Because plaintiffs cite no rule permitting a response to a motion not directed to them and failed to request the court's permission to file a response, the court STRIKES the response.

On January 29, 2020, plaintiffs filed a First Amended Complaint ("FAC"), which added a new named plaintiff, Shannon Sobaszkiewicz, and alleged twelve causes of action: (1) Common Law Fraudulent Misrepresentation; (2) Common Law Conversion; (3) Failure to Pay for All Hours Worked, Cal. Labor Code §§ 201, 202, 204, 221–23, and 226.2; (4) Failure to Provide Meal Periods, Cal. Labor Code §§ 226.7, 512 and 8 Cal. Code Regs. § 11090; (5) Failure to Provide Rest Periods, Cal. Labor Code § 226.7 and 8 Cal. Code Regs. § 11090; (6) Failure to Pay Minimum Wages, Cal. Labor Code §§ 1182.11–82.12, 1194, and 1197–97.1; (7) Failure to Pay Overtime Compensation, Cal. Labor Code §§ 510, 515.5, 1194, and 1198 et seq.; (8) Failure to Keep Accurate Payroll Records, Cal. Labor Code §§ 1174–74.5; (9) Failure to Furnish Accurate Wage Statements, Cal. Labor Code § 226; (10) Waiting Time Penalties, Cal. Labor Code §§ 201–03; (11) Unfair Competition and Unlawful Business Practices, Cal. Bus. & Prof. Code § 17200, et seq.; and (12) Private Attorneys General Act violations, Cal. Labor Code § 2698, et seq.  Dkt. 85.

On April 1, 2020, the court granted defendant's motion to join necessary parties (Dkt. 105), and plaintiffs re-filed their FAC alleging the same causes of action, but also added the necessary parties as defendants.  Dkt. 119.  One of those defendants is JJ&L Trucking, Inc. ("JJ&L" or "cross-claimant") who filed an answer and crossclaim ("Crossclaim") against defendants FedEx and FedEx Ground alleging one cause of action for violation of the Unfair Competition Law ("UCL"), Cal. Bus & Prof. Code § 17200.  Dkt. 148.

FedEx Ground operates a network of package handling terminals and freight transportation hubs.  FAC ¶ 48.  Plaintiffs are current or former long-haul and local delivery drivers who provided transportation and delivery services to defendant in California.  Id. ¶ 40.  Plaintiffs allege that previously FedEx Ground's labor force was made up of individual drivers that FedEx Ground hired directly and labeled as independent contractors.  Id. ¶ 7.  At some point, FedEx Ground pivoted to a so-called "Independent Service Provider" ("ISP") model whereby an ISP entity employs the drivers

2

but then the drivers provide transportation and delivery services on behalf of FedEx Ground pursuant to service agreements between the ISPs and FedEx Ground. Id. The essence of plaintiffs' claim is that they are actually FedEx employees despite being employed by the ISPs, i.e., that defendants are joint employers along with the ISPs. E.g., id. ¶ 98. Cross-claimant JJ&L was one such ISP. Crossclaim ¶ 3.

According to the crossclaim, JJ&L invested over $1,000,000 in order to obtain its ISP agreement with FedEx Ground. Id. Pursuant to the ISP agreement, FedEx Ground exerted significant control over the drivers hired by JJ&L including a stringent application process that enabled FedEx Ground to control which drivers can be hired by JJ&L. Id. ¶ 4. FedEx Ground required all trucks used by JJ&L to display FedEx labeling and JJ&L was only allowed to use its trucks for the benefit of FedEx Ground. Id. ¶ 5. The crossclaim further alleges that FedEx Ground unilaterally set contractor and employee pay rates, which were not negotiable and the pay rates were far below what was required for JJ&L to remain viable. Id. at 18.[2] JJ&L alleges that in light of its significant investment, it had no option but to continue to attempt to operate its business, even at a financial loss, to avoid the complete loss of its investment. Id. ¶ 12. JJ&L appears[3] to allege that it had no option but to cease performing under its ISP. Id.

