1
2
3
4                        UNITED STATES DISTRICT COURT
5                      NORTHERN DISTRICT OF CALIFORNIA
6
7    HERMAN OVERPECK, et al.,
                                              Case No. 18-cv-07553-PJH
8                 Plaintiffs,
9          v.                                 **ORDER DENYING MOTION FOR
                                              CLASS CERTIFICATION**
10   FEDEX CORPORATION, et al.,
                                              Re: Dkt. No. 279, 287
11                Defendants.
12
13

14         Plaintiffs' motion for class certification came on for hearing before this court on

15   March 24, 2022.  Plaintiffs were represented by Joshua Konecky.  Defendant FedEx

16   Ground was represented by Jessica Scott, Brandy Cody, and Brian Ruocco.  Defendant

17   FedEx Corp. was represented by Chris Ahearn and Barak Babcock.  Having read the

18   papers filed by the parties and carefully considered their arguments and the relevant

19   legal authority, and good cause appearing, the court hereby rules as follows.

20                                    **BACKGROUND**

21         This is a putative class action brought by current or former long-haul and local

22   delivery drivers who provided transportation and delivery services in California for

23   defendants FedEx Ground Package System, Inc. ("FedEx Ground") and FedEx

24   Corporation ("FedEx Corp.") (collectively, "the FedEx defendants" or "FedEx")[1].  Dkt. 119,

25   _____

26   [1] FedEx Corp. has objected to plaintiffs' use of the collective term "FedEx" to describe
     both FedEx Corp. and FedEx Ground, on the basis that plaintiffs have not yet established
27   that the entities are an "integrated enterprise."  Dkt. 312 at 7-8.  As explained later in this
     order, the court agrees that the "integrated enterprise" issue is premature for resolution,
28   and will use the collective term "FedEx" only for ease of use, rather than as a statement
     on the merits of the "integrated enterprise" issue.

¶ 40.  Plaintiffs allege that FedEx's labor force was previously made up of individual drivers that FedEx hired directly and labeled as independent contractors.  Id., ¶ 7. Plaintiffs allege that, following litigation challenging the "independent contractor" classification, FedEx then pivoted to an "independent service provider" ("ISP") model.  Id. Plaintiffs allege that the ISPs are "little more than job placement outfits," and that the ISP model is "just a continuation of FedEx's continuing practice of misrepresenting and obscuring the true relationship between FedEx and its drivers: that of employer-employee."  Id.

On December 14, 2018, plaintiffs Herman Overpeck and Kevin Sterling filed a putative class action against FedEx Corporation and FedEx Ground.  Dkt. 1.  On January 29, 2020, plaintiffs filed the operative First Amended Complaint ("FAC"), which added a new named plaintiff, Shannon Sobaszkiewicz, and alleged twelve causes of action:

(1) Common Law Fraudulent Misrepresentation;

(2) Common Law Conversion;

(3) Failure to Pay for All Hours Worked, Cal. Labor Code §§ 201, 202, 204, 221-23, and 226.2;

(4) Failure to Provide Meal Periods, Cal. Labor Code §§ 226.7, 512 and 8 Cal. Code Regs. § 11090;

(5) Failure to Provide Rest Periods, Cal. Labor Code § 226.7 and 8 Cal. Code Regs. § 11090;

(6) Failure to Pay Minimum Wages, Cal. Labor Code §§ 1182.11–82.12, 1194, and 1197–97.1;

(7) Failure to Pay Overtime Compensation, Cal. Labor Code §§ 510, 515.5, 1194, and 1198 et seq.;

(8) Failure to Keep Accurate Payroll Records, Cal. Labor Code §§ 1174–74.5;

(9) Failure to Furnish Accurate Wage Statements, Cal. Labor Code § 226;

(10) Waiting Time Penalties, Cal. Labor Code §§ 201–03;

(11) Unfair Competition and Unlawful Business Practices, Cal. Bus. & Prof. Code § 17200, et seq.; and

(12) Private Attorneys General Act violations, Cal. Labor Code § 2698, et seq.
Dkt. 85.

The FAC also states that Mr. Overpeck is now "not a class representative," but still

"a class member."   Dkt. 119, ¶ 43.  Thus, the two class representatives are now Mr. Sterling and Ms. Sobaszkiewicz.  Sterling is a "pickup and delivery" driver, which means he does short-distance deliveries from FedEx to customers.  Id., ¶ 42.  Sobaszkiewicz is a "linehaul" driver, which means she delivers packages long distances from one FedEx "hub" to another.  Id., ¶ 41.

Plaintiffs' motion states that they seek certification on only a subset of claims, namely: (1) the first and second causes of action for common law misrepresentation and conversion arising from the exclusion of plaintiffs and the class from the health and retirement employee benefits administered by FedEx; (2) the fourth and fifth causes of action for failure to provide off-duty meal and rest periods, arising out of the actions or inactions attributable to FedEx; (3) the ninth cause of action for violation of Cal. Labor Code § 226(a)(8) arising out of FedEx's policy and practice of prohibiting any FedEx entity from being identified as an employer or joint employer on the drivers' wage statements; and (4) the eleventh cause of action for violation of Cal. Bus. & Prof. Code § 17200, predicated on the above alleged violations.

In effect, that means there are three categories of claims to be examined on this motion: (1) the health/retirement benefit-related claims, based on either a misrepresentation or conversion theory, (2) the meal/rest break claims, and (3) the inaccurate wage statement claim.

