Brandy Thompson Cody SBN 196923
Email: bcody@fisherphillips.com
Amberly A. Morgan (SBN 273891)
Email: amorgan@fisherphillips.com
FISHER & PHILLIPS LLP
4747 Executive Dr., Suite 1000
San Diego, CA 92121-3113
Telephone: (858) 597-9600
Fax Number: (858) 597-9601

Jessica G. Scott, *appearing pro hac vice*
Email: scott@wtotrial.com
David J. Schaller, *appearing pro hac vice*
Email: schaller@wtotrial.com
Juan S. Ramirez, *appearing pro hac vice*
Email:ramirez@wtotrial.com
Andrew H. Myers, admitted Pro Hac Vice
Email: myers@wtotrial.com
WHEELER TRIGG O'DONNELL LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202-5647
Telephone: (303) 244-1800
Facsimile: (303) 244-1879

[ADDITIONAL COUNSEL LISTED
ON NEXT PAGE]

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANNON SOBASZKIEWICZ and KEVIN STERLING, individually and on behalf of all other similarly situated, and as a proxy of the State of California on behalf of aggrieved employees, and HERMAN OVERPECK, individually only,<br><br>Plaintiffs,<br><br>vs.<br><br>FEDEX CORPORATION; FEDEX GROUND PACKAGE SYSTEM, INC.,<br><br>Defendants. | Case No.  4:18-cv-07553-PJH (DMR)<br><br>**FEDEX GROUND PACKAGE SYSTEM, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>*[Declaration of Jessica Scott, Declaration of Timmy Dean Means, Request for Judicial Notice, and Proposed Order]*<br><br>Date:     May 12, 2022<br>Time:     1:30 p.m.<br>Dept:     Courtroom 3 – 3rd Floor |

FEDEX GROUND PACKAGE SYSTEM, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

Albert C. Lin (SBN 304808)
Email: alin@fisherphillips.com
Myngoc T. Nguyen
Email: mnguyen@fisherphillips.com
Kristina N. Buan
Email: kbuan@fisherphillips.com
FISHER & PHILLIPS LLP
2050 Main Street, Suite 1000
Irvine, California 92614
Telephone: (949) 851-2424
Facsimile: (949) 851-0152


Attorneys for Defendant
FEDEX GROUND PACKAGE SYSTEM, INC.

FEDEX GROUND PACKAGE SYSTEM, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ iii

NOTICE OF MOTION, MOTION, AND STATEMENT OF ISSUES................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES................................................... 1

STATEMENT OF UNDISPUTED, MATERIAL FACTS ............................................. 3

    A.    FedEx Ground Contracts with Thousands of Small Businesses to Provide Delivery Services Throughout the United States ........................ 3

    B.    Plaintiffs Worked as Drivers for Various Service Providers, Primarily or Exclusively, in Heavy Vehicles ............................................. 4

    C.    FedEx Ground Excludes Service Providers and Their Employees from Eligibility in Its Employee Benefits Plans........................................ 5

SUMMARY JUDGMENT STANDARD ...................................................................... 6

ARGUMENT ............................................................................................................. 7

I.     PLAINTIFFS' COMMON-LAW CLAIMS FOR WAGES AND BENEFITS FAIL......................................................................................................... 7

    A.    Plaintiffs Cannot Prove All Elements of a Fraudulent Misrepresentation Claim As a Matter of Law ...................................... 8

        1.    Plaintiffs Cannot Prove Damages When They Have No Right to Benefits Under the Plain Language of the Benefit Plans ... 8

        2.    Plaintiffs Cannot Prove an Actionable Misrepresentation Because Their Claim Is Based on a Legal Position Taken by FedEx Ground............................................................................ 10

        3.    The Record Lacks Any Evidence Showing Plaintiffs Can Prove Justifiable Reliance .................................................... 11

    B.    Plaintiffs Cannot Prove a Property Interest in Employee Benefits to Support a Viable Conversion Claim...................................... 12

    C.    The California Labor Code Preempts Plaintiffs' Wage Claims for Fraud and Conversion........................................................................ 14

II.    CALIFORNIA'S MOTOR CARRIER EXEMPTION BARS PLAINTIFFS' OVERTIME CLAIM .......................................................................... 15

III.   PLAINTIFFS' MEAL-AND-REST-BREAK CLAIMS ARE PREEMPTED............. 17

IV.   PLAINTIFFS' WAGE STATEMENT CLAIM FAILS ......................................... 19

    A.    The Undisputed Evidence Shows that Plaintiffs Cannot Prove Their Claim for a Violation of Section 226 ............................................. 19

    B.    Plaintiff Overpeck's Wage Statement Claim Also Fails for Most of His Time Driving Because He Was Based in New Jersey....................... 22

V.    PLAINTIFFS CANNOT PROVE THAT FEDEX GROUND HAD TO KEEP PAYROLL RECORDS YET WILLFULLY FAILED TO DO SO ............................ 22

VI.  FEDEX GROUND HAS A GOOD-FAITH BELIEF THAT IT IS NOT
     PLAINTIFFS' EMPLOYER, PRECLUDING PLAINTIFFS' WAITING TIME,
     WAGE STATEMENTS, AND PAYROLL RECORD CLAIMS ................................ 23

VII.  PLAINTIFFS' REMAINING CLAIMS FAIL WHERE DERIVATIVE .................... 24

VIII.  OVERPECK'S REPRESENTATIVE PAGA CLAIM MUST BE DISMISSED
       AND THE REMAINING PAGA CLAIM TIME LIMITED ....................................... 25

CONCLUSION ......................................................................................................... 25

FEDEX GROUND PACKAGE SYSTEM, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

**<u>TABLE OF AUTHORITIES</u>**

**Cases**

*Abatie v. Alta Health & Life Ins. Co.*,
   458 F.3d 955 (9th Cir. 2006) ........................................................................9

*Aetna Health Inc. v. Davila*,
   542 U.S. 200 (2004) .....................................................................................7

*Aguilar v. CTB McGraw-Hill, LLC*,
   No. C 06-02160 JW, 2006 WL 8446861
   (N.D. Cal. Dec. 5, 2006)...................................................................... 7, 9, 10

*Akkerman v. Mecta Corp.*,
   152 Cal. App. 4th 1094 (2007) .....................................................................8

*Aleksick v. 7-Eleven, Inc.*,
   205 Cal. App. 4th 1176 (2012) ...................................................................25

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) .....................................................................................7

*Arroyo v. Int'l Paper Co.*,
   No. 17-CV-06211-BLF, 2020 WL 887771
   (N.D. Cal. Feb. 24, 2020) .....................................................................19, 23

*Ayala v. U.S. Xpress Enters., Inc.*,
   No. EDCV 16-137-GW(KKX), 2019 WL 1986760
   (C.D. Cal. May 2, 2019) .............................................................................18

*Barrientos v. 1801-1825 Morton LLC*,
   583 F.3d 1197 (9th Cir. 2009)....................................................................17

*Bernal v. FedEx Ground Package Sys. Inc.*,
   No. 2:15-cv-1448-DDP(PLAx), 2015 WL 4273034
   (C.D. Cal. July 14, 2015) ......................................................................10, 11

*Brinker Rest. Corp. v. Superior Ct.*,
   53 Cal. 4th 1004 (2012)..............................................................................15

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ..................................................................................6, 7

*Cipollone v. Liggett Grp., Inc.*,
   505 U.S. 504 (1992) ...................................................................................17

*City of New York v. F.C.C.*,
   486 U.S. 57 (1988) .....................................................................................17

*Collins v. Overnite Transp. Co.*,
   105 Cal. App. 4th 171 (2003) .....................................................................15

*Cox v. Gannett Co.*,
   No. 1:15-cv-02075-JMS-DKL, 2016 WL 1425525

(S.D. Ind. Apr. 12, 2016) ............................................................................. 7

*Culp v. Konica Minolta Bus. Sols. U.S.A., Inc.*,
No. CV174274JFWJEMX, 2018 WL 5928185
(C.D. Cal. Feb. 28, 2018) ......................................................................... 25

*Curry v. Equilon Enters., LLC*,
23 Cal. App. 5th 289 (2018) ..................................................................... 24

*Dalton v. Lee Publ'ns, Inc.*,
No. 08CV1072 BTM NLS, 2011 WL 1045107
(S.D. Cal. Mar. 22, 2011) ......................................................................... 24

*Deherrera v. Decker Truck Line, Inc.*
820 F.3d 1147 (10th Cir. 2016) ................................................................. 16

*Espinoza v. Hepta Run, Inc.*,
74 Cal. App. 5th 44 (2022) ....................................................................... 18

*Farmers Ins. Exch. v. Zerin*,
53 Cal. App. 4th 445 (1997) ..................................................................... 13

*Goldilocks Corp. of S. Cal. v. Ramkabir Motor Inn Inc.*,
26 F. App'x 693 (9th Cir. 2002) ............................................................... 11

*Green v. Party City Corp.*,
No. CV-01-09681 CAS (EX), 2002 WL 553219
(C.D. Cal. Apr. 9, 2002) ........................................................................... 14

*Gustafson v. Bell Atl. Corp.*,
171 F. Supp. 2d 311 (S.D.N.Y. 2001) ......................................................... 8

*Hallak v. L3 Commc'ns Corp.*,
490 F. App'x 2 (9th Cir. 2012) ........................................................... 10, 11

*Harris v. Vector Mktg. Corp.*,
656 F. Supp. 2d 1128 (N.D. Cal. 2009) ..................................................... 10

*Henderson v. Equilon Enters., LLC*,
40 Cal. App. 5th 1111 (2019) ................................................................... 24

*Henry v. Cent. Freight Lines, Inc.*,
No. 2:16-cv-00280-JAM-EFB, 2019 WL 2465330
(E.D. Cal. June 13, 2019) ......................................................................... 18

*Hensley v. Nw. Permanente P.C. Ret. Plan & Tr.*,
258 F.3d 986 (9th Cir. 2001) ...................................................................... 9