**DISCUSSION**

**A.    Legal Standard**

    **1.    Rule 12(f)**

Federal Rule of Civil Procedure 12(f) provides that the court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The function of a [Rule] 12(f) motion to strike

---

[2] Several paragraph numbers in the crossclaim are erroneously repeated and, for clarity, the court refers to the page number of the crossclaim for those paragraph numbers that are repeated.

[3] The allegation is: "Ultimately, JJ&L had no option to cease performing under its ISP." Crossclaim ¶ 13. It is unclear if cross-claimant meant to allege it had not option "but" to cease performing (as in, JJ&L no longer performs under the ISP agreement) or it had no option to cease performing (as in, because of the initial investment, JJ&L felt it could not cease performing). The distinction does not impact the outcome of defendant's motion.

3

1   is to avoid the expenditure of time and money that must arise from litigating spurious

2   issues by dispensing with those issues prior to trial." Whittlestone, Inc. v. Handi-Craft

3   Co., 618 F.3d 970, 973 (9th Cir. 2010) (quoting Fantasy, Inc. v. Fogerty, 984 F.2d 1524,

4   1527 (9th Cir. 1993), rev'd on other grounds, 510 U.S. 517 (1994)).

5        Motions to strike are not favored and "should not be granted unless it is clear that

6   the matter to be stricken could have no possible bearing on the subject matter of the

7   litigation." Colaprico v. Sun Microsystem, Inc., 758 F. Supp. 1335, 1339 (N.D. Cal. 1991)

8   (citing Naton v. Bank of Cal., 72 F.R.D. 550, 551 n.4 (N.D. Cal. 1976)).  When a court

9   considers a motion to strike, it "must view the pleadings in light most favorable to the

10  pleading party." Uniloc v. Apple, Inc., No. 18-CV-00364-PJH, 2018 WL 1640267 (N.D.

11  Cal. Apr. 5, 2018) (quoting In re 2TheMart.com, Inc., Sec. Litig., 114 F. Supp. 2d 955,

12  965 (C.D. Cal. 2000)).  A court must deny the motion to strike if there is any doubt

13  whether the allegations in the pleadings might be at issue in the action.  In re

14  2theMart.com, 114 F. Supp. 2d at 965 (citing Fantasy, Inc., 984 F.2d at 1527).  However,

15  a motion to strike is proper when a defense is insufficient as a matter of law.  Chiron

16  Corp. v. Abbot Labs., 156 F.R.D. 219, 220 (N.D. Cal. 1994).

17      **2.**    **Motion to Compel Arbitration**

18       Any party bound to an arbitration agreement that falls within the scope of the

19  Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq., may bring a motion to compel

20  arbitration and stay the proceeding pending resolution of the arbitration.  9 U.S.C. §§ 3–4;

21  Lifescan, Inc. v. Premier Diabetic Servs., Inc., 363 F.3d 1010, 1012 (9th Cir. 2004).  The

22  FAA requires the court to compel arbitration of issues covered by the arbitration

23  agreement.  Dean Witter Reynolds, Inc., v. Byrd, 470 U.S. 213, 218 (1985).

24       In ruling on a motion to compel arbitration under the FAA, the district court's role is

25  typically limited to determining whether (i) an agreement exists between the parties to

26  arbitrate; (ii) the claims at issue fall within the scope of the agreement; and (iii) the

27  agreement is valid and enforceable.  Lifescan, 363 F.3d at 1012; Chiron Corp. v. Ortho

28  Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000).  If the answers are yes, the

court must enforce the agreement.  Lifescan, 363 F.3d at 1012.

Regarding whether an agreement exists to arbitrate, the "first principle" that underscores the U.S. Supreme Court's arbitration jurisprudence is that "[a]rbitration is strictly a matter of consent, and thus is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration."  Granite Rock Co. v. Int'l B'hd of Teamsters, 561 U.S. 287, 299 (2010); First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 943 (1995).  Thus, "a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate that dispute."  Granite Rock, 561 U.S. at 297.

Regarding the validity of the agreement, the FAA provides that arbitration clauses "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Thus, state contract defenses may be applied to invalidate arbitration clauses if those defenses apply to contracts generally.  Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996); Circuit City Stores, Inc. v. Adams, 279 F.3d 889, 892 (9th Cir. 2002).