Plaintiffs seek to certify the following class:

All individuals transporting packages for FedEx Ground Package System, Inc. ("FedEx Ground") in California, pursuant to an "Independent Service Provider Agreement (ISPA)" and/or "Transportation Service Provider Agreement (TSPA)" between FedEx Ground and a "Contract Service Provider (CSP)" and while using a vehicle that is "operated by FedEx Ground" under Department of Transportation (DOT) regulations, at any time from December 14, 2014 until the date class notice is provided under Fed. R. Civ. P. 23(c)(2).

Plaintiffs also seek to certify the following two subclasses:

Pickup and Delivery (P&D) subclass: All individuals who have performed "pickup and delivery" services of the FedEx Ground packages in California, while based out of a station or hub of FedEx Ground in California, at any

time from December 14, 2014 until the date class notice is provided under Fed. R. Civ. P. 23(c)(2), and

Linehaul subclass: All individuals who have performed Linehaul transports of the FedEx Ground packages in California, while based out of a hub or station of FedEx Ground in California, at any time from December 14, 2014 until the resolution of this action.

After briefing on plaintiffs' motion was complete, the court directed the parties to file supplemental briefs regarding a recent decision by another court in this district involving similar facts.  See Dkt. 334; see also Hinds v. FedEx Ground Package System, Inc. et al., 2021 WL 4926980 (N.D. Cal. Aug. 18, 2021).

Also pending before the court is a motion to seal filed by plaintiffs.  Dkt. 279.

## DISCUSSION

A.    Legal standard

"Before certifying a class, the trial court must conduct a 'rigorous analysis' to determine whether the party seeking certification has met the prerequisites of Rule 23." Mazza v. American Honda Motor Co., Inc., 666 F.3d 581, 588 (9th Cir. 2012) (citation and quotation omitted).

The party seeking class certification bears the burden of affirmatively demonstrating that the class meets the requirements of Federal Rule of Civil Procedure 23.  Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011).  In order for a class action to be certified, plaintiffs must prove that they meet the requirements of Federal Rule of Civil Procedure 23(a) and (b).

Rule 23(a) requires that plaintiffs demonstrate numerosity, commonality, typicality and adequacy of representation in order to maintain a class.  First, the class must be so numerous that joinder of all members individually is "impracticable."  See Fed. R. Civ. P. 23(a)(1).  Second, there must be questions of law or fact common to the class.  Fed. R. Civ. P. 23(a)(2).  Third, the claims or defenses of the class representative must be typical of the claims or defenses of the class.  Fed. R. Civ. P. 23(a)(3).  And fourth, the class representative(s) must be able to protect fairly and adequately the interests of all members of the class.  Fed. R. Civ. P. 23(a)(4).  The parties moving for class certification

United States District Court
Northern District of California

bear the burden of establishing that the Rule 23(a) requirements are satisfied.  Gen'l Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 156 (1982); see also Dukes, 564 U.S. at 350.

If all four prerequisites of Rule 23(a) are satisfied, the court then determines whether to certify the class under one of the three subsections of Rule 23(b), pursuant to which the named plaintiffs must establish either 1) that there is a risk of substantial prejudice from separate actions; or 2) that declaratory or injunctive relief benefitting the class as a whole would be appropriate; or 3) that common questions of law or fact common to the class predominate and that a class action is superior to other methods available for adjudicating the controversy at issue.  See Fed. R. Civ. P. 23(b)(3).

The court does not make a preliminary inquiry into the merits of plaintiffs' claims in determining whether to certify a class.  Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177 (1974).  The court will, however, scrutinize plaintiffs' legal causes of action to determine whether they are suitable for resolution on a class-wide basis.  See, e.g., Moore v. Hughes Helicopters, Inc., 708 F.2d 475, 480 (9th Cir. 1983).  Making such a determination will sometimes require examining issues that overlap with the merits.  See Dukes, 564 U.S. at 350-51 (acknowledging that court's "rigorous analysis" will frequently entail some overlap with merits of plaintiff's underlying claim).

The court will consider matters beyond the pleadings, if necessary, in order to ascertain whether the asserted claims or defenses are susceptible of resolution on a class wide basis.  See McCarthy v. Kleindienst, 741 F.2d 1406, 1419 n.8 (D.C. Cir. 1984).

B.    Analysis

Before addressing the Rule 23 requirements, the court will first address several threshold issues raised by the parties.

1.    Joint employment

Each of plaintiffs' claims is dependent on a showing that FedEx is a joint employer of the putative class members.  Under California law, "to employ" is defined as: (a) to exercise control over the wages, hours, or working conditions, or (b) to suffer or permit to

work, or (c) to engage, thereby creating a common law employment relationship." Martinez v. Combs, 49 Cal.4th 35, 64 (2010) (emphasis added).

Plaintiffs argue that FedEx is a joint employer under any of the three alternative tests. FedEx argues that it is not a joint employer under any of the three tests, and further argues that the joint employment issue will not "drive the resolution of the litigation." See Dkt. 304 at 26 (citing Dukes, 564 U.S. at 350). Specifically, FedEx argues that "joint employment itself does not violate any law, so proving joint employment" would not, by itself, prove liability. See id.

The parties offer extensive evidence on the merits of the joint employment issue. However, for purposes of this motion, the court need not definitively resolve the merits of the joint employment issue, but rather need only address whether the joint employment issue is suitable for class treatment under Rule 23.

2.      Integrated enterprise

FedEx Corp. filed a separate opposition to plaintiffs' motion for class certification where, in addition to joining the arguments made in FedEx Ground's opposition, FedEx Corp. also argues that it is "a separate company" from FedEx Ground and thus not liable for the latter's alleged conduct in this case. See Dkt. 312.