*Hernandez v. Mendoza*,
199 Cal. App. 3d 721 (1988) ..................................................................... 24

*In re Bimbo Bakeries USA FLSA Actions*,
No. C 05-00829 JW, 2008 WL 10850153
(N.D. Cal. Oct. 24, 2008) ......................................................................... 24

FEDEX GROUND PACKAGE SYSTEM, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

*In re Wal-Mart Stores, Inc. Wage & Hour Litig.*,
   505 F. Supp. 2d 609 (N.D. Cal.2007) ...................................................................... 14

*Int'l Bhd. of Teamsters, Loc. 2785 v. Fed. Motor Carrier Safety Admin.*,
   986 F.3d 841 (9th Cir. 2021) ................................................................................ 18

*Jaeger v. Matrix Essentials, Inc.*,
   236 F. Supp. 2d 815 (N.D. Ohio 2002) .................................................................. 9

*Keenan v. Allan*,
   91 F.3d 1275 (9th Cir. 1996) .................................................................................. 7

*Kim v. Westmoore Partners, Inc.*,
   201 Cal. App. 4th 267 (2011) .............................................................................. 13

*Klitzke v. Steiner Corp.*,
   110 F.3d 1465 (9th Cir. 1997) ......................................................................... 15, 16

*Kremen v. Cohen*,
   337 F.3d 1024 (9th Cir. 2003) .............................................................................. 12

*La Jolla Cove Investors, Inc. v. Sultan Corp. Ltd.*,
   No. 11cv1628 JM(RBB), 2011 WL 4916138
   (S.D. Cal. Oct. 17, 2011) ...................................................................................... 13

*Labrie v. UPS Supply Chain Sols, Inc.*,
   No. C 08-3182 PJH, 2008 WL 11404501
   (N.D. Cal. Oct. 3, 2008) ................................................................................ 10, 11

*Lazar v. Superior Ct.*,
   12 Cal. 4th 631 (1996) ........................................................................................... 8

*Lightfoot v. Wahoo Logistics, Inc.*
   No. FCS050578 (Cal. Super. Ct. Feb. 1, 2022) .................................................... 24

*Madrigal v. Tommy Bahama Grp., Inc.*,
   No. CV 09-08924 SJO MANX, 2010 WL 4384235
   (C.D. Cal. Oct. 18, 2010) ..................................................................................... 14

*Magadia v. Wal-Mart Assocs., Inc.*,
   999 F.3d 668 (9th Cir. 2021) ........................................................................... 20, 21

*Martinez v. Combs*,
   49 Cal. 4th 35 (2010) ........................................................................................... 24

*Mejia v. Farmland Mutual Insurance*,
   No. 2:17–cv–00570–TLN–KJN, 2018 WL 3198006
   (E.D. Cal. June 26, 2018) .............................................................................. 20, 21

*Miller v. Yokohama Tire Corp.*,
   358 F.3d 616 (9th Cir. 2004) ................................................................................ 10

*Morris v. McComb*,
   332 U.S. 422 (1947) ............................................................................................. 17

v     Case No. 4:18-cv-07553-PJH (DMR)

FEDEX GROUND PACKAGE SYSTEM, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

*Nelson v. FedEx Ground Package Sys., Inc.*,
  No. 1:18-cv-01378, 2019 WL 1437765
  (D. Colo., Feb. 8, 2019) ............................................................................................. 16

*Nguyen v. Stephens Inst.*,
  529 F. Supp. 3d 1047 (N.D. Cal. 2021) ........................................................................ 13

*Noe v. Superior Ct.*,
  237 Cal. App. 4th 316 (2015) ......................................................................... 20, 21, 22

*Oglesby v. FedEx Ground Package Sys., Inc.*,
  No. 3:20-CV-346, 2021 WL 3560884
  (S.D. Ohio Aug. 11, 2021) ........................................................................................ 8, 9

*Patton v. Midwest Constr. Servs., Inc.*,
  No. CV 19-8580-JFW(MAAX), 2021 WL 2982277
  (C.D. Cal. June 11, 2021) ............................................................................................ 18

*Porch v. Masterfoods, USA, Inc.*,
  685 F. Supp. 2d 1058 (C.D. Cal. 2008),
  *aff'd*, 364 F. App'x 365 (9th Cir. 2010) ..................................................................... 25

*Price v. Starbucks Corp.*,
  192 Cal. App. 4th 1136 (2011) .................................................................................... 21

*Reber v. AIMCO*,
  No. SA CV07–0607 DOC (RZx), 2008 WL 4384147
  (C.D. Cal. Aug. 25, 2008) ........................................................................................... 24

*Remington v. J.B. Hunt Transport, Inc.*,
  Nos. 15-10010-RGS & 15-13019-RGS, 2017 WL 1552316
  (D. Mass. Apr. 28, 2017) ............................................................................................... 7

*Ridgeway v. Wal-Mart Stores, Inc.*,
  No. C 08-05221 SI, 2014 WL 2600326
  (N.D. Cal. June 10, 2014) ............................................................................................ 20

*Robinson v. Chefs' Warehouse, Inc.*,
  No. 15-CV-05421-RS, 2019 WL 4278926
  (N.D. Cal. Sept. 10, 2019) ........................................................................................... 18

*Salazar v. McDonald's Corp.*,
  944 F.3d 1024 (9th Cir. 2019) ..................................................................................... 24

*Sales v. United Road Svcs.*,
  No. 19-cv-08404-JST, 2020 WL 4035072
  (N.D. Cal. July 17, 2020) ....................................................................................... 18, 19

*Salter v. Quality Carriers, Inc.*,
  No. CV 20-479-JFW(JPRX), 2021 WL 5049054
  (C.D. Cal. Oct. 27, 2021) ............................................................................................ 18

*Santiago v. Amdocs, Inc.*,
  No. C 10-4317 SI, 2011 WL 1303395
  (N.D. Cal. Apr. 2, 2011) .............................................................................................. 14

*Sharp v. Waterfront Rests.*,
   No. 99-CV-200 TW (AJB), 1999 WL 1095486
   (S.D. Cal. Aug. 2, 1999) ............................................................................................ 20

*Shaw v. Delta Air Lines, Inc.*,
   463 U.S. 85 (1983) ..................................................................................................... 8

*Stephenson v. Argonaut Ins. Co.*,
   125 Cal. App. 4th 962 (2004) .................................................................................. 10

*Sweet v. United Parcel Serv., Inc.*,
   No. 09-02653, 2010 WL 11507624
   (C.D. Cal., Oct. 13, 2010) ........................................................................ 15, 16, 17

*Thole v. U. S. Bank N.A*,
   140 S. Ct. 1615 (2020) .............................................................................................. 13

*Tomco v. Prada USA Corp.*,
   484 F. App'x 99 (9th Cir. 2012) ............................................................................ 25

*Utne v. Home Depot U.S.A., Inc.*,
   No. 16-CV-01854-RS, 2019 WL 3037514
   (N.D. Cal. July 11, 2019) ........................................................................................ 23

*Vizcaino v. Microsoft Corp.*,
   120 F.3d 1006 (9th Cir. 1997) ................................................................................ 21

*Voris v. Lampert*,
   7 Cal. 5th 1141 (2019) ................................................................................. 12, 13, 14

*Ward v. United Airlines, Inc.*,
   9 Cal. 5th 732 (2020) ........................................................................................ 20, 22

*Wolf v. Coca-Cola Co.*,
   200 F.3d 1337 (11th Cir. 2000) ................................................................................ 9

*Woods v. Vector Mktg. Corp.*,
   No. C-14-0264 EMC, 2015 WL 2453202
   (N.D. Cal. May 22, 2015) ........................................................................................ 24

*Yastrab v. Apple Inc.*,
   173 F. Supp. 3d 972 (N.D. Cal. 2016) ............................................................ 8, 11

**Statutes**

29 U.S.C. § 1002 ............................................................................................................... 8

29 U.S.C. § 1003 ............................................................................................................... 8

49 U.S.C. § 113 ............................................................................................................... 18

49 U.S.C. § 31141 ................................................................................................... 17, 18

Business and Professions Code Section §§ 17200 *et seq* ......................................... 4

Cal. Lab. Code § 1174.5 ........................................................................................ 22

Cal. Lab. Code § 226 ...................................................................................... 19, 20

Civ. Proc. Code § 340 ........................................................................................... 25

**Rules**

Fed. R. Civ. P. 56 ............................................................................................... 6, 7

**Regulations**

29 C.F.R. § 782.7 ................................................................................................. 16

49 C.F.R. § 1.87 .................................................................................................. 18

49 C.F.R. § 390.5 .......................................................................................... 15, 16

49 C.F.R. § 395.1 ................................................................................................ 15

8 C.C.R. § 11090 .......................................................................................... 15, 17

8 C.C.R. § 13520 ................................................................................................ 23

83 Fed. Reg. 67470-01 (2018) ............................................................................. 18

## NOTICE OF MOTION, MOTION, AND STATEMENT OF ISSUES

FedEx Ground notifies all parties and counsel of record that on May 12, 2022, at 1:30 p.m. it moves for summary judgment on Plaintiffs' claims on the following issues:

FedEx Ground is entitled to full judgment on Plaintiffs' claims for fraudulent misrepresentation (claim 1), conversion (claim 2), meal periods (claim 4), rest periods (claim 5), overtime (claim 7), payroll records (claim 8), accurate wage statements (claim 9), and waiting time penalties (claim 10). FedEx Ground is also entitled to judgment on Plaintiffs' claims for wages (claims 3 and 6), violations of the UCL (claim 11), and under PAGA (claim 12) to the extent those claims are derivative. Finally, FedEx Ground is entitled to dismissal of Overpeck's representative PAGA claim entirely, and for an entry of judgment that any remaining PAGA claim is limited to January 29, 2019, through present.