Regarding the scope of the agreement, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983).  Nevertheless, a motion to compel arbitration should be denied if "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  AT&T Techs., Inc. v. Commc'n Workers, 475 U.S. 643, 650 (1986).

**B.   Analysis**

    **1.   Motion to Strike**

Defendant FedEx Ground argues that the court should strike JJ&L's crossclaim because the claim is already subject to arbitration.  Mtn. at 10–11.  Cross-claimant does not respond directly to the motion to strike, instead arguing that FedEx Ground waived its arbitration claim.  Opp. at 1.

Defendant's motion to strike fails to make out an argument as to why the

1    crossclaim is redundant, immaterial, impertinent, scandalous, or pleads an insufficient
2    defense.  See Whittlestone, 618 F.3d at 974 (discussing standards for Rule 12(f)).  While
3    defendant argues that courts routinely strike claims that are subject to arbitration based
4    on extrinsic evidence of the existence of a valid agreement to arbitrate, (Mtn. at 11), the
5    cases cited by defendant did not, in fact, strike claims that were subject to arbitration.
6    Rather, those cases dismissed the complaint pursuant to a motion to dismiss.  See Copy
7    Doctor, Inc. v. Xerox Corp., No. CV 10-1652-VBF(AJWX), 2010 WL 11595482, at *2
8    (C.D. Cal. Apr. 13, 2010); Rubin v. Sona Int'l Corp., 457 F. Supp. 2d 191, 198 (S.D.N.Y.
9    2006).  Absent an argument that the crossclaim is redundant, immaterial, impertinent,
10   scandalous, or an insufficient defense, a motion to strike is not the appropriate procedural
11   vehicle to dismiss a claim from a pleading.

   For the foregoing reasons, the court DENIES defendant's motion to strike.

   **2.    Motion to Compel Arbitration**

   In the alternative, defendant argues that the court should compel arbitration so that it may be consolidated with the pending arbitration claim between the parties.  Mtn. at 12.  Defendant further contends that both the FAA and Pennsylvania law, applicable through the ISP Agreement's choice-of-law provision, apply and establish a presumption in favor of arbitration.  Id. at 12–16.  Under the terms of the ISP agreement, defendant argues that this court lacks jurisdiction to determine the enforceability of the arbitration provision because that provision expressly delegates this authority to the arbitrator.  Id. at 16.  Next, defendant contends that, even if the court finds it has jurisdiction, the parties have a valid arbitration agreement and the crossclaim is covered by the arbitration agreement.  Id. at 18–19.

   Cross-claimant acknowledges that both the FAA and Pennsylvania arbitration law embody a policy to compel parties to arbitrate any claims that parties have agreed to arbitrate.  Opp. at 1.  Cross-claimant argues that, nonetheless, FedEx Ground's conduct in this litigation constitutes a waiver of the arbitration provision.  Id.

   As discussed, a court's role in a motion to compel arbitration is, at the outset,

limited to determining "gateway" issues, i.e., whether there is an agreement to arbitrate and whether the agreement covers the dispute in question. Brennan v. Opus Bank, 796 F.3d 1125, 1130 (9th Cir. 2015). Gateway issues "can be expressly delegated to the arbitrator where the parties clearly and unmistakably provide otherwise." Id. Thus, the Supreme Court "recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63, 68–69 (2010).

> When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue. That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless.

Henry Schein, Inc. v. Archer & White Sales, Inc., 139 S. Ct. 524, 529 (2019).

Additionally, "[t]he right to arbitration, like other contractual rights, can be waived." Martin v. Yasuda, 829 F.3d 1118, 1124 (9th Cir. 2016) (citing United States v. Park Place Assocs., Ltd., 563 F.3d 907, 921 (9th Cir. 2009)). The Ninth Circuit has explained that "[a] determination of whether 'the right to compel arbitration has been waived must be conducted in light of the strong federal policy favoring enforcement of arbitration agreements.' Because waiver of the right to arbitration is disfavored, 'any party arguing waiver of arbitration bears a heavy burden of proof.'" Id. (quoting Fisher v. A.G. Becker Paribas Inc., 791 F.2d 691, 694 (9th Cir. 1986)). "As such, a party seeking to prove waiver of a right to arbitration must demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." Id. (internal quotation marks, citation, and alteration omitted).