Specifically, FedEx Corp. argues that plaintiffs must show that FedEx Corp. and FedEx Ground are an "integrated enterprise" in order to attribute liability to FedEx Corp. The "integrated enterprise" test analyzes four factors: (1) interrelations of operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership or financial control. See Laird v. Capital Cities/ABC, Inc., 68 Cal.App.4th 727, 737 (1998).

FedEx Corp. states in its brief that it "recognizes the fact that its arguments against certification overlap with merits issues." See Dkt. 312 at 7. FedEx Corp. further "reiterates the request that there be the opportunity for early (additional) Rule 56 motions . . . prior to certification." Id.

As FedEx Corp. appears to acknowledge at least in part, the "integrated

enterprise" issue is a merits issue that is more appropriate for resolution on a summary judgment motion, not on a class certification motion.  In fact, as plaintiffs point out, it would be prejudicial for the court to rule on the merits of the "integrated enterprise" issue without full merits discovery.  Accordingly, the court concludes that the "integrated enterprise" issue is premature for resolution on this motion.  As mentioned above, the court will use the collective term "FedEx" in this order only for ease of use, rather than as a statement on the merits of the "integrated enterprise" issue.

      3.   <u>Rule 23 requirements</u>

         a.    Numerosity

Rule 23(a)(1) requires that a proposed class be so numerous that joinder of all members is impracticable.  Fed. R. Civ. P. 23(a)(1).  While there is no fixed number that satisfies the numerosity requirement, courts often find that a group greater than 40 members meets such requirement.  <u>Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.</u>, 249 F.R.D. 334, 346 (N.D. Cal. 2008); <u>Hernandez v. Cnty. of Monterey</u>, 305 F.R.D. 132, 152–53 (N.D. Cal. 2015) ("A class or subclass with more than 40 members 'raises a presumption of impracticability based on numbers alone.'" (citation omitted)).  A court may make "common-sense assumptions and reasonable inferences" when analyzing numerosity.  <u>West v. Cal. Servs. Bureau, Inc.</u>, 323 F.R.D. 295, 303 (N.D. Cal. 2017) (citing <u>The Civil Rights Educ. & Enforcement Ctr. v. RLJ Lodging Trust</u>, 2016 WL 314400, at *6 (N.D. Cal. Jan. 25, 2016)).

Plaintiffs cite FedEx's own testimony as stating that there are "a few thousand ISP [] drivers within the state of California every year."  Dkt. 281-1 at 29.  FedEx does not appear to challenge that the numerosity requirement is met.  Thus, the court concludes that plaintiffs have sufficiently established numerosity under Rule 23(a)(1).

         b.    Commonality

Rule 23(a)(2) requires questions of law or fact common to the class.  Fed. R. Civ. P. 23(a)(2).  Under this requirement, plaintiff must "demonstrate that the class members have suffered the same injury," not merely violations of "the same provision of law."

1   Dukes, 564 U.S. at 349–50.  Given that, plaintiff's claims "must depend upon a common

2   contention" such that "determination of [their] truth or falsity will resolve an issue that is

3   central to the validity of each one of the claims in one stroke."  Id.  "What matters to class

4   certification . . . is not the raising of common questions—even in droves—but rather the

5   capacity of a classwide proceeding to generate common answers apt to drive the

6   resolution of the litigation."  Id. (citation omitted); see also Tyson Foods, Inc. v.

7   Bouaphakeo, 136 S. Ct. 1036, 1045 (2016) ("'An individual question is one where

8   members of a proposed class will need to present evidence that varies from member to

9   member,' while a common question is one where 'the same evidence will suffice for each

10  member to make a prima facie showing [or] the issue is susceptible to generalized, class-

11  wide proof.'" (alteration in original) (citation omitted)).

12      To that end, the Ninth Circuit has explained that, for the commonality requirement,

13  "plaintiffs need not show that every question in the case, or even a preponderance of

14  questions, is capable of class-wide resolution.  So long as there is even a single common

15  question, a would-be class can satisfy the commonality requirements of Rule 23(a)(2)."

16  Wang v. Chinese Daily News, Inc., 737 F.3d 538, 544 (9th Cir. 2013).  "Whether a

17  question will drive the resolution of the litigation necessarily depends on the nature of the

18  underlying legal claims that the class members have raised."  Jimenez v. Allstate Ins.

19  Co., 765 F.3d 1161, 1165 (9th Cir. 2014) (citation omitted).  The commonality analysis

20  "does not turn on the number of common questions, but on their relevance to the factual

21  and legal issues at the core of the purported class's claims."  Id.

22      FedEx's primary challenge to commonality is its argument that "plaintiffs cannot

23  prove joint employment with common evidence."  See Dkt. 304 at 22.  The Hinds court

24  considered this same argument, and rejected FedEx's blanket argument that the joint

25  employment issue precluded a showing of commonality, concluding that FedEx's

26  arguments regarding variation between the service providers "go to the merits of

27  plaintiffs' claims and fall outside of the inquiry necessary to determine if plaintiffs can

28  show commonality," or, "[a]lternatively, those arguments address whether or not

United States District Court
Northern District of California

individual issues predominate." Hinds at 11.