## MEMORANDUM OF POINTS AND AUTHORITIES

Many issues in this case are "hotly contested," as Plaintiffs' counsel has stated. This is particularly true when it comes to the issue of whether FedEx Ground jointly employed Plaintiffs along with their Service Provider employers. But, putting aside these "hotly contested" disputes, most of Plaintiffs' claims cannot stand against the applicable legal authority when applied to the facts in this case that are not, and cannot be, disputed. FedEx Ground is entitled to summary judgment as follows.

***Fraudulent Misrepresentation and Conversion (claims 1 and 2).*** (a) Plaintiffs have no entitlement to the benefits they claim under the plain language of those policies. As such, Plaintiffs cannot prove damages for their fraud claim, nor can they prove the required ownership interest for their conversion claim. (b) Plaintiffs' fraud claim is based on a purported misrepresentation of law about Plaintiffs' employment status. As this Court, and many others, have held, a misrepresentation of employment status is a non-actionable "misrepresentation of law." (c) Plaintiffs have not provided any evidence of justifiable reliance on a statement by FedEx Ground, resulting in a changed position. (d) Conversion, if it involves money, requires it to be a "specific, identifiable sum." The evidence shows that is not the case here. (e) Plaintiffs use their common-law claims to seek damages for the alleged deprivation of

"wages and other benefits of employment," but "the Labor Code's remedies are intended to be exclusive, and thus preclude common law claims based on the same conduct." (Order Denying Class Cert. 10, ECF 362.)

*Overtime (claim 7).* Because Plaintiffs drove vehicles that required them to comply with the U.S. Department of Transportation (DOT) hours-of-service regulations, California's Motor Carrier Exemption excludes Plaintiffs from any right to overtime pay.

*Meal and Rest Breaks (claims 4 and 5).* Because the DOT regulated Plaintiffs' hour of service, the Federal Motor Carrier Safety Act preempts California's meal-and-rest-break requirements.

*Wage Statements (claim 9).* (a) Plaintiffs provide no support for the premise that a violation occurs if a putative joint employer is not listed on a wage statement. (b) Plaintiffs have no evidence that they were prevented from making any grievances or confused in terms of unemployment or tax issues and, therefore, they cannot prove any injury. (c) Plaintiffs have provided no evidence that FedEx Ground knowingly and intentionally violated this statute. Instead, the opposite is true: there is a good-faith dispute as to whether FedEx Ground is Plaintiffs' joint employer, particularly where no court has ever found FedEx Ground to be a joint employer. (d) As to Plaintiff Overpeck, his claim fails for all but eight weeks of time because he was based in New Jersey and not spending a majority of his time in California. (e) To the extent based on a failure to pay overtime or meal-and-rest-break premiums, this claim also fails as derivative.

*Payroll Records (claim 8).* Plaintiffs have no evidence that FedEx Ground willfully violated the Labor Code's recordkeeping requirements, and any purported violated committed by Plaintiffs' Service Provider employers cannot be imputed to FedEx Ground. Further, FedEx Ground's good-faith basis to believe it was not Plaintiffs' joint employer precludes liability.

*Waiting Time (claim 10).* As with Plaintiffs' payroll records claim, this claim fails due to FedEx Ground's good-faith basis to believe it was not Plaintiffs' joint employer.

*Failure to Pay for All Hours Worked (claim 3) and Failure to Pay Minimum Wage (claim 6).* These claims fail to the extent they are based on a supposed failure to provide

benefits, pay overtime, or pay meal-and-rest-break premiums.

**Unfair Competition and Unlawful Business Practices (claim 11).** This claim fails where based on the underlying claims that fail as discussed above.

**PAGA (claim 12).** (a) This claim fails where based on the underlying claims that fail as discussed above. (b) Because Plaintiff Overpeck now proceeds only in his individual capacity, his representative PAGA claim must be dismissed. As a result, the remaining Plaintiffs' PAGA claims are limited to alleged violations that occurred on or after January 29, 2019. (c) As to package-and-delivery drivers (in contrast to linehaul drivers), the PAGA time period starts on January 29, 2019, regardless of the dismissal of Mr. Overpeck's PAGA claim, because Mr. Overpeck's notice included only "TEAM TRACTOR TRAILER drivers."

## STATEMENT OF UNDISPUTED, MATERIAL FACTS

**A.** **FedEx Ground Contracts with Thousands of Small Businesses to Provide Delivery Services Throughout the United States**

FedEx Ground is a federally-registered motor carrier that operates a package pickup and delivery network throughout the United States, consisting of thousands of stations and hubs. (Decl. of T. Means (Means Decl.) ¶¶ 3-4, filed concurrently.) Customers contract with FedEx Ground for pickup and delivery of packages and for information about where their packages are in the delivery process. (*Id.* ¶ 5.) FedEx Ground, in turn, contracts with thousands of separate businesses, Service Providers, to provide (1) "linehaul services" to transport trailers of packages between FedEx Ground hubs and stations, and (2) "first-and-last mile" pickup and delivery service between FedEx Ground stations and customers. (*Id.*) Service Providers have their employees carry out the physical pickup and delivery or hub-to-hub transportation. (*Id.*)

Under their agreements, Service Providers agree to treat all personnel as their employees. (*Id.* ¶ 7.) Service Providers agree to "bear all expenses associated with the employment" of their employees, including "wages, salaries, [and] benefits." (*Id.*) They also "assume sole responsibility for . . . maintenance of payroll and employment records, and for compliance with Applicable Law, including without limitation, wage payment, final payment of wages, . . . overtime, and rest and meal periods." (*Id.*) Each year, Service Providers submit

to FedEx Ground a written certification of their compliance with these obligations, and FedEx Ground may request proof of compliance. (*Id.* ¶ 14.)

As a registered motor carrier, FedEx Ground is subject to the regulatory authority of the DOT and the Federal Motor Carrier Safety Administration ("FMCSA"). (*Id.* ¶¶ 3, 16.) DOT regulations impose numerous obligations on FedEx Ground, and on Service Providers because they operate under FedEx Ground's DOT authority. (*Id.* ¶ 16.) Any commercial motor vehicle driver who operates a vehicle with a Gross Vehicle Weight Rating (GVWR) of 10,001 pounds or more (a "heavy vehicle") is subject to the provisions of Part 395 of the Federal Motor Carrier Safety Regulations ("Hours of Service of Drivers"). (*Id.* ¶ 17.) Because linehaul drivers haul large volumes of freight long distances, they drive "big rigs"—what lay people think of as a semi-truck—that necessarily have a GVWR exceeding 26,000 pounds. (*Id.* ¶ 15.)

## B. Plaintiffs Worked as Drivers for Various Service Providers, Primarily or Exclusively, in Heavy Vehicles

Plaintiffs were employed as drivers by several Service Providers during the relevant period[1]—Plaintiff Sterling as a pickup and delivery driver, and Plaintiffs Overpeck and Sobaszkiewicz as linehaul drivers. (Sobaszkiewicz Decl. ¶¶ 3-4, 16, ECF 287-2 at 14-24; Sterling Decl. ¶¶ 1-3, ECF 287-2 at 25-38; Overpeck Dep. 18:22-19:18, 20:2-16, 50:11-51:21[2].) Plaintiffs admit that they discussed their pay with their Service Providers, and that their Service Providers paid them. (*See, e.g.,* Sterling Decl. ¶ 3; Sterling Dep. 103:10-22, 104:12-25; Sobaszkiewicz Decl. ¶ 3; Sobaszkiewicz Dep. 135:1-20, 166:6-167:14; Overpeck Dep. 195:1-7, 197:7-20, 199:5-200:18 & Ex. 15; *see also* Means Decl. ¶ 13.)

Records maintained for purposes of DOT compliance show that Mr. Sterling primarily drove heavy vehicles during the relevant period. Of the 1,176 days that Sterling drove, 1,013 was in a heavy vehicle, or 86 percent of the time. (Means Decl. ¶¶ 26-27 & Ex. D.) As linehaul

---

[1] Plaintiffs filed their Complaint on December 14, 2018. Their claim with the longest statute of limitations—for violation of Business and Professions Code Section §§ 17200 *et seq.* ("the UCL claim")—has a four-year statute of limitations. Thus, the relevant period is December 14, 2014, to the last day each Plaintiff drove for a Service Provider.

[2] All non-declaration exhibits are attached to the Declaration of J. Scott, filed concurrently.

drivers, Plaintiffs Overpeck and Sobaszkiewicz always drove heavy vehicles, either across the United States or between hubs in California. (Sobaszkiewicz Decl. ¶¶ 4, 7; Overpeck Dep. 228:6-230:16.) With the exception of the time he worked for Bondz, Mr. Overpeck worked for Service Providers based in New Jersey. (Overpeck Dep. 18:22-19:18, 20:2-16, 26:16-27:13, 50:11-51:21, 190:8-191:12, 192:8-24 & Ex. 15 at OVERPECK_000060-71.)

**C.     FedEx Ground Excludes Service Providers and Their Employees from Eligibility in Its Employee Benefits Plans**

FedEx Ground offers various benefits plans to certain employees, including health, retirement, and short- and long-term disability. (Beaudoin Dep. 34:15-35:20, 38:12-39:19, 55:5-21, 56:16-57:4, 64:15-18, 65:11-20, 78:15-80:20, 115:9-23, 117:1-13 & Exs. 2-6, 10-11.) FedEx Corporation, FedEx Ground's parent company, is the plan sponsor and administrator for some of these plans, while FedEx Ground is the sponsor and administrator for others. (*Id*. at 64:19-22, 74:13-75:1, 76:21-77:18.)