Here, both parties assert arguments relating to "gateway" issues. Defendant argues that the court lacks jurisdiction to determine the enforceability of the ISP arbitration agreement because the agreement expressly delegates such a decision to the

7

1  arbitrator. Mtn. at 16. Cross-claimant contends that defendant waived its right to
2  arbitration. Opp. at 2. The court addresses the second issue first.

### a. Whether Defendant Waived Its Right to Arbitration

Cross-claimant would apply the three-part waiver test to demonstrate that FedEx Ground waived its right to arbitration. First, cross-claimant contends that, as is obvious from defendant's motion, FedEx Ground had knowledge of its right to arbitration. Id. at 3. Second, cross-claimant argues that FedEx Ground acted inconsistent with its right to arbitration because the Overpeck action was filed in late 2018 and more than a year elapsed from the filing of the action and FedEx and FedEx Ground's Rule 19 motion to join necessary parties, which included JJ&L. Id. JJ&L contends that its crossclaim raises the same issue as plaintiffs' FAC, i.e., that the ISP employment arrangement between FedEx Ground, the ISPs, and the drivers is an unlawful attempt by FedEx to gain an unfair advantage, avoid compliance with California law, and shift responsibility to ISPs. Id. at 14–15. Third, cross-claimant argues that it will be prejudiced as a result of FedEx Ground's conduct because JJ&L will be required to spend time and money, whether cross-claimant litigates in federal court or arbitration. Id. at 15.

With regard to the first element, the court agrees that defendant is aware of its right to arbitrate. As is obvious from the motion itself, defendant is moving to compel arbitration. Moreover, it appears that cross-claimant has already pursued arbitration against FedEx Ground, which FedEx Ground is actively arbitrating. See Opp. at 15 (promising to withdraw claim for arbitration upon denial of motion); Dkt. 160-5 (declaration discussing arbitration claim).

With respect to the second element, "[t]here is no concrete test to determine whether a party has engaged in acts that are inconsistent with its right to arbitrate." Martin, 829 F.3d at 1125. However, "a party's extended silence and delay in moving for arbitration may indicate a 'conscious decision to continue to seek judicial judgment on the merits of [the] arbitrable claims,' which would be inconsistent with a right to arbitrate." Id. (alteration in original) (quoting Van Ness Townhouses v. Mar Indus. Corp., 862 F.2d 754,

8

759 (9th Cir. 1988)). In this case, there has been no delay in defendant moving for arbitration once cross-claimant pleaded its crossclaim. JJ&L filed its crossclaim on July 2, 2020 and defendant filed the present motion on July 23, 2020. Further, defendant took no other action in between the filing of the crossclaim and the filing of the present motion.

Cross-claimant seeks to take advantage of the fact that FedEx and FedEx Ground waited over a year prior to filing the Rule 19 motion that resulted in cross-claimant's addition to this case. JJ&L cannot avail itself of this delay for a few reasons. First, arbitration was not available between plaintiffs and FedEx Ground, indeed, the upshot of defendant's case is that it is in contractual privity with the ISPs, not plaintiffs. Defendant had no reason to compel arbitration until JJ&L pleaded its answer and crossclaim; once the crossclaim was asserted, defendant did not delay in asserting its rights.