The court finds the reasoning of the Hinds court to be persuasive on this issue. As in Hinds, FedEx acknowledges that "if plaintiffs cannot show it is a joint employer, they cannot prevail," and that "the determination of the 'truth or falsity' of that [joint employment] issue is central to the validity of plaintiffs' claims." See Hinds at *7; see also Dkt. 304 at 11 ("This strategy requires plaintiffs to prove, as a threshold matter, that FedEx Ground is also their employer.").

The court concludes that FedEx's arguments regarding the variation in the level of control exerted by FedEx on the ISPs do not preclude a finding of commonality. Instead, FedEx's arguments go to the merits of the joint employment issue, or alternatively go to the predominance requirement of Rule 23(b)(3).

However, separate from the joint employment issue, FedEx raises other arguments regarding commonality.

> i.   Fraud/conversion claim re benefit plans

First, with regard to the fraud and conversion claims regarding FedEx's health and retirement benefit plans, FedEx argues that plaintiffs' asserted claims are precluded by the Labor Code.

The elements of a fraudulent misrepresentation claim are: (1) a misrepresentation, (2) knowledge of falsity (scienter), (3) intent to induce reliance, (4) reasonable reliance, and (5) damages. Lazar v. Superior Court, 12 Cal.4th 631, 638 (1996).

The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of property, (2) defendant's conversion by a wrongful act or disposition of property rights, and (3) damages. Lee v. Hanley, 61 Cal.4th 1225, 1240 (2015).

As mentioned above, FedEx argues that plaintiffs' fraud and conversion claims are "precluded by the Labor Code," which "provides the exclusive remedy for plaintiffs' grievances." See Dkt. 312 at 19. FedEx's argument primarily relies on Santiago v. Amdocs, Inc., 2011 WL 1303395 (2011).

In Santiago, the plaintiffs brought a conversion claim against their employer for

United States District Court
Northern District of California

unpaid overtime wages and missed meal/rest breaks.  2011 WL 1303395, at *1.  The

defendants in that case moved to dismiss the conversion claim, arguing that was

precluded by the Labor Code, which provides the exclusive remedy for the failure to pay

wages.  Id. at *3.  The court noted that the plaintiffs cited no cases supporting their

position, and ultimately dismissed the conversion claim without leave to amend,

concluding that "in light of the cases consistently holding that a plaintiff cannot bring a

conversion claim based solely on statutory wage and hour violations, and the absence of

any authority to contrary."  Id. at *5.

FedEx argues that Santiago "applies with equal force" to plaintiffs' claims for fraud

and conversion.  FedEx also points to other district court cases cited by the Santiago

court, further supporting the conclusion that the Labor Code's remedies are exclusive of

common law claims based on the same conduct.  See Green v. Party City Corp., 2002

WL 553219, at *5 (C.D. Cal. Apr. 9, 2002) ("the statutory remedies for unpaid wages bar

plaintiff's claim for conversion"); Madrigal v. Tommy Bahama Grp., Inc., 2010 WL

4384235, at *6 ("Since Green, several courts have expressly concluded that employees

cannot bring a claim for conversion based on the failure to pay overtime wages under the

Labor Code because the Labor Code's remedies are exclusive."); In re Wal-Mart Stores,

Inc. Wage and Hour Litig., 505 F.Supp.2d 609, 618 (N.D. Cal. 2007) ("were the court to

agree with plaintiff that a claim for earned wages, actual damages, and penalty wages

constitutes a conversion claim, such a rule would in effect transform every claim for

damages and statutory penalties into a conversion claim").

The court finds persuasive the view of the Santiago, Green, Madrigal, and Wal-

Mart courts that the Labor Code's remedies are intended to be exclusive, and thus

preclude common law claims based on the same conduct.  As a result, plaintiffs' theory of

relief on their fraud and conversion claims appears not to be viable as a matter of law.

While the court is not permitted to "engage in free-ranging merits inquiries," it is

required to conduct a "rigorous analysis" that "will entail some overlap with the merits of

the plaintiff's underlying claim."  See Amgen Inc. v. Connecticut Retirement Plans and

1  Trust Funds, 568 U.S. 455, 466 (2013); Dukes, 564 U.S. at 351.  As applied to this case,

2  the court concludes that the non-viability of plaintiffs' theory of relief prevents them from

3  being able to show "questions of law of fact common to the case."  Dukes, 564 U.S. at

4  349 (quoting Fed. R. Civ. P. 23(a)(2)).  For that reason, the court concludes that plaintiffs

5  have not met Rule 23(a)'s commonality requirement as to their fraud and conversion

6  claims.  Additionally, as will be noted below, the non-viability of plaintiffs' legal theory of

7  relief also prevents them from being able to meet the predominance requirement of Rule

8  23(b)(3).

9                              ii.        Inaccurate wage statement claim

10         FedEx's second separate argument against commonality relates to plaintiffs' claim

11  for failure to furnish accurate wage statements under Cal. Labor Code § 226.

12         Cal. Labor Code § 226(a)(8) requires an employer to provide a wage statement

13  showing "the name and address of the legal entity that is the employer."  Plaintiffs argue

14  that FedEx prohibits the ISPs from listing FedEx's name on the wage statements, which

15  violates section (a)(8).

16         FedEx argues that plaintiffs, in addition to proving the element that an employer

17  failed to provide an accurate itemized statement, must also prove that (1) the employer's

18  failure to provide the statement was knowing and intentional and (2) the employee

19  suffered injury.  Iljas v. Ripley Entm't Inc., 403 F.Supp.3d 793, 802 (N.D. Cal. Aug. 14,

20  2019) (citing Willner v. Manpower Inc., 35 F. Supp. 3d 1116, 1128 (N.D. Cal. 2014)); see

21  also Frausto v. Bank of Am., Nat'l Ass'n, 2019 WL 5626640, at *10 (N.D. Cal. Oct. 31,

22  2019).