The plans provide coverage to an "Employee" or "Eligible Employee," as defined by each plan. (Beaudoin Dep. Exs. 2-6, 10-11.) Each plan's definition, however, expressly <u>excludes</u> Service Providers' employees. (*Id*. at 119:18-22 ("Q. Okay. So am I correct, sir, that no individual driving routes and delivering packages for FedEx Ground customers under an ISP independent service provider receives any health, retirement, pension, or disability benefits from FedEx Ground? A. That's correct. Q. And that FedEx Corp and/or FedEx Ground have exclusively excluded individuals from coverage in all of its benefit plans, correct? A. Yes."); *see also id*. at 103:5-12.) The following chart makes this clear:

| Benefit Plan | Relevant Exclusionary Language |
|---|---|
| FedEx Corporation Employee's Pension Plan | "The term Employee shall not include any independent contractor or service provider or agent or employee of an independent contractor or service provider, even if such independent or other person is later determined by a court or administrative agency having competent jurisdiction to be a common law employee of the employer." (Beaudoin Dep. 104:6-105:21, & Ex. 2, ¶ 1.29.) |
| FedEx Corporation Group Health Plan | "Employee . . . shall not include an individual who is classified by participating employer as a leased employee, an independent contractor, or an agent, or an employee of an independent |

| | |
|---|---|
| | contractor, regardless of whether such individual is later reclassified as a common law employee by a court or government agency having competent jurisdiction." (*Id.* 108:1-25, & Ex. 3.) |
| FedEx Corporation Retirement Savings Plan | "Eligible Employee shall mean an Employee who is . . . not a leased employee, an independent contractor, or an employee or agent of an independent contractor, regardless of whether a court or government agency of competent jurisdiction subsequently re-classifies such individual as a common law employee of a participating employer." (*Id.* 109:16-111:9, & Ex. 4, ¶ 1.25.) |
| Healthcare Account Plan of FedEx Ground Package System, Inc. | "[T]he term '[E]mployee' shall not include any individual who has been classified by the employer as an independent contractor, leased employee, or any other classification other than common law employee, even if such individual has been reclassified as common law employee of the employer pursuant to . . . a court of competent jurisdiction." (*Id.* 112:8-113:10, & 5, ¶ 1.8.) |
| FedEx Ground Package System, Inc. Flex Plan | "'Employee' . . . shall not include any individual characterized by an Employer as an independent contractor, leased employee, or any other individual who is not treated by an employer as an employee, for purposes of withholding federal income tax, regardless of any contrary . . . judicial determination relating to such employment status." (*Id.* 113:11-114:16, & Ex. 6, ¶ 1.10.) |
| FedEx Ground Package System, Inc. Long Term Disability Plan | "<u>Employee</u> shall mean an individual employed by the Employer but shall not include an individual who is classified by an employer as a leased employee, an independent contractor, or an agent or employee of an independent contractor, regardless of whether any such person who is classified by an Employer as an independent contractor is later reclassified as a common law employee by a court or government agency having competent jurisdiction." (*Id.* 115:20-116:22, & Ex. 10, § 1.1(n).) |
| FedEx Ground Package System, Inc. Short-Term Disability | "'Employee' . . . exclud[es] however, an employee . . . [w]ho is treated by the Employer as an independent contractor or leased employee, or otherwise not treated as an employee under the employer's general policies or guidelines, even if such individual is later determined by a court or an administrative agency having competent jurisdiction to be a common law employee of the employer." (*Id.* 118:3-119:20, & Ex. 11, ¶ 2.7.) |

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the movant shows "there is no genuine dispute as to any material fact" with respect to an essential element of the non-moving party's claim and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to designate "specific facts showing that there is a genuine issue for trial," and to identify, with reasonable particularity, the evidence that precludes summary judgment. *Celotex*, 477 U.S. at 323; *see also* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."); *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## ARGUMENT

## I. PLAINTIFFS' COMMON-LAW CLAIMS FOR WAGES AND BENEFITS FAIL

Recognizing they cannot bring an ERISA claim for benefits (they lack standing and have not administratively exhausted their request), Plaintiffs attempt to plead around ERISA and assert common-law claims for fraudulent misrepresentation and conversion. Those claims seek damages for FedEx Ground's failure to provide Plaintiffs with the "wages and benefits of employment," including participation in its 401(k) or retirement plan, health care plan, life insurance plan, short- and long-term disability plans, and dependent care plan. (1st Am. Class Action Compl. ("FAC") ¶¶ 109, 114, ECF 371.) Plaintiffs' common-law claims fail for the same reason an ERISA claim would fail—Plaintiffs have no entitlement to benefits under the plain language of those policies.[3] Their fraud claim also fails because it is based on an alleged

---

[3] If Plaintiffs argue they <u>are</u> included in the plans, then their claims would be preempted by ERISA and fail as a matter of law. *See, e.g.*, *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) ("[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore preempted."). Regardless, ERISA pre-empts these claims even as currently stated. *See, e.g.*, *Remington v. J.B. Hunt Transport, Inc.*, Nos. 15-10010-RGS & 15-13019-RGS, 2017 WL 1552316, at * (D. Mass. Apr. 28, 2017) (holding that state claim for unpaid benefits based on misclassification was preempted because "to adjudicate plaintiffs' Wage Act benefit claims here, the court would be required to look to the terms of the ERISA plans to determine whether, had plaintiffs been classified as employees, they would have been eligible as plan participants"); *Cox v. Gannett Co.*, No. 1:15-cv-02075-JMS-DKL, 2016 WL 1425525, at *2-7 (S.D. Ind. Apr. 12, 2016) (ERISA preempted common law claims for fraud and unjust enrichment to the extent plaintiff sought damages in the form of unpaid benefits he allegedly would have received if properly classified as the defendant's employee); *Aguilar v. CTB McGraw-Hill, LLC*, No. C 06-02160 JW, 2006 WL 8446861, at *6 (N.D. Cal. Dec. 5, 2006) (dismissing contract claims to the extent based on the failure to provide benefits);

misrepresentation of law, and because they have no evidence of justifiable reliance. Finally, the claims fail because they are preempted by the California Labor Code.

## A. Plaintiffs Cannot Prove All Elements of a Fraudulent Misrepresentation Claim As a Matter of Law

"The elements of intentional misrepresentation in California are: (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud or to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Yastrab v. Apple Inc.*, 173 F. Supp. 3d 972, 977-78 (N.D. Cal. 2016); *see also Akkerman v. Mecta Corp.*, 152 Cal. App. 4th 1094, 1103 (2007) (each individual has to "prove his individual claim for restitution by establishing reliance and causation"). The material undisputed facts show that Plaintiffs cannot prove several of these required elements.

### 1. Plaintiffs Cannot Prove Damages When They Have No Right to Benefits Under the Plain Language of the Benefit Plans

Plaintiffs' fraud claim requires them to prove damages resulting from FedEx Ground's alleged misrepresentation. *See Lazar v. Superior Ct.*, 12 Cal. 4th 631, 638 (1996). But Plaintiffs cannot do so here, as they never had or will have any right to benefits under the plain language of the plans. As shown in the chart above, Service Providers' employees were expressly excluded from its benefit plans, including in the event that a court finds FedEx Ground to be their employer. (*See* Facts § C, *supra*; *see also* Beaudoin Dep. 119:19-22 ("FedEx Corp and/or FedEx Ground have exclusively excluded [Service Provider drivers] from coverage in all of its benefit plans, correct? A. Yes.").)

FedEx Ground was well within its rights to make such exclusions. *See Oglesby v. FedEx Ground Package Sys., Inc.*, No. 3:20-CV-346, 2021 WL 3560884, at *4 (S.D. Ohio Aug. 11, 2021) (rejecting that FedEx Ground's plans' exclusionary language violates "public policy"). "ERISA does not mandate that employers provide any particular benefits . . ."[4] *Shaw*

---

*Gustafson v. Bell Atl. Corp.*, 171 F. Supp. 2d 311, 328-29 (S.D.N.Y. 2001) (preempting fraud and negligent misrepresentation to the extent those claims sought to recover unpaid benefits).

[4] Plaintiffs cannot dispute that the benefit plans at issue are governed by ERISA. *See* 29 U.S.C. §§ 1002, 1003.

v. *Delta Air Lines, Inc.*, 463 U.S. 85, 91 (1983); *see also Hensley v. Nw. Permanente P.C. Ret. Plan & Tr.*, 258 F.3d 986, 1001 (9th Cir. 2001) ("ERISA contemplates that there will be plans that do not cover all categories of employees."), *overruled on other grounds by Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955 (9th Cir. 2006); *Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1340 (11th Cir. 2000) ("[C]ompanies are not required by ERISA to make their ERISA plans available to all common law employees.").

Federal courts have routinely upheld similar plan exclusions. In *Oglesby*, the Southern District of Ohio entered judgment for FedEx Ground on an Ohio driver's ERISA benefits claim, rejecting similar allegations that FedEx Ground improperly "classified" her and other drivers as Service Provider employees. 2021 WL 3560884, at *3-4. After analyzing the same exclusionary language at issue here, the court held that "each of the Plans contains clear and unambiguous exclusions making Plaintiff and the putative class members ineligible for benefits." *Id.* at *3. Because "[n]othing in ERISA . . . requires employers to establish employee benefit plans or to provide any particular benefits," the court held that FedEx Ground could not be held liable for failing to provide benefits to drivers. *Id.* at *4; *see also Jaeger v. Matrix Essentials, Inc.*, 236 F. Supp. 2d 815, 825 (N.D. Ohio 2002) (granting summary judgment on ERISA benefits claim where the plan expressly excluded independent contractors even if they were subsequently found to be employees).

*Aguilar v. CTB McGraw Hill, LLC* is also instructive. There, the plaintiff alleged that the defendant intentionally misclassified her as a temporary worker to wrongfully deprive her of employee benefits. No. C 06-02160 JW, 2006 WL 8446861, at *5 (N.D. Cal. Dec. 5, 2006). The district court dismissed the claims, holding that even if the worker was found to have been misclassified, "the relevant terms of the plans indisputably establish that Plaintiff is ineligible for benefits." *Id.* at *4-5. Similar to here, the plans at issue excluded leased employees, "regardless of whether or not such characterization is subsequently challenged, changed or upheld by any court or government authority." *Id.* at *4. Because companies are not required to make their ERISA plans available to all employees, the plain language of the plans meant that the plaintiff could not claim entitlement to the benefits. *Id.* at *4-5. This was true even if

the employer "mislabel[ed] their long-term employees to avoid paying benefits." *Id.* at *5.