Second, while both JJ&L and plaintiffs bring a cause of action for violation of the UCL, Cal. Bus. & Prof. Code § 17200, the claims are distinct. Plaintiffs' UCL claim is predicated on defendants' alleged violations of the California Labor Code. FAC ¶ 188. In turn, the Labor Code violations are predicated on wage and hour violations and denial of employee benefits. Id. ¶¶ 12, 24. JJ&L's UCL claim is that the ISP agreement controlled all aspects of its business and, because JJ&L was required to make a significant upfront investment to obtain its ISP agreement with FedEx Ground, JJ&L had no choice but to continue operating its business at a financial loss in order to avoid the complete loss of the investment. Crossclaim ¶¶ 3, 11–12. At a high level of generality, both plaintiffs and JJ&L's claims relate to FedEx Ground's employment arrangement. Yet, the facts supporting plaintiffs' claims and JJ&L's claims are sufficiently distinct such that any perceived delay in bringing a Rule 19 motion in this litigation does not constitute delay for purposes of waiver of arbitration rights.

With regard to the third element, cross-claimant "must show more than 'self-inflicted' wounds that [it] incurred as a direct result of suing in federal court contrary to the provisions of an arbitration agreement." Martin, 829 F.3d at 1126 (citations omitted). For example, cross-claimant must show "that, as a result of the defendant[] having delayed

9

seeking arbitration, [it has] incurred costs that [it] would not otherwise have incurred, that [it] would be forced to relitigate an issue on the merits on which [it has] already prevailed in court, or that the defendant[] [has] received an advantage from litigating in federal court that [it] would not have received in arbitration." Id. (citations omitted).

Applying here, JJ&L has not demonstrated that any prejudice it has experienced or will experience is due to FedEx Ground's delay in seeking arbitration. JJ&L contends that it will be prejudiced by litigating in both federal court and arbitration at the same time. Opp. at 15. Yet, JJ&L and FedEx Ground are already in arbitration and JJ&L decided to file a crossclaim in this case in addition to pursuing the same claim in arbitration. Indeed, JJ&L stated that it would withdraw its arbitration claim if the court were to deny defendant's motion. Opp. at 15. This means that costs incurred by JJ&L in prosecuting the crossclaim in federal court are self-inflicted because an avenue to litigate the claim already exists. While it is true that, because of Rule 19, JJ&L is a party to this case and the arbitration, JJ&L's crossclaim is distinct from plaintiffs' claims against defendants.

In sum, waiver of the right to arbitration is disfavored and cross-claimant has not carried its "heavy burden of proof," Martin, 829 F.3d at 1124, to demonstrate waiver.

### b. Whether the Arbitration Agreement Deprives the Court of Jurisdiction

The Supreme Court has "recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." Rent-A-Center, 561 U.S. at 68–69. The Rent-A-Center court held that a provision in an arbitration agreement that "delegates resolution" of whether such an "[a]greement is unconscionable" qualifies as a "gateway" question. Id. at 68. The Court explained that the arbitrability of such threshold questions "merely reflect[s] the principle that arbitration is a matter of contract . . . [a]n agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." Id. at 69–70.

Here, the ISP agreement[4] included an express arbitration provision:

> The arbitrator shall have exclusive authority to resolve any Disputes concerning the formation, existence, validity, enforceability, interpretation, or scope of this agreement to arbitrate. No suit at law or in equity based on any dispute or controversy shall be instituted by either Party hereto, other than a suit to confirm, enforce, vacate, modify, or correct the award of the arbitrator as provided by law.

Dkt. 160-12, ¶ 16.3. Because the agreement delegates to the arbitrator the exclusive authority to resolve issues relating to the interpretation, validity, and enforceability of the agreement, Rent-A-Center's holding controls the analysis here. Moreover, cross-claimant does not attack the validity of the arbitration term, other than the already discussed waiver issue. See Rent-A-Center, 561 U.S. at 71–72 (discussing challenges to validity of arbitration agreement under § 2 of the FAA). Accordingly, this court does not have jurisdiction to determine the gateway question of arbitrability. See Nicholas v. Uber Techs., Inc., No. 19-CV-08228-PJH, 2020 WL 4039382, at *7 (N.D. Cal. July 17, 2020) (finding Rent-A-Center controlling with respect to similar language).

For the foregoing reasons, the court GRANTS defendant's motion to compel arbitration.

### c. Whether to Dismiss or Stay the Crossclaim

Defendant requests the court dismiss JJ&L's crossclaim and, in the alternative, stay the crossclaim. Mtn. at 21. Cross-claimant takes no position on whether the court should dismiss or stay the claim.