23         FedEx cites a case from this court holding that "[t]he injury requirement in section

24  [226(e)] cannot be satisfied simply because one of the nine itemized requirements in

25  section [226(a)] is missing from a wage statement."  Ridgeway v. Wal-Mart Stores, Inc.,

26  2014 WL 2600326, at *8 (N.D. Cal. June 10, 2014) (quoting Price v. Starbucks Corp., 192

27  Cal. App. 4th 1136, 1142–43 (2011)).  "By employing the term 'suffering injury,' the

28  statute requires that an employee may not recover for violations of section [226(a)]

1    unless he or she demonstrates an injury arising from the missing information." Id.

2    (quoting Price, 192 Cal. App. 4th at 1142–43) (emphasis in Price); see also Frausto,

3    2019 WL 5626640, at *11.

4           FedEx argues that each employee would need to individually prove that they

5    suffered an injury, thereby preventing plaintiffs' proposed class from being able to meet

6    the commonality and/or predominance requirements.

7           Plaintiffs cite no cases where a court has found their theory of liability under

8    section 226(a)(8) to be viable.  In the absence of any such cases, this court concludes

9    that each plaintiff will need to separately prove their injury under section 226(a)(8).  And

10   as a result, the court concludes that plaintiffs' proposed class as to the section 226(a)(8)

11   claim cannot meet the commonality requirement.  And as will be noted below, the court

12   further concludes that the need for class members to show individual injury also prevents

13   plaintiffs from meeting the predominance requirement.

14                  c.     Typicality

15          Rule 23(a)(3) requires a plaintiff seeking certification to show that "the claims or

16   defenses of the representative parties are typical of the claims or defenses of the class."

17   "The test for typicality 'is whether other members have the same or similar injury, whether

18   the action is based on conduct which is not unique to the named plaintiffs, and whether

19   other class members have been injured by the same course of conduct.'" Sandoval v.

20   Cnty. of Sonoma, 912 F.3d 509, 518 (9th Cir. 2018) (quoting Hanon v. Dataproducts

21   Corp., 976 F.2d 497, 508 (9th Cir. 1992)).  "Typicality refers to the nature of the claim or

22   defense of the class representative, and not to the specific facts from which it arose or

23   the relief sought." Hanon, 976 F.2d at 508 (citation omitted).

24          FedEx makes only a brief argument against typicality, arguing that the P&D

25   subclass fails to satisfy Rule 23(a) typicality because plaintiff Sterling "sued and settled

26   with a service provider."  Dkt. 304 at 40.  However, plaintiffs' reply points out that plaintiff

27   Sterling "worked under 7 different CSPs during his 12-year tenure at FedEx" and that "he

28   is not seeking individual damages for the period of time covered by the work under the

1   single CSP with which he settled."  Dkt. 326 at 26-27.  Plaintiffs further assert that there is

2   "no inconsistency between his previous individual settlement with one CSP and his

3   current class claims."  Id. at 27.

4          FedEx has provided no basis for the conclusion that plaintiff Sterling's theory of

5   relief is inconsistent with that of the class.  As to the work performed for the six CSPs with

6   which he has not settled, plaintiff Sterling stands in the same position as the class, and

7   FedEx has not provided any specific position taken by Sterling that is inconsistent with

8   the class.  For those reasons, the court find that plaintiffs have established typicality for

9   purposes of Rule 23(a)(3).

10                 d.     Adequacy

11          Rule 23(a)(4) requires a plaintiff seeking certification to show that "the

12   representative parties will fairly and adequately protect the interests of the class."  The

13   Ninth Circuit has set forth a two-part test for this requirement: "(1) do the named plaintiffs

14   and their counsel have any conflicts of interest with other class members and (2) will the

15   named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"

16   Staton v. Boeing Co., 327 F.3d 938, 957 (9th Cir. 2003).

17          FedEx's argument against adequacy is based on plaintiffs' decision to seek

18   certification of only a subset of the claims in the complaint.  FedEx argues that, by

19   "abandoning" the other claims, plaintiffs have failed to show adequacy.

20          Plaintiffs argue that "FedEx's view of adequacy is contrary to precedent," and cites

21   cases from this district and others holding that "defendant cannot claim that plaintiff is

22   inadequate because she declines to assert a theory that could unravel the putative

23   class."  See Kennedy v. Jackson Nat. Life Ins. Co., 2010 WL 2524360 at *5 (N.D. Cal.

24   June 23, 2010); see also In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig.,

25   270 F.R.D. 521, 532 (N.D. Cal. 2010) ("Plaintiffs are permitted to press a theory of

26   contract liability that affords them the best chance of certification and of success on

27   behalf of the class."); Todd v. Tempur-Sealy Int'l, Inc., 2016 WL 5746364 at *5 (N.D. Cal.

28   Sept. 30, 2016) ("A strategic decision to pursue those claims a plaintiff believes to be

United States District Court
Northern District of California

1  most viable does not render her inadequate as a class representative.").

2      The court finds the view articulated by Kennedy, Conseco, and Todd to be

3  persuasive.  Plaintiffs are permitted to seek certification of claims which they believe to

4  be the most suitable for class treatment.  Accordingly, the court concludes that plaintiffs

5  have shown adequacy under Rule 23(a)(4).