The Court should come to the same conclusion. Because Plaintiffs have no right to the benefits they claim as a matter of law, under the plain language of those plans, they cannot prove they experienced any cognizable harm as a result of the alleged fraud. *See Stephenson v. Argonaut Ins. Co.*, 125 Cal. App. 4th 962, 974-75 (2004) (dismissing fraud claim because, "due to the lack of any potential coverage for Guardado's civil suit, plaintiff's assertion that defendant misrepresented its status as an insured did not result in any compensable injury").

2. *Plaintiffs Cannot Prove an Actionable Misrepresentation Because Their Claim Is Based on a Legal Position Taken by FedEx Ground*

Plaintiffs' fraud claim also fails for the independent reason that the representation underlying it—that "FedEx has fraudulently misrepresented the employment status of Plaintiffs and the Class Members by labeling them as merely 'vendors' of FedEx rather than employees" (FAC ¶ 27; *id.* ¶¶ 6, 57, 89, 104-05, 108[5])—cannot form the basis of a fraud claim. "A statement that an individual is a contractor, vendor, or an employee of a contractor is a statement of law." *Bernal v. FedEx Ground Package Sys. Inc.*, No. 2:15-cv-1448-DDP(PLAx), 2015 WL 4273034, at *3 (C.D. Cal. July 14, 2015) (citing *Harris v. Vector Mktg. Corp.*, 656 F. Supp. 2d 1128, 1136 (N.D. Cal. 2009)). And, as this Court has explained, "the law is clear that a misrepresentation based on the law, is not actionable." *Labrie v. UPS Supply Chain Sols, Inc.*, No. C 08-3182 PJH, 2008 WL 11404501, at *1 (N.D. Cal. Oct. 3, 2008) (citing *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 621 (9th Cir. 2004)); *see also Hallak v. L3 Commc'ns Corp.*, 490 F. App'x 2, 5-6 (9th Cir. 2012) ("[F]raud cannot be predicated upon misrepresentations of law.").

As a result, this Court and others routinely reject attempts to base a fraud claim on a

---

[5] *See also* Sterling Decl. ¶ 40 ("FedEx tells me that I am not its employee. FedEx's managers at the station refer to us as 'drivers' or 'vendors,' but not as employees. And, the ID badge I received from FedEx says 'The holder of this badge is a VENDOR to FedEx Ground. The holder is not an employee of FedEx Ground.' . . . I see this representation from FedEx on a routine basis, which reminds me that, whatever my legal status with FedEx may actually be, FedEx still tells me that I am not its employee."); Sobaszkiewicz Decl. ¶ 48 ("FedEx consistently misrepresented to me that I was just a vendor, not a FedEx employee.").

representation about employment status.  *See, e.g.*, *Labrie*, 2008 WL 11404501, at *1 (dismissing claim based on allegations that UPS misrepresented plaintiffs' status as independent contractors, because a "misrepresentation of plaintiffs' employment status" is a "misrepresentation of law"); *Hallak*, 490 F. App'x at 5-6 (affirming dismissal of fraud claim based on theory that "defendants committed fraud by leading plaintiffs to believe they were independent contractors rather than employees").  Indeed, in *Bernal*, the Central District of California dismissed a nearly-identical claim in the misclassification context, finding that the plaintiff could not base a fraud claim on FedEx Ground's alleged "misrepresentations that Plaintiffs were contractors, not employees.  2015 WL 4273034, at *3.  The court explained that "although the facts may ultimately show that Plaintiffs were misclassified as contractors rather than employees, a misrepresentation by Defendants that Plaintiffs were employed by the Trucking Companies could not form the basis of a fraud claim."  *Id*.

The same outcome should follow here.  Because the central premise of Plaintiffs' fraud claim is a misrepresentation of Plaintiffs' employment status, it fails as a matter of law.

> 3.  *The Record Lacks Any Evidence Showing Plaintiffs Can Prove*
>     *Justifiable Reliance*

Plaintiffs' fraud claim also requires them to prove that they <u>justifiably relied on a statement by FedEx Ground</u>.  *See Yastrab*, 173 F.Supp.3d at 978 (plaintiffs "must sufficiently allege an actionable misrepresentation and reliance on that representation").  But Plaintiffs have failed to identify any justifiable reliance on the "vendor" statement they claim was the misrepresentation—that is, Plaintiffs provide no evidence that they "somehow changed [their] position in reliance on the [alleged] fraudulent misrepresentation."  *Goldilocks Corp. of S. Cal. v. Ramkabir Motor Inn Inc.*, 26 F. App'x 693, 696 (9th Cir. 2002).  And Plaintiffs have never pled or testified that FedEx Ground told them they would get benefits or that they were its employees before they accepted employment with their Service Providers.  Plaintiffs therefore could not even attempt to argue now that they accepted "employment" with FedEx Ground on the understanding that they would receive benefits.

To the contrary, the evidence (and, indeed, allegations), shows that Plaintiffs

understood that they would not receive benefits from FedEx Ground. Plaintiff Sobaszkiewicz attested only that "after getting the message that I was not a FedEx employee and not eligible for the benefits they received, I did not feel that I was in a position to seek these benefits." (Sobaszkiewicz Decl. ¶ 48). At the same time, however, Ms. Sobaszkiewicz testified that she does not think "anything ever came up" about whether she was a FedEx Ground employee, and that she only had some conversations with other drivers about how it would be nice to have benefits. (Sobaszkiewicz Dep. 24:20-25:4, 231:18-232:22; *id.* at 179:19-181:5 (when asked what was on her badge, noting only that it said "FedEx" on it, mentioning nothing about "vendor"); *id.* at 233:1-234:16 (explaining that her statement in her declaration about benefits was regarding realizing she was not included in company barbeques).) That is the opposite of somehow changing her position in reliance on FedEx Ground's supposed misrepresentation.

And Plaintiff Sterling admitted that when his first Service Provider hired him, they had no discussion about benefits. (Sterling Dep. 37:21-38:16.) Despite this, Mr. Sterling said he believed he "would have access to these benefits from FedEx when [he] started working for FedEx" but was "soon disappointed to learn that FedEx excluded me and the other drivers from its employee benefit plans." (Sterling Decl. ¶ 39.) This is not a change in position or reliance on any statement by FedEx Ground as related to benefits. Plaintiffs' claim thus fails for yet another independent reason.

### B. Plaintiffs Cannot Prove a Property Interest in Employee Benefits to Support a Viable Conversion Claim

The plain language of FedEx Ground's benefits plans is also fatal to Plaintiffs' conversion claim. Under California law, conversion is "the wrongful exercise of dominion over personal property of another." *Voris v. Lampert*, 7 Cal. 5th 1141, 1151 (2019). To establish the claim, a plaintiff must show "ownership or right to possession of property, wrongful disposition of the property right and damages." *Kremen v. Cohen*, 337 F.3d 1024, 1029 (9th Cir. 2003); *accord Voris*, 7 Cal. 5th at 1150 ("[T]he 'specific thing' at issue must be a thing to which the plaintiff has a right of ownership or possession—a right with which the defendant has interfered by virtue of its own disposition of the property."). More specifically, a

plaintiff must be able to prove she or he was "*entitled to immediate possession at the time of conversion.*" *Farmers Ins. Exch. v. Zerin*, 53 Cal. App. 4th 445, 452 (1997) (citation omitted).

Plaintiffs have not set forth any evidence showing a property interest in FedEx Ground's benefit plans. Nor can they. The plain language of the plans exclude them from participating (*see* Facts § C, *supra*)—something FedEx Ground was legally entitled to do (*see* Argument, Part I.A.1, *supra*). Simply put, this claim is nothing more than Plaintiffs asserting they have a right to "converted" property that was not theirs in the first place. *Cf. Thole v. U. S. Bank N.A*, 140 S. Ct. 1615, 1620 (2020) (holding that even <u>participants</u> in a defined-benefit plan "possess no equitable or property interest in the plan").

But even if Plaintiffs were somehow entitled to participate, that still would not constitute a property right sufficient to give rise to a conversion claim. California law requires proof of interference "with the plaintiff's *possessory interest* in a <u>specific, identifiable sum</u>"—"the simple failure to pay money owed does not constitute conversion." *Voris*, 7 Cal. 5th at 1151 (underline emphasis added) (quoting *Kim v. Westmoore Partners, Inc.*, 201 Cal. App. 4th 267, 284 (2011)). "An obligation to pay an unspecified, nonidentifiable amount . . . is insufficient to qualify for recovery under a conversion claim."[6] *Nguyen v. Stephens Inst.*, 529 F. Supp. 3d 1047, 1059 (N.D. Cal. 2021) (rejecting conversion claim seeking pro-rata share of tuition and fees after in-person classes were canceled).

In *Voris*, the California Supreme Court held that an employee could not state a viable conversion claim for unpaid wages as a matter of law. 7 Cal. 5th at 1156. The Court explained that the plaintiff's claim to earned wages is "not that the employer has wrongfully exercised dominion over a specifically identifiable pot of money that <u>already belongs to the employee</u>—in other words, the sort of wrong that conversion is designed to remedy." *Id.* at 1152–53 (emphasis added). The Court refused to indulge the "fiction" that "once Voris provided the promised services, certain identifiable monies in his employers' accounts became Voris's

---

[6] Similarly, a contingent right in property based on a contractual relationship fails to give rise to a conversion claim. *See La Jolla Cove Investors, Inc. v. Sultan Corp. Ltd.*, No. 11cv1628 JM(RBB), 2011 WL 4916138, at *3 (S.D. Cal. Oct. 17, 2011).

personal property, and by failing to turn them over at the agreed-upon time, his employers converted Voris's property to their own use." *Id.* at 1153.