Section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in

---

[4] While cross-claimant does not attach a copy of the ISP agreement to the crossclaim, the crossclaim incorporates the agreement by reference and cross-claimant does not dispute its authenticity. See Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005).

11

>accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.  The plain language of the FAA seems to require that, if "any issue" is referred to arbitration, the court "shall" stay the "action" pending arbitration upon request. Johnmohammadi v. Bloomingdale's, Inc., 755 F.3d 1072, 1073–74 (9th Cir. 2014).

There is an exception to that literal reading of Section 3.  In this Circuit, "notwithstanding the language of § 3, a district court may either stay the action or dismiss it outright when . . . the court determines that all of the claims raised in the action are subject to arbitration."  Id. at 1074.  When elucidating that exception, the Ninth Circuit has consistently explained that it applies only when "all of the claims raised in the action are subject to arbitration."  Id.; see Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 719 (9th Cir. 1999) (affirming dismissal where "all of Simula's claims against Autoliv were subject to the arbitration clause"); Sparling v. Hoffman Const. Co., 864 F.2d 635, 638 (9th Cir. 1988) ("[T]he arbitration clause was broad enough to bar all of the plaintiff's claims since it required Active to submit all claims to arbitration.").  Applying that rule, "[c]ourts in this District regularly dismiss actions after granting motions to compel arbitration where all of the plaintiff's claims were subject to arbitration." Campos v. JPMorgan Chase Bank, NA, No. 18-cv-06169-JSC, 2019 WL 827634, at *12 (N.D. Cal. Feb. 21, 2019) (collecting cases).  Neither Section 3 nor the Ninth Circuit contemplates staying or dismissing less than the entire action.

Applying here, cross-claimant's only claim is subject to arbitration and the rule described in Johnmohammadi is applicable.  Given the complexity of the proceedings exclusive of the present crossclaim, staying this crossclaim presents needless procedural complication, especially where the claim is only tangentially related to the facts and claims at issue between plaintiffs and defendants.  Accordingly, dismissal of the crossclaim is appropriate in this instance.

### 3. Motions to Seal

Defendant filed two motions to file under seal seeking to seal portions of its motion

12

brief and its reply brief, as well as the underlying documents referenced in those briefs. Dkts. 160, 176. Cross-claimant does not oppose this request.

There is a general presumption in favor of public access to federal court records. Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978). "[T]he proponent of sealing bears the burden with respect to sealing. A failure to meet that burden means that the default posture of public access prevails." Kamakana v. City & Cty. of Honolulu, 447 F.3d 1172, 1182 (9th Cir. 2006). When a request to seal documents is made in connection with a motion, the court must determine whether the parties are required to overcome that presumption with "compelling reasons" or with "good cause." A party seeking to seal materials submitted with a motion that is "more than tangentially related to the merits of the case"—regardless whether that motion is "technically dispositive"—must demonstrate that there are compelling reasons to keep the documents under seal. Ctr. for Auto Safety v. Chrysler Grp., LLC, 809 F.3d 1092, 1101–02 (9th Cir. 2016). Conversely, if the motion is only tangentially related to the merits, "a 'particularized showing,'" under the 'good cause' standard of Rule 26(c) will 'suffice[] to warrant preserving the secrecy of sealed discovery material attached to non-dispositive motions." Kamakana, 447 F.3d at 1180 (alteration in original) (quoting Foltz v. State Farm. Mut. Auto. Ins. Co., 331 F.3d 1122, 1135, 38 (9th Cir. 2003)).

Here, defendant assumes without argument that the lower good cause standard applies and contends that good cause is met because the documents to be sealed contain confidential, proprietary, and trade secret information regarding the details of its business operations and contractual terms with JJ&L. Dkt. 160 at 4. As explained by the district court in In re Uber Text Messaging, No. 18-CV-02931-HSG, 2019 WL 8200602, at *2 (N.D. Cal. May 30, 2019) (citation omitted), "district courts differ on whether a motion to compel arbitration is a dispositive or nondispositive motion for sealing purposes." Some courts have assumed without discussion that a motion to compel arbitration is a non-dispositive motion. See Verinata Health, Inc. v. Ariosa Diagnostics, Inc., No. 12-CV-05501-SI, 2015 WL 5117083, at *4 (N.D. Cal. Aug. 31, 2015).