6          e.      Predominance

7      Plaintiffs seek class certification only under Rule 23(b)(3).  "The predominance

8  inquiry under Rule 23(b)(3) tests whether proposed classes are sufficiently cohesive to

9  warrant adjudication by representation."  In re Hyundai & Kia Fuel Economy Litig., 926

10  F.3d 539, 557 (9th Cir. 2019) (quoting Amchem Prods., Inc. v. Windsor, 521 U.S. 591,

11  623 (1997)).  "It presumes that the existence of common issues of fact or law have been

12  established pursuant to Rule 23(a)(2), and focuses on whether the common questions

13  present a significant aspect of the case and they can be resolved for all members of the

14  class in a single adjudication."  Id.  "[I]f so, there is clear justification for handling the

15  dispute on a representative rather than on an individual basis."  Id.

16      The predominance analysis is "far more demanding than Rule 23(a)'s commonality

17  requirement."  Amchem Prods., 521 U.S. at 623–24.  But the rule "does not require a

18  plaintiff seeking class certification to prove that each element of their claim is susceptible

19  to classwide proof," so long as one or more common questions predominate.  Castillo v.

20  Bank of Am., NA, 980 F.3d 723, 730 (9th Cir. 2020) (quoting Amgen, 568 U.S. at 469).

21      "Considering whether 'questions of law or fact common to class members

22  predominate' begins, of course, with the elements of the underlying cause of action."

23  Erica P. John Fund, Inc. v. Halliburton Co., 563 U.S. 804, 809 (2011) (quoting Fed. R.

24  Civ. P. 23(b)(3)).

25      Because the court has already concluded that plaintiffs cannot satisfy the

26  commonality requirement as to their fraud/conversion claims and inaccurate wage

27  statement claim, the court will address only plaintiffs' claims for missed meal and rest

28  breaks.

United States District Court
Northern District of California

Cal. Labor Code §§ 226.7 and 512 require employers to provide ten minute rest periods for every four hours worked, and to provide 30 minute meal periods for every shift of five hours or longer.  See Cal. Labor Code §§ 226.7, 512; see also 8 Cal. Code Regs., §§ 11090.  California law requires employers to make breaks available, but they need not ensure that employees actually take those breaks.  See Brinker Rest. Corp. v. Sup. Ct., 53 Cal.4th 1004, 1039-40 (2012).

Plaintiffs argue that the predominance requirement is met because FedEx sets "package volume, timing requirements, and operating procedures" on a class-wide basis that "impede the drivers' ability to take breaks and/or pressure them to work through their breaks."  Dkt. 281-1 at 23, 34.

Plaintiffs' primary evidence on this claim is the data cited in its expert report.  See Dkt. 287-1.  Plaintiffs' expert analyzed three categories of driver data: (1) scanner data, showing the time that P&D drivers were dispatched at the beginning of the day and the time they returned at the end of the day, as well as the time logged as on/off duty, (2) stop level data, showing the times of each delivery made by P&D drivers during a given day, and (3) linehaul driver logs, showing the times that linehaul drivers were logged as on/off duty.  See Dkt. 287-1, ¶¶ 5-7.  Each data set was made up of a 25% random sample of drivers.

As to the scanner data, plaintiffs' expert opined that over 99.95% of the work days had more than five hours of on-duty time without any off-duty break showing in the data.  Dkt. 287-1, ¶ 8.

As to the stop level data, plaintiffs' expert opined that nearly 75% of shifts over five hours showed no gap between deliveries of at least 30 minutes – in other words, no possibility of taking a meal break during that shift.  See Dkt. 287-1, ¶ 11.

As to the linehaul driver logs, plaintiffs' expert opined that nearly 50% of work days had more than five hours of on-duty time without any off-duty break showing in the data, and that over 50% of work days over ten hours had no off-duty break showing in the data.  See Dkt. 287-1, ¶¶ 20, 21.  Those rates increase if the linehaul drivers' time in the trucks'

"sleeper berth" is counted as on-duty time.  Id., ¶¶ 18, 19.

FedEx raises a number of challenges to the conclusions drawn by plaintiffs' expert.  First, as to both the scanner data and the linehaul driver logs, FedEx argues that they are not evidence of any missed breaks because the on/off-duty logs run continuously, even when the drivers are taking breaks, because the data is used for purposes of the DOT's 14-hour daily limit.  Dkt. 304 at 18.

Plaintiffs' response to this argument is a technical one, arguing that the DOT's definition of "on duty" means that the driver must be "in readiness to work," and that meal/rest breaks are compliant only if the driver is "off duty."  Dkt. 326 at 19-20.  In other words, plaintiffs argue that, if drivers were logged in as "on duty," that means they were ready to work, and thus could not have received a legally compliant break.

FedEx also raises a broader challenge to plaintiffs' evidentiary showing – arguing that it does not account for any drivers that had the opportunity to take breaks but elected not to take them.  See Dkt. 304 at 28-30.  Indeed, FedEx presents evidence that a number of service providers took steps to ensure that drivers had opportunities to take breaks.  In particular, FedEx Ground filed with its opposition brief a document titled Appendix A, a "table summarizing factual differences among service providers."  Dkt. 304-1.  The table has entries for 33 different ISPs, listing (among other things) whether the ISP "instructed employees to take breaks" and whether they took "actions to enforce breaks."  Id.