Plaintiffs' conversion claim depends on an even greater fiction: that Plaintiffs could have a right to "converted" property they admittedly never had in the first place. Plaintiffs never participated in FedEx Ground's employee benefit plans because FedEx Ground did not consider them to be its employees. (FAC ¶¶ 111-12.) In fact, Plaintiffs could not have obtained benefits under most of these benefits plans without FedEx Ground paying for them, which it did not do, or electing to participate in them (and, with respect to the 401(k) and life insurance plans, paying into them themselves). Notably, Plaintiff Overpeck was offered, and declined, health benefits from his one California Service Provider employer, Bondz, Inc. (Overpeck Dep 205:9-206:7, Dep. Exs. 1 (at OVERPECK_000301-03), Dep. Ex. 15 (at OVERPECK_0000072); Mikan Dep. 42:2-8, 65:20-67:19 & Dep. Ex. 21.) Plaintiff Sobaszkiewicz's employer Service Provider, Turner Holdings, also offered contribution to health insurance. (Turner Dep. 61:18-62:8.)

In short, Plaintiffs ask this Court to recognize that they can create a property right to employee benefits that never existed and they never possessed, solely because FedEx Ground allegedly "converted" that right. This fiction is contrary to California law and must be rejected.

C. **The California Labor Code Preempts Plaintiffs' Wage Claims for Fraud and Conversion**

Through their common-law tort and conversion claims, Plaintiffs seek "damages in that they were deprived of wages and other benefits of employment." (FAC ¶¶ 109, 114.) But as the Court already found, "the Labor Code's remedies are intended to be exclusive, and thus preclude common law claims based on the same conduct." (Order Denying Class Cert. 10, ECF 362 (following *Santiago v. Amdocs, Inc.*, No. C 10-4317 SI, 2011 WL 1303395, at *3 (N.D. Cal. Apr. 2, 2011); *Madrigal v. Tommy Bahama Grp., Inc.*, No. CV 09-08924 SJO MANX, 2010 WL 4384235, at *6 (C.D. Cal. Oct. 18, 2010); *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 618 (N.D. Cal.2007); *Green v. Party City Corp.*, No. CV-01-09681 CAS (EX), 2002 WL 553219, at *5 (C.D. Cal. Apr. 9, 2002)).) In addition to making

the above findings and legal conclusions, the Court should renew its findings on this basis.

## II. CALIFORNIA'S MOTOR CARRIER EXEMPTION BARS PLAINTIFFS' OVERTIME CLAIM

Plaintiffs' claim for unpaid overtime is barred by California's motor carrier exemption. Under section 3(L) of Wage Order 9, California's overtime pay requirements are "not applicable to employees whose hours of service are regulated by . . . [t]he United States Department of Transportation Code of Federal Regulations, Title 49, Sections 395.1 to 395.13, Hours of Service of Drivers." 8 C.C.R. § 11090(3)(L); *cf. Brinker Rest. Corp. v. Superior Ct.*, 53 Cal. 4th 1004, 1027 (2012) (wage orders "are entitled to extraordinary deference"). Because Plaintiffs were subject to the federal "hours of service" regulations at all relevant times, they were not eligible for—and cannot recover—overtime pay under California's overtime laws. *See Collins v. Overnite Transp. Co.*, 105 Cal. App. 4th 171, 180 (2003) (explaining that truck drivers whose hours of service are federally regulated are exempt from California's overtime laws).

The federal hours-of-service regulations apply to "all motor carriers and drivers." 49 C.F.R. § 395.1(a)(1). A "driver" is "any person who operates any commercial motor vehicle," which, in turn, is defined as a motor vehicle with a Gross Vehicle Weight Rating of 10,001 pounds or more that is used to transport goods in interstate commerce. 49 C.F.R. § 390.5. In other words, the Secretary of Transportation regulates the hours of service of (1) drivers who (2) transport goods in interstate commerce (3) using a vehicle with a GVWR of 10,001 pounds or more (i.e., a heavy vehicle). *See Sweet v. United Parcel Serv., Inc.*, No. 09-02653, 2010 WL 11507624, at *4 (C.D. Cal., Oct. 13, 2010). Plaintiffs meet each of these requirements.

***First***, there is no dispute that Plaintiffs were employed as delivery drivers by their respective Service Providers. (*E.g.*, Order, ECF 105 at 7 ("Plaintiffs do not dispute that the ISPs employ them . . . .").)

***Second***, Plaintiffs transported goods in interstate commerce. A driver does so if his delivery forms a part of a "practical continuity of movement" across state lines, such that "the essential character of the commerce" (i.e., the shipment) is interstate in nature. *Klitzke v.*

*Steiner Corp.*, 110 F.3d 1465, 1469-70 (9th Cir. 1997); *accord Deherrera v. Decker Truck Line, Inc.* 820 F.3d 1147, 1155 (10th Cir. 2016). It does not matter if the driver drives solely within a single state so long as "what is being transported"—here, the packages or trailers Plaintiffs picked up and delivered—is itself "moving in interstate commerce." 29 C.F.R. § 782.7(b)(1); *accord* 49 C.F.R. § 390.5 (defining "interstate commerce" to include trade or transportation "[b]etween two places in a State as part of trade, traffic, or transportation originating or terminating outside the State or the United States"); *Klitzke*, 820 F.3d at 1469-70 (holding that goods transported on an intrastate route are still in interstate commerce); *Deherrera*, 820 F.3d at 1155 (same); *Nelson v. FedEx Ground Package Sys., Inc.*, No. 1:18-cv-01378, 2019 WL 1437765, at *3 (D. Colo., Feb. 8, 2019) (delivery driver was engaged in interstate commerce "because a substantial portion of Defendant's packages move in interstate commerce"); *Sweet*, 2010 WL 11507624, at *6 (finding that UPS driver operated in interstate commerce when there was "no material issue of fact as to whether the packages in UPS's trucks are part of an interstate movement of goods").

As linehaul drivers, Plaintiffs Sobaszkiewicz and Overpeck regularly transported FedEx Ground trailers across state lines or transported trailers within California that bore packages originating out of state or were destined for delivery out of state. (Overpeck's Resp. to Interrog. No. 19; Overpeck Dep. 50:11-51:21, 103:11-22; Sobaszkiewicz Decl. ¶¶ 4, 7, 26; Means Decl. ¶ 4.) Similarly, even though Plaintiff Sterling drove only in California, he picked up and delivered packages that originated in or had final destinations in other states. (*See* Means Decl. ¶ 4.)

***Finally***, Plaintiffs drove heavy vehicles either exclusively or for the overwhelming majority of their relevant employment with the Service Providers. Specifically, there is no dispute that Plaintiffs Overpeck and Sobaszkiewicz <u>always</u> drove "big rig" trucks with a GVWR of 10,001 pounds or more. (Overpeck's Resp. to Interrog. No. 3; Overpeck Dep. 228:6-230:16; Sobaszkiewicz Resp. to Interrog. No. 15; Turner Dep. 142:11-21; Means Decl. ¶ 15.) FedEx Ground's DOT scanner and vehicle records show that Plaintiff Sterling drove commercial motor vehicles at least <u>86 percent</u> of the time he delivered. (Means Decl. ¶ 27 &

Ex. D.)  Thus, Plaintiffs' use of commercial motor vehicles is well over the "*de minimis*"
threshold needed to invoke the federal hours-of-service regulations.  *See Sweet*, 2010 WL
11507624, at *4-6 (recognizing that drivers are regulated by the DOT's hours of service
regulations when they "dr[i]ve a commercial vehicle . . . as a non-*de minimus* [sic] part of
[their] work duties"); *cf. Morris v. McComb*, 332 U.S. 422, 423-24 (1947) (considering four
percent of time spent in interstate commerce sufficient to invoke the authority of the
Department of Transportation).

> In sum, the uncontroverted evidence shows that Plaintiffs exclusively or predominantly
drove commercial motor vehicles to transport goods in interstate commerce.  They were thus
"employees whose hours of service [were] regulated by" the DOT's hours-of-service
regulations.  8 C.C.R. § 11090(3)(L).  As a result, they were exempt from California's overtime
requirements under the plain language of the Motor Carrier Exemption.

## III.    PLAINTIFFS' MEAL-AND-REST-BREAK CLAIMS ARE PREEMPTED

> FedEx Ground is also entitled to summary judgment on Plaintiffs' claims for alleged
violations of California's meal-and-rest-break requirements.  Because the DOT regulated
Plaintiffs' hours of service, their meal-and-rest-break claims are preempted by the Federal
Motor Carrier Safety Act (the "Act").

> Preemption applies when a state law conflicts with federal law.  When that happens, the
U.S. Constitution's Supremacy Clause renders the state law "without effect."  *Cipollone v.
Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992).  Regulations issued by "a federal agency acting
within the scope of its congressionally delegated authority" can also preempt state law.  *City of
New York v. F.C.C.*, 486 U.S. 57, 63-64 (1988).  In considering whether a federal agency has
preempted state regulation, courts ask whether the federal agency meant to preempt the state
law and, if so, whether that action was within the scope of the federal agency's delegated
authority.  *Barrientos v. 1801-1825 Morton LLC*, 583 F.3d 1197, 1208 (9th Cir. 2009).

> Here, Congress delegated the authority to decide preemption to the Secretary of
Transportation, directing the Secretary to "review State laws and regulations on commercial
motor vehicle safety" and to decide whether those laws could be enforced.  49 U.S.C.