13

1    Conversely, courts that conclude a motion to compel to be dispositive analogize it
2    to a motion to remand or transfer; if a defendant prevails on its motion to compel, then
3    the case is transferred to a different forum for a resolution on the merits. See In re Uber,
4    2019 WL 8200602, at *2 (citing Langell v. Ideal Homes LLC, No. 16-CV-00821-HRL,
5    2016 WL 8711704, at *3–4 (N.D. Cal. Nov. 18, 2016), report and recommendation
6    adopted, 2016 WL 10859440 (N.D. Cal. Dec. 7, 2016)).  Though a court would retain
7    jurisdiction to enforce an arbitration award, this review is highly deferential and has the
8    practical effect of "put[ting] the parties effectively out of federal court." Id. (quoting
9    Harmston v. City & Cty. of San Francisco, 627 F.3d 1273, 1278–79 (9th Cir. 2010)).  The
10   court finds persuasive reasoning elucidated by other courts that a motion to compel
11   arbitration is similar to a motion to transfer or remand and is, therefore, a dispositive
12   motion.  In fact, through its motion, defendant FedEx Ground seeks dismissal of the
13   crossclaim.  Accordingly, the court applies the compelling reasons standard and not the
14   good cause standard to defendant's motions to file under seal.

15   The documents defendant requests to seal are FedEx Ground's contract with
16   JJ&L, documents related to the parties' arbitration, and portions of its motion and reply
17   briefs that rely on the contract or arbitration documents.  The court agrees that, in
18   principle, a contract containing proprietary and confidential business information can
19   meet the compelling reasons standard.  See, e.g., FTC v. Qualcomm Inc., No. 17-CV-
20   220-LHK, 2019 WL 95922, at *3 (N.D. Cal. Jan. 3, 2019) (granting motion to seal under
21   the compelling reasons standard to the extent it may harm the party or third parties'
22   "competitive standing and divulges terms of confidential contracts, contract negotiations,
23   or trade secrets"); Finisar Corp. v. Nistica, Inc., No. 13-CV-03345-BLF(JSC), 2015 WL
24   3988132, at *5 (N.D. Cal. June 30, 2015) ("Courts regularly find that litigants may file
25   under seal contracts with third parties that contain proprietary and confidential business
26   information.").

27   However, defendant has made no attempt to delineate what in the contract is
28   proprietary and confidential and, therefore, the request is not narrowly tailored. See Civ.

14

L.R. 79-5(b) ("The request must be narrowly tailored to seek sealing only of sealable material . . . ."). For example, defendant quotes a portion of the arbitration provision in its motion brief without redacting that provision. See Mtn. at 9. This indicates that portions of the agreement do not contain confidential business information. See Ovonic Battery Co. v. Sanyo Elec. Co., No. 14-CV-01637-JD, 2014 WL 2758756, at *4 (N.D. Cal. June 17, 2014) ("[T]he weight of the authority and the Local Rules provide that requests to seal should be narrowly tailored to include only sensitive, confidential business information.").

For the foregoing reasons, the court DENIES WITHOUT PREJUDICE defendant's motions to file under seal. Dkt. 160, 176. Defendant may refile a motion to file under seal consistent with this order and Civil Local Rule 79-5 and that applies to all documents sought to be sealed.

## CONCLUSION

For the foregoing reasons, the court DENIES defendant's motion to strike, GRANTS defendant's motion to compel arbitration, and DISMISSES WITHOUT PREJUDICE the crossclaim. The court also DENIES WITHOUT PREJUDICE defendant's motions to file under seal. Any renewed motion to file under seal shall be filed within fourteen days of the date on which this order is filed.

**IT IS SO ORDERED.**

Dated: August 28, 2020

/s/ Phyllis J. Hamilton
PHYLLIS J. HAMILTON
United States District Judge