In the court's view, the latter of those categories is more important.  Plaintiffs' theory is that the volume of packages/deliveries and the time pressure made it functionally impossible to take breaks, which is not necessarily undermined by an "instruction" to take breaks, but it is undermined by concrete actions that ISPs may have taken to ensure that the drivers took breaks.  In other words, a company can "instruct" its employees to take breaks without actually allowing the opportunity to take breaks as required by Brinker.  For instance, in Alberts v. Aurora Behavioral Health Care, the California Court of Appeal reversed the trial court's denial of certification because it did

16

not properly consider plaintiffs' claim that "notwithstanding [the employer's] written policy, [it] actually operates under policies that render illusory its employees' ability to take meal and rest breaks in the first place." 241 Cal.App.4th 388, 411 (2015). However, if a company took affirmative steps such as having employees record their breaks, that would indeed undermine any allegation of missed meal/rest breaks.

And based on FedEx's Appendix A, it appears that some ISPs did actually take actions to enforce the taking of breaks. For example, of the 33 service providers cited in Appendix A, at least eight of them have drivers record their breaks on their timesheets. See Dkt. 304-1.

In support of their argument that drivers did not have the opportunity to take breaks, plaintiffs cite to a compendium of driver declarations. See Dkt. 287-2. In general, the substance of the driver declarations is compelling, and serves as strong counter-evidence to FedEx's argument that any missed breaks are the result of drivers voluntarily choosing to skip breaks. In particular, drivers testified to needing to urinate in bottles to stay on schedule, and to receiving calls from the dispatch center putting pressure on them to make faster deliveries – this testimony presents a merits dispute over whether these drivers truly had the opportunity to take breaks. See, e.g., Dkt. 287-2 at 259, 406, 423, 459, 478,

However, on this motion, the issue is not whether these particular drivers did indeed miss breaks due to pressure from FedEx – the issue is whether the question of missed breaks can be resolved on a classwide basis. And the overarching problem with plaintiffs' showing is that it fails to account for any differences between ISPs with respect to their efforts to ensure that drivers had the opportunity to take breaks.

As mentioned above, FedEx's Appendix A includes entries for 33 different ISPs and lists any actions that the ISP took to ensure that drivers could take breaks. See Dkt. 304-1. Plaintiffs' compendium of driver declarations contains statements from drivers from only 15 of those ISPs. Compare Dkt. 287-2 with Dkt. 304-1.

At the hearing, the court asked the parties for clarification on how many ISPs

17

United States District Court
Northern District of California

1    were involved in the case in total – i.e., how many ISPs employed the drivers who make

2    up the putative class.  FedEx cited one of its witness declarations, which states that

3    FedEx contracted with 895 ISPs during the class period.  See Dkt. 305-1, ¶ 7.

4          Plaintiffs' compendium contains a total of 64 driver declarations.  See Dkt. 287-2.

5    While some drivers worked for multiple ISPs, the total number of ISPs represented by

6    those driver declarations is still only approximately 80, which represents a small fraction

7    of the nearly 900 ISPs at issue in the case.  Thus, plaintiffs have not made any direct

8    showing as to any missed breaks by drivers for the vast majority of ISPs involved in this

9    case.

10         Additionally, plaintiffs' expert's report does not make any distinction between

11   different ISPs.  Instead, all of the data is combined together, so there is no way to

12   determine whether some ISPs had a higher rate of missed breaks than others.

13         The evidence before the court suggests that the factfinder will need to consider

14   every ISP separately when determining whether its drivers were wrongfully deprived of

15   their opportunity to take meal/rest breaks.  Even assuming that FedEx is a joint employer

16   of the drivers, and even assuming that there are common issues regarding FedEx's

17   liability for the drivers' missed breaks, the record shows that some ISPs took steps to

18   "cure'" any missed meal/rest breaks, and because plaintiffs' evidence does not show that

19   the frequency of missed breaks is similar across ISPs, the court concludes that plaintiffs

20   cannot satisfy Rule 23(b)(3)'s predominance requirement as to their missed meal/rest

21   break claims.

22         Because the variation between ISPs prevents plaintiffs from being able to satisfy

23   the predominance prong, the court need not address the other arguments raised by the

24   parties as to predominance – including federal preemption, choice of law, and the

25   inclusion of sleeper berth time for linehaul drivers.

26         With regard to plaintiffs' fraud/conversion claim and inaccurate wage statement

27   claim, the court concludes that plaintiffs cannot satisfy Rule 23(b)(3)'s predominance

28   requirement for the same reasons that they cannot satisfy Rule 23(a)'s commonality

requirement.

f.      Superiority and manageability

Rule 23(b)(3) requires the court to determine that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  The superiority prong of Rule 23(b)(3) requires a court to determine "whether the objectives of the particular class action procedure will be achieved in the particular case."  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1023 (9th Cir. 1998), overruled on other grounds by Dukes, 564 U.S. at 338.  Rule 23(b)(3) provides four factors to evaluate superiority: (1) the class members' interests in controlling litigation, (2) the nature and extent of other litigation concerning the same controversy, (3) the desirability of concentrating the litigation of the claims in this forum, and (4) the difficulties of managing the case as a class action.  Fed. R. Civ. P. 23(b)(3).

FedEx argues that individual or group actions against service providers is a superior option to a class action.  Dkt. 304 at 37.  FedEx also argues that plaintiffs offer only a cursory "trial plan" in a footnote, and further argue that the plan is unmanageable. Dkt. 304 at 38-39.  Plaintiffs' footnote states that they "may propose bifurcating the proceedings pursuant to Rule 42, whereby the merits of the joint employer issue could be decided first, followed by the determination of liability and damages at later stages."  Dkt. 281-1 at 42, n.9.  FedEx characterizes this footnote as "an admission that classwide litigation inevitably will devolve into many trials."  Dkt. 304 at 39.  FedEx argues that plaintiffs are actually asking for "tri-furcation" – not bifurcation – as they seek one trial on joint employment, one trial on liability, and then at least one more trial for damages.  Id.