§ 31141(c). Under that delegation, if the Secretary finds a state law preempted, the state "may not enforce" it. *Id.* § 31141(a). In 2018, after a notice and comment period, the FMCSA (which operates under the Secretary's authority, 49 U.S.C. § 113; 49 C.F.R. § 1.87(f)) issued an order stating that California meal-and-rest-break rules were preempted by the federal hours-of-service regulations. (Request for Judicial Notice ("RJN"), Ex. 1, FMCSA, *California's Meal and Rest Break Rules for Commercial Motor Vehicle Drivers; Petition for Determination of Preemption*, 83 Fed. Reg. 67470-01 (2018).) The FMCSA found, among other things, that California's rules were "more stringent than" the federal hours-of-service regulations and unreasonably burdened interstate commerce. (*Id.*) As a result, the FMCSA found that "California may no longer enforce" its meal-and-rest-break rules "with respect to drivers of property-carrying [commercial motor vehicles] subject to" the federal regulations. (*Id.*)

The FMCSA order prevents this Court from enforcing California's meal-and-rest-break rules here. 49 U.S.C. § 31141(a). The Ninth Circuit upheld the FMCSA decision last year, dismissing a challenge to it by California's Labor Commissioner and other labor organizations that petitioned for review. *See Int'l Bhd. of Teamsters, Loc. 2785 v. Fed. Motor Carrier Safety Admin.*, 986 F.3d 841, 845 (9th Cir. 2021) (holding that the FMCSA did not act arbitrarily or capriciously in reaching its preemption decision). Recently, the California Court of Appeal held that a trial court erred in denying summary adjudication on a short-haul driver's meal-and-rest-break claims, because those claims were expressly preempted by the FMCSA decision. *See Espinoza v. Hepta Run, Inc.*, 74 Cal. App. 5th 44, 56-57 (2022) (rejecting argument that the federal rules do not apply to short-haul drivers).

As a result, federal district courts routinely dismiss meal-and-rest-break claims as preempted, including claims seeking "retroactive" enforcement.[7] For instance, in *Sales*, Judge

---

[7] *See, e.g.*, *Salter v. Quality Carriers, Inc.*, No. CV 20-479-JFW(JPRX), 2021 WL 5049054, at *9 (C.D. Cal. Oct. 27, 2021); *Patton v. Midwest Constr. Servs., Inc.*, No. CV 19-8580-JFW(MAAX), 2021 WL 2982277, at *3 (C.D. Cal. June 11, 2021); *Robinson v. Chefs' Warehouse, Inc.*, No. 15-CV-05421-RS, 2019 WL 4278926, at *4 (N.D. Cal. Sept. 10, 2019); *Henry v. Cent. Freight Lines, Inc.*, No. 2:16-cv-00280-JAM-EFB, 2019 WL 2465330, at *4 (E.D. Cal. June 13, 2019); *Ayala v. U.S. Xpress Enters., Inc.*, No. EDCV 16-137-GW(KKX), 2019 WL 1986760, at *2-3 (C.D. Cal. May 2, 2019).

Tigar held that "[b]ecause the FMCSA has issued 'an order which specifically bars enforcement of the relevant provisions of the California Labor Code as applied to property-carrying commercial vehicle drivers,' the Court is precluded from ruling on Plaintiffs' meal and rest break claims." *Sales v. United Road Svcs.*, No. 19-cv-08404-JST, 2020 WL 4035072, at *3 (N.D. Cal. July 17, 2020). The court then rejected the plaintiff's argument that their claims survive because their meal and rest period claims predate the FMCSA's order, holding that "[r]etroactivity is not at issue here."[8] *Id.*

This Court should follow suit. Because Plaintiffs are subject to the federal hours-of-service regulations, as shown above, their meal-and-rest-break claims (including derivative claims) are preempted by federal law and cannot proceed as a matter of law.

## IV.  PLAINTIFFS' WAGE STATEMENT CLAIM FAILS

### A.  The Undisputed Evidence Shows that Plaintiffs Cannot Prove Their Claim for a Violation of Section 226

Plaintiffs' wage statement claim requires them to prove (1) a violation of Labor Code section 226(a); (2) that is "knowing and intentional"; and (3) a resulting injury. *Arroyo v. Int'l Paper Co.*, No. 17-CV-06211-BLF, 2020 WL 887771, at *7 (N.D. Cal. Feb. 24, 2020). On the undisputed facts, Plaintiffs cannot prove any of these elements.

***No Evidence of a Violation***. Plaintiffs do not dispute that their Service Providers gave them wage statements. They claim, instead, that FedEx Ground violated section 226(a) because it is not listed on those statements. (Mot. for Class Cert. iii & 16, 25, ECF 281.) But such conduct does not violate section 226(a). Rather, liability extends to "<u>an</u> employer" who "<u>furnishes</u>" the wage statements. Cal. Lab. Code § 226(a), (e) (emphasis added). FedEx Ground is not an employer that ever furnished wage statements, as Plaintiffs themselves admit.

In addition, even if FedEx Ground were Plaintiffs' joint employer (it is not), nothing in

---

[8] The FMCSA has clarified that its decision "precludes courts from granting relief pursuant to the preempted State law or regulation at any time following issuance of the decision, regardless of whether the conduct underlying the lawsuit occurred before or after the decision was issued, and regardless of whether the lawsuit was filed before or after the decision was issued." (RJN, Ex. 2 (FMCSA, *Clarification Regarding Preemption Decision*).)

section 226 requires all employers be included on wage statements. Nor can such a requirement be implied. In requiring wage statements to include "the name and address of the legal entity that is the employer," the legislature added one additional requirement "if the employer is a farm labor contractor": the statement must also include "the name and address of the legal entity . . . that secured the services of the employer." Cal. Lab. Code § 226(a)(8). If the legislature intended all joint employers or related contractor entities be included on wage statements, it would have said so, as it did in the farm labor context. *See, e.g.*, *Noe v. Superior Ct.*, 237 Cal. App. 4th 316, 333 (2015) (noting that in the absence of language in the statute, courts "cannot presume" joint and several liability). Holding otherwise would violate the "well-established maxim of statutory interpretation, *expressio unius est exclusio alterius*—the expression of one thing is the exclusion of another." *Sharp v. Waterfront Rests.*, No. 99-CV-200 TW (AJB), 1999 WL 1095486, at *6 (S.D. Cal. Aug. 2, 1999).

In addition, FedEx Ground is unaware of any case—and Plaintiffs have cited none—holding that both direct and joint employers be included on wage statements or that both issue separate wage statements. To the contrary, in *Mejia v. Farmland Mutual Insurance*, the court dismissed wage statement claims against both the direct and putative joint employer even though the wage statement listed only one them. No. 2:17–cv–00570–TLN–KJN, 2018 WL 3198006, at *7 (E.D. Cal. June 26, 2018). The Court should do the same here.

***No Evidence of Injury***. Plaintiffs' claim also fails because they cannot show that the omission of FedEx Ground's name caused any harm. Section 226's injury requirement hinges on whether the employee can "promptly and easily determine [accurate information about their wages] from the wage statement alone." *Magadia v. Wal-Mart Assocs., Inc.*, 999 F.3d 668, 679 (9th Cir. 2021); *see also* Cal. Lab. Code § 226(e)(2)(B); *Ward v. United Airlines, Inc.*, 9 Cal. 5th 732, 752 (2020). The injury requirement "cannot be satisfied simply because one of the nine itemized requirements in section [226(a)] is missing from a wage statement."[9] *Ridgeway v. Wal-Mart Stores, Inc.*, No. C 08-05221 SI, 2014 WL 2600326, at *8 (N.D. Cal.

---

[9] As the Court noted, "Plaintiffs cite no cases where a court has found their theory of liability under section 226(a)(8) to be viable." (Order Denying Mot. for Class Cert. 12.)

June 10, 2014) (quoting *Price v. Starbucks Corp.*, 192 Cal. App. 4th 1136, 1142-43 (2011)). "By employing the term 'suffering injury,' the statute requires that an employee may not recover for violations of section [226(a)] unless he or she demonstrates an injury arising from the missing information." *Id.*; *see also Magadia*, 999 F.3d at 680 ("To recover damages under the law, Magadia must prove that he 'suffer[ed] injury as a result of a knowing and intentional failure by an employer to comply with the statute.'" (quoting *Price*, 122 Cal. Rptr. 3d at 178)).

In *Mejia*, only one of two joint employers issued the wage statement, and the plaintiffs claimed they were harmed because those statements had an incomplete name and incorrect address for one employer. 2018 WL 3198006, at *6. In dismissing the claim as to both employers, the court found the plaintiffs were unable to explain why the employer information provided was "not useful for filing grievances, or for unemployment insurance or income tax purposes"—the legislature's purpose in adding the name and address requirements. *Id.* at *6-7. The plaintiffs could not show an actual injury—even with an alleged incorrect wage-statement (and one not including information about the alleged joint employer at all)—because there was no evidence the incorrect and missing information caused them an injury. *Id*.

Similarly here, Plaintiffs have not provided any evidence showing they were prevented from making any grievances, or confused in terms of unemployment insurance or tax issues, because FedEx Ground was not listed on their wage statements. To the contrary, Plaintiffs all claim that FedEx Ground controlled their work such that they <u>believed</u> FedEx Ground was also their employer—the main premise for this case. (FAC ¶ 8; Sobaszkiewicz Decl. ¶ 16; Sterling Decl. ¶ 39; Overpeck's Resp. to Req. for Admission Nos. 1-3.) The undisputed evidence, therefore, shows that Plaintiffs cannot prove their wage statement claim.

***No Evidence of a Knowing and Intentional Violation***. Finally, Plaintiffs' claim fails because they cannot point to any evidence showing FedEx Ground knowingly and intentionally violated section 226(a). *See Noe*, 237 Cal. App. 4th at 332 ("[W]e fail to see how an employer could 'engage in' the act of voluntarily and knowingly [violating the Labor Code] without any knowledge [of the violation].")); *cf. Vizcaino v. Microsoft Corp.,* 120 F.3d 1006, 1011 (9th Cir. 1997) (assuming Microsoft "honestly thought that the Workers were independent contractors

and took its various actions and inactions based upon that misapprehension" where there was no direct evidence to the contrary). In addition, as discussed in Section IV.I below, FedEx Ground's good-faith belief that it is not Plaintiffs' employer precludes liability under section 226.