As discussed in connection with the "predominance" requirement, the evidentiary record shows variation in the meal and rest break policies of the various ISPs.  As a result, the court would need to hear evidence regarding the meal and rest break policy of every ISP in order to determine whether there were any underlying violations for which FedEx could be liable.  The need for such separate evidence, in addition to precluding a finding of predominance, also precludes a finding of superiority and manageability.

United States District Court
Northern District of California

1   Moreover, the need for multiple phases of trial, combined with the vagueness of plaintiffs'

2   trial plan, lead the court to conclude that plaintiffs have not established superiority or

3   manageability under Rule 23(b)(3).

4          g.     Ascertainability

5       FedEx challenges the ascertainability of the proposed class, but the Ninth Circuit

6   has held that the court is not to consider ascertainability at the class certification stage.

7   Briseno v. ConAgra Foods, Inc., 844 F.3d 1121, 1124 n.4 (9th Cir. 2017).

8         4.    Motion to seal

9       Plaintiffs have filed a motion to seal portions of its class certification motion, along

10   with certain exhibits designated as confidential by FedEx.  See Dkt. 279.  FedEx filed a

11   supporting declaration arguing that the material contains sensitive and confidential

12   business information.  See Dkt. 296.

13       "There is a general principle in favor of public access to federal court records."

14   Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978). "The proponent of sealing

15   bears the burden with respect to sealing.  A failure to meet that burden means that the

16   default posture of public access prevails."  Kamakana v. City & City of Honolulu, 447 F.3d

17   1172, 1182 (9th Cir. 2006).

18       The Ninth Circuit has recognized that two different standards may apply when a

19   request to seal a document is made in connection with a motion—namely the "compelling

20   reasons" standard or the "good cause" standard.  Ctr. For Auto Safety v. Chrysler Grp.,

21   LLC, 809 F.3d 1092, 1096-97 (9th Cir. 2016).  The compelling reasons standard applies

22   to any sealing request made in connection with a motion that is "more than tangentially

23   related to the merits of a case."  Id. at 1101.

24       Under that standard, a court may seal a record only if it finds a "compelling

25   reason" to support such treatment and articulates "the factual basis for its ruling, without

26   relying on hypothesis or conjecture."  Ctr. For Auto Safety, 809 F.3d at 1096-97.  If it has

27   made such finding, the court "must then conscientiously balance the competing interests

28   of the public and the party who seeks to keep certain judicial records secret." Id. at 1097.

1    Factors relevant to that balancing test include the public interest "in understanding the

2    judicial process," Pintos v. Pac. Creditors Ass'n, 605 F.3d 665, 679 n.6 (9th Cir. 2010), as

3    well as the volume of material sought to be sealed, Algarin v. Maybelline, LLC, 2014 WL

4    690410, at *3 (S.D. Cal. Feb. 21, 2014).

5         The Ninth Circuit has expressly acknowledged that "[w]hat constitutes a

6    'compelling reason' is best left to the sound discretion of the trial court."  Ctr. for Auto

7    Safety, 809 F.3d at 1097.  "Examples include when a court record might be used to

8    gratify private spite or promote public scandal, to circulate 'libelous' statements, or 'as

9    sources of business information that might harm a litigant's competitive standing.'"  Id.

10        As applied to this case, the court concludes that the sealing request is overbroad

11   and supported with largely-boilerplate statements about the potential harm of disclosure.

12   In particular, FedEx's declaration filed in support of sealing contains a list that simply

13   recites the name of each document, and then states in general terms that the document

14   contains FedEx's "confidential, proprietary, and trade secret information regarding details

15   of its business operations" and that disclosure "would irreparably harm [FedEx] and

16   would provide an unfair competitive advantage to other marketplace participants if

17   released to the public."  See Dkt. 296, ¶ 6(a) through 6(j).

18        The motion to seal is DENIED.  Plaintiffs shall file an unredacted copy of their

19   motion for class certification on the public docket.  Because the court need not rely on the

20   exhibits for which sealing is sought, those documents do not need to be filed publicly on

21   the docket.

22                                      **CONCLUSION**

23        For the reasons stated above, plaintiffs' motion for class certification (Dkt. 287) is

24   DENIED.  Specifically, class certification is denied as to the misrepresentation/conversion

25   claims and inaccurate wage statement claim due to lack of commonality and

26   predominance, denied as to the meal/rest break claim due to lack of predominance, and

27   denied as to the section 17200 claim because it is dependent on the other asserted

28   claims.

United States District Court
Northern District of California

1    Plaintiffs' motion to seal (Dkt. 279) is DENIED.  Plaintiffs shall file an unredacted

2  version of their motion for class certification on the public docket within seven (7) days of

3  this order.

4    As discussed at the hearing, the parties are directed to submit a stipulation to

5  allow amendment of the complaint for the limited purpose of changing the plaintiffs'

6  names on the case caption.  The stipulation must be filed within fourteen (14) days of the

7  date of this order.

8    Finally, a case management conference is set for **May 19, 2022** at **2:00 p.m.**

9

10    **IT IS SO ORDERED.**

11  Dated:  March 25, 2022

12                                              _/s/ Phyllis J. Hamilton_

13                                              PHYLLIS J. HAMILTON
                                                United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28