### B. Plaintiff Overpeck's Wage Statement Claim Also Fails for Most of His Time Driving Because He Was Based in New Jersey

Mr. Overpeck's wage statement claim also fails because, for all but eight weeks, he was not based in California, nor did he spend the majority of his time there. Section 226 applies to "wage statements provided by an employer if the employee's principal place of work is in California." *Ward*, 9 Cal. 5th at 760. This requires the employee to have either worked a majority of the time in California or, for interstate transportation workers whose work is not primarily performed in any single state, for California to be the base of work operations. *Id.* at 760-61. During the relevant time period, Mr. Overpeck worked only eight weeks for a Service Provider (Bondz) based in California. (Overpeck Dep. 190:8-191:12, 192:8-24 & Ex. 15 at OVERPECK_000060-71.) The remainder of his time he worked for Service Provider G2, which was based in New Jersey and had no particular focus in California. (*Id.* at 18:22-19:18, 20:2-16, 26:16-27:13, 50:11-51:21.) His claim, therefore, fails outside those eight weeks.

## V. PLAINTIFFS CANNOT PROVE THAT FEDEX GROUND HAD TO KEEP PAYROLL RECORDS YET WILLFULLY FAILED TO DO SO

Plaintiffs' payroll records claim fails because, even if Plaintiffs could prove that FedEx Ground was their joint employer, they have provided no authority that would require FedEx Ground, as a second employer, to be responsible for maintaining their payroll records. Moreover, only an employer that "willfully fails to maintain the records required by [section] 1174 . . . shall be subject to a civil penalty." Cal. Lab. Code § 1174.5. Plaintiffs cannot point to any evidence showing that FedEx Ground willfully failed to maintain payroll records.

And even a willful violation of the Labor Code by a direct employer is, standing alone, not enough to impose penalties on the alleged joint employer. *See Noe*, 237 Cal. App. 4th at 333-34. This Court has already ruled as much when it granted FedEx Ground's Rule 19 joinder

motion. (ECF 105 at 7-11 ("As <u>Noe</u> and <u>Serrano</u> demonstrate, plaintiffs will only be able to hold FedEx, FedEx Ground, and the ISPs jointly and severally liable under the Labor Code if the statutory sections and wage orders explicitly permit such liability. They do not.").)[10]

Accordingly, FedEx Ground cannot be said to have engaged in a violation of section 1174, let alone a willful one.

## VI.    FEDEX GROUND HAS A GOOD-FAITH BELIEF THAT IT IS NOT PLAINTIFFS' EMPLOYER, PRECLUDING PLAINTIFFS' WAITING TIME, WAGE STATEMENTS, AND PAYROLL RECORD CLAIMS

Plaintiffs' claims for violation of Labor Code sections 203, 226, and 1174 all fail because the evidence shows that FedEx Ground had a good-faith belief that it was not Plaintiffs' employer. "[A] good faith dispute that any wages are due will preclude imposition of waiting time penalties under Section 203." 8 Cal. Code. Reg. § 13520. While the regulation language authorizes the defense for section 203 claims, courts have extended it to the Labor Code's payroll records (section 1174.5) and wage statement penalty (section 203) provisions. The "majority view is that an employer's good faith belief that it is not violating the California Labor Code precludes a finding of a knowing and intentional violation," as required to recover under sections 226 and 1174.5. *Arroyo*, 2020 WL 887771, at *11 (applying defense to section 226 claim). This Court should do the same.

As a matter of law, the evidence shows FedEx Ground had, and continues to have, a good-faith belief that it is not Plaintiffs' employer. A "good faith dispute" occurs when "an employer presents a defense, based in law or fact which, if successful, would preclude any recovery on the part of the employee." 8 Cal. Code. Reg. § 13520(a). "The fact that a defense is ultimately unsuccessful will not preclude a finding that a good faith dispute did exist" so long as the defense was not "unsupported by any evidence," "unreasonable," or "presented in bad faith." *Id.*; *see Utne v. Home Depot U.S.A., Inc.*, No. 16-CV-01854-RS, 2019 WL 3037514, at

---

[10] Although the Court later dismissed the joined Service Providers, the dismissal did not disrupt this key component of its prior ruling. (*Cf.* ECF 278 at 3 ("FedEx is entitled to use this category of evidence in defending itself against plaintiffs' claims, but it does not follow that Bondz and the other ISPs must necessarily be joined to this suit.").)

*5 (N.D. Cal. July 11, 2019) (granting summary judgment on wage statement and waiting time claims where the employer had a good-faith defense). That threshold is easily met here.

The undisputed evidence shows that each Service Provider agrees to treat all personnel as its employees and bear all responsibility for employer-related expenses and compliance with all applicable laws. (Means Decl. ¶ 7.) Service Providers provide annual reports confirming their compliance with wage and hour laws. (*Id.* ¶ 14 & Ex. C.) And, as shown in FedEx Ground's opposition to Plaintiffs' motion for class certification, FedEx Ground has sound, legally defensible reasons for believing it is not Plaintiffs' employer. (ECF 304 at 12-16 (relying on *Salazar v. McDonald's Corp.*, 944 F.3d 1024 (9th Cir. 2019); *Martinez v. Combs*, 49 Cal. 4th 35 (2010); *Henderson v. Equilon Enters., LLC*, 40 Cal. App. 5th 1111 (2019); *Curry v. Equilon Enters., LLC*, 23 Cal. App. 5th 289 (2018)).) Indeed, no court has determined that FedEx Ground is a joint employer with Service Providers. To the contrary, one state court recently found that FedEx Ground "is not shown to be a joint employer." *See* RFN Ex. 3, *Lightfoot v. Wahoo Logistics, Inc.* No. FCS050578 (Cal. Super. Ct. Feb. 1, 2022), at 8.

Accordingly, FedEx Ground is entitled to summary judgment on Plaintiffs' claims based on sections 203, 226, 1174 and 1174.5. *See, e.g.*, *Woods v. Vector Mktg. Corp.*, No. C-14-0264 EMC, 2015 WL 2453202, at *3-4 (N.D. Cal. May 22, 2015) (granting summary judgment on waiting time and wage statement claims based on employer's good-faith belief that plaintiffs were contractors, not employees).[11]

## VII. PLAINTIFFS' REMAINING CLAIMS FAIL WHERE DERIVATIVE

Plaintiffs' claims for failure to pay for all hours worked and to pay minimum wage requires Plaintiffs to prove that they in fact performed work for which they were improperly compensated. *Hernandez v. Mendoza*, 199 Cal. App. 3d 721, 727 (1988); *In re Bimbo Bakeries USA FLSA Actions*, No. C 05-00829 JW, 2008 WL 10850153, at *4 (N.D. Cal. Oct. 24, 2008). To the extent those claims are based on a supposed failure to provide benefits, overtime, or

---

[11] *See also, e.g.*, *Dalton v. Lee Publ'ns, Inc.*, No. 08CV1072 BTM NLS, 2011 WL 1045107, at *5 (S.D. Cal. Mar. 22, 2011); *Reber v. AIMCO*, No. SA CV07–0607 DOC (RZx), 2008 WL 4384147, at *9 (C.D. Cal. Aug. 25, 2008).

meal-and-rest-break premiums, they fail for the reasons shown above.[12]  The same is true to the extent Plaintiffs' UCL claim, wage statement claim, waiting time claim, and PAGA claim are derivative of Plaintiffs' claims for benefits, overtime, and meal-and-rest-break violations.[13]

## VIII.    OVERPECK'S REPRESENTATIVE PAGA CLAIM MUST BE DISMISSED AND THE REMAINING PAGA CLAIM TIME LIMITED

Per the Stipulation to Allow Amendment of the Complaint to Change Names on the Case Caption, Plaintiff Overpeck is no longer pursuing claims in a representative capacity and seeks relief "individually only" (ECF 368) and so his representative PAGA claim should be dismissed.  And because PAGA has a one-year statute of limitations, *see* Civ. Proc. Code § 340, Plaintiff Sterling's and Sobaszkiewicz's PAGA claims should be limited to alleged violations that occurred on or after January 29, 2019, one year before they sent their PAGA notice.  (PAGA Notice Ltr., Jan. 29, 2020.)

Even without dismissal of Mr. Overpeck's representative claim, the time period for pickup and delivery drivers must still be limited to alleged violations that occurred on or after January 29, 2019.  In Mr. Overpeck's notice, he proposed representation of only "current and former TEAM TRACTOR TRAILER drivers" (i.e., linehaul drivers).  (Overpeck PAGA Notice Ltr., Aug. 24, 2018.)  The LWDA thus had no notice as to a claim on behalf of pickup and delivery drivers until Sterling and Sobaszkiewicz sent their letter.

FedEx Ground respectfully requests the Court's ruling on these issues now, as an issue of law, because it will inform and narrow the scope of this litigation moving forward.

### CONCLUSION

FedEx Ground respectfully requests entry of judgment for the reasons discussed above.

---

[12] Plaintiffs also base these claims on an alleged failure to be paid for time spent preparing their vehicles and sleeper birth time.  (FAC ¶¶ 120-121, 150-51.)  While FedEx Ground believes the evidence will prove those claims fail too, it recognizes there are likely factual disputes.

[13] *See Aleksick v. 7-Eleven, Inc.*, 205 Cal. App. 4th 1176, 1185 (2012) ("When a statutory claim fails, a derivative UCL claim also fails."); *Porch v. Masterfoods, USA, Inc.*, 685 F. Supp. 2d 1058, 1075 (C.D. Cal. 2008), *aff'd*, 364 F. App'x 365 (9th Cir. 2010) (same as to section 1174 claim); *Culp v. Konica Minolta Bus. Sols. U.S.A., Inc.*, No. CV174274JFWJEMX, 2018 WL 5928185 at *8 (C.D. Cal. Feb. 28, 2018) (section 203); *Tomco v. Prada USA Corp.*, 484 F. App'x 99, 100 (9th Cir. 2012) (PAGA).

DATED: April 18, 2022

WHEELER TRIGG O'DONNELL LLP


By: ___/s/ Jessica G. Scott_____
JESSICA G. SCOTT
Attorney for Defendant
FEDEX GROUND PACKAGE SYSTEM,
INC.

FEDEX GROUND PACKAGE SYSTEM, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES