Jeremy Pasternak, State Bar No. 181618
jdp@pasternaklaw.com
Deanna Maxfield, State Bar No. 291913
dm@pasternaklaw.com
**LAW OFFICES OF JEREMY PASTERNAK**
354 Pine Street, 5th Floor
San Francisco, California 94104
Tel:    (415) 376-1710
Fax:    (415) 693-0393

Joshua Konecky, SBN 182897
jkonecky@schneiderwallace.com
Nathan Piller, SBN 300569
npiller@schneiderwallace.com
**SCHNEIDER WALLACE**
**COTTRELL KONECKY LLP**
2000 Powell Street, Suite 1400
Emeryville, CA 94608
Telephone:    (415) 421-7100
Facsimile:    (415) 421-7105

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HERMAN OVERPECK; SHANNON SOBASZKIEWICZ and KEVIN STERLING, individually and on behalf of all others similarly situated, and as a proxy of the state of California on behalf of aggrieved employees,<br><br>        Plaintiffs,<br><br>vs.<br><br>FEDEX CORPORATION and FEDEX GROUND PACKAGE SYSTEM, INC., et al.,<br><br>        Defendants, | Case No. 4:18-cv-07553-PJH-DMR<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT FEDEX GROUND'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:  July 28, 2022<br>Time: 1:30 p.m.<br><br>Judge: Honorable Phyllis J. Hamilton |

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................. 1

II. ARGUMENT ...................................................................................................... 3

    A.    FedEx's heavy burden to establish that no genuine dispute of material fact exists................................................................................................... 3

    B.    Plaintiff Sterling does not fall under the Motor Carrier Exemption to California's overtime law........................................................................ 4

        1.    FedEx admits that Plaintiff Sterling's work with light vehicles was more than de minimis, which triggers his entitlement to overtime protections. .. 5

        2.    Plaintiff Sterling comes under an exemption to Hours-of-Service Regulations for "short-haul" drivers, which entitles him to the protections of California's overtime law.................................................... 7

        3.    FedEx fails to carry its burden to demonstrate that Plaintiff Sterling transported goods in interstate commerce..................................................... 8

        4.    At a minimum, Plaintiff Sterling is entitled to the protections of California's overtime laws on workdays when he drove light vehicles...... 9

    C.    Plaintiff Sterling's meal and rest period claims are not preempted. .................... 10

        1.    Plaintiff Sterling falls outside the scope of the FMCSA preemption order because he is specifically excepted from Hours-of-Service regulations as a "short-haul" driver........................................................... 10

        2.    At a minimum, Plaintiff Sterling is entitled to the protections of California's meal and rest period laws on workdays when he drove light vehicles. ...................................................................................... 11

    D.    Summary judgment of Plaintiff Sterling's overtime and meal and rest period claims is premature before discovery into Defendants' untested and unfounded representations regarding vehicle weight and interstate commerce.... 12

    E.    Summary judgment is inappropriate as to Plaintiffs' inaccurate wage statement claims under Cal. Lab. Code § 226. .......................................................... 13

        1.    Plaintiffs are deemed injured as a matter of law by the omission of an employer's name and address. ................................................................ 13

        2.    Even assuming *arguendo* that injury is not deemed from omission of FedEx's name and contact information from Plaintiffs' paystubs, triable issues exist because the omission caused injury by preventing Plaintiffs from obtaining redress for issues regarding pay, working conditions, and injuries on the job. ........................................................ 15

        3.    Wage statement inaccuracies need not be malicious to be knowing and intentional, and it is sufficient that FedEx knew Plaintiffs' paystubs omitted its name and contact information................................................. 15

4.     The questions of whether the inaccuracies in Plaintiffs' paystubs were knowing and intentional, and whether FedEx had a good faith belief it was not violating the Labor Code, are quintessential questions of fact. ... 16

F.     There are triable issues as to Plaintiffs' payroll records claims because the question of whether FedEx willfully failed to maintain such records is a question of fact that is premature for summary judgment. ................................. 17

G.     Summary judgment as to Plaintiffs' payroll records and waiting time claims is inappropriate because the question whether FedEx had a good faith belief it was not violating the Labor Code is a quintessential question of fact. ....................... 17

H.     There are triable issues as to Plaintiffs' fraudulent misrepresentation claim........ 17

1.     Plaintiffs are not claiming an entitlement to benefits under the employment benefit plans as written, but rather are seeking common law damages resulting from the misrepresentation FedEx used to unlawfully write them out of the plans in the first place........................... 17

2.     Plaintiffs allege misrepresentations of fact, and in any event the determination of whether the misrepresentations are of fact or law is itself a question of fact. ............................................................. 20

3.     Justifiable reliance is a triable issue of fact for the jury............................ 22

I.     Summary judgment is inappropriate as to Plaintiffs' conversion claim because there are triable issues as to whether Plaintiffs have a property interest in the minimum value of the benefits to which they would have had access if FedEx had not misrepresented their status and discriminatorily excluded them from coverage................................................................................................. 23

J.     The misrepresentation and conversion claims are not preempted by the Labor Code. ................................................................................................. 24

K.     Plaintiffs' minimum wage, wage statement, waiting time, UCL, and PAGA claims do not fail where derivative of their overtime, meal-and-rest break, and common law claims......................................................................... 25

III.     CONCLUSION ............................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*9826 LFRCA, LLC v. Hurwitz*,
    2017 U.S. Dist. LEXIS 70855 (S.D. Cal. May 9, 2017)........................................................ 22

*Alexander v. FedEx Ground Package Sys.*,
    765 F.3d 981 (9th Cir. 2014) .......................................................................................... 22

*Antemate v. Estenson Logistics*, LLC,
    2017 U.S. Dist. LEXIS 184502 (C.D. Cal. Nov. 7, 2017).............................................. 5

*Arnold v. Ben Kanowsky, Inc.*,
    361 U.S. 388 (1960)........................................................................................................ 4

*Arrellano v. XPO Port Service Inc.*,
    2021 U.S. Dist. LEXIS 193382 (C.D. Cal., Mar. 30, 2021) .......................................... 10

*Bates v. Leprino Foods Co.*,
    2020 WL 6392562 (E.D. Cal. 2020)............................................................................... 14

*Beckwith v. Dahl*,
    205 Cal.App.4th 1039 (2012) ......................................................................................... 23

*Bedoya v. Aventura Limousine & Transp. Serv.*,
    2012 U.S. Dist. LEXIS 128826 (S.D. Fla. Sep. 11, 2012) ............................................ 6

*Bernal v. FedEx Ground Package Sys.*,
    2015 U.S. Dist. LEXIS 91456 (C.D. Cal. July 14, 2015)............................................... 20

*Berry v. Best Transp., Inc.*,
    2018 U.S. Dist. LEXIS 216598 (E.D. Mo. Dec. 27, 2018) ........................................... 6

*Bias v. Moynihan*,
    508 F.3d 1212 (9th Cir. 2007) ....................................................................................... 12

*Borgman v. UGA-Ass'n Field Servs.*,
    No. G060399, 2021 WL 4859820 (Cal. Ct. App. Oct. 19, 2021).................................... 24

*Burlington Northern Santa Fe R. Co. v. Assiniboine and Sioux Tribes of Fort Peck Reservation*,
    323 F.3d 767 (9th Circ. 2003) ....................................................................................... 12

*Burnside-Ott Aviation Training Center, Inc. v. United States*,
    985 F.2d 1574 (Fed. Cir. 1993) ..................................................................................... 12

*Byers v. Care Transp., Inc.*,
    2015 U.S. Dist. LEXIS 128111 (E.D. Mich. Sep. 24, 2015).......................................... 6

*Carbado v. Patacsil*,
    248 F. Supp. 3d 1002 (E.D. Cal. 2017) ................................................................... 14, 15

*Cardenas v. UPS*,
    2010 U.S. Dist. LEXIS 134269 (C.D. Cal. Dec. 9, 2010).............................................. 4

*Cedillo v. Int'l Ass'n of Bridge & Structural Iron Workers*,
    603 F.2d 7 (7th Cir. 1979) ................................................................... 19

*Childress v. Ozark Delivery of Mo. L.L.C.*,
    95 F. Supp. 3d 1130 (W.D. Mo. 2015) ................................................. 6

*Daugherty v. SolarCity Corp.*,
    2017 WL 386253 (N.D. Cal. Jan. 26, 2017) ......................................... 14

*Delgado v. Lincoln Transp. Servs. Inc.*,
    2019 U.S. Dist. LEXIS 221795 (C.D. Cal. Dec. 27, 2019) .............. 7, 10

*Dilts v. Penske Logistics, LLC*,
    769 F.3d 637 (9th Cir. 2014) ................................................................. 7

*Espinoza v. Hepta Run, Inc.*,
    74 Cal. App. 5th 44 (2022) ................................................................... 11

*Estrada v. FedEx Ground Package Sys., Inc.*,
    154 Cal. App. 4th 1 (2007) ................................................................... 22

*Faulks v. Wells Fargo & Co.*,
    231 F. Supp. 3d 387 (N.D. Cal. 2017) ................................................. 12

*Fodera v. Equinox Holdings, Inc.*,
    2020 WL 3961985 (N.D. Cal. July 13, 2020) ..................................... 14

*Fremont Indem. Co. v. Fremont Gen. Corp.*,
    148 Cal. App. 4th 97 (2007) ................................................................. 24

*Furla v. Jon Douglas Co.*,
    65 Cal.App.4th 1069 (1998) ................................................................. 20

*Garcia v. W. Waste Servs., Inc.*,
    969 F. Supp. 2d 1252 (D. Idaho 2013) ................................................. 6

*Garnett v. ADT, LLC*,
    139 F. Supp. 3d 1121 (E.D. Cal. 2015) ............................................... 14

*Gray v. FedEx Ground Package Sys.*,
    2014 U.S. Dist. LEXIS 123906 (E.D. Mo. Sep. 5, 2014) ..... 3, 18, 19, 24

*Green v. Party City Corp.*,
    2002 U.S. Dist. LEXIS 7750 (C.D. Cal. Apr. 9, 2002) ....................... 25

*Hinds v. Fedex Ground Package Sys.*,
    2020 U.S. Dist. LEXIS 259693 (N.D. Cal. June 1, 2020) ...... 1, 5, 6, 11

*Hoffman v. 162 North Wolfe LLC*,
    228 Cal. App. 4th 1178 (2014) ............................................................. 22

*In re Wal-Mart Stores, Inc.*,
    505 F. Supp. 2d 609 (N.D. Cal. 2007) ................................................. 24

*Int'l Bhd. of Teamsters, Local 2785 v. Fed. Motor Carrier Safety Admin.*,
    986 F.3d 841 (9th Cir. 2021) ............................................................ 7, 10, 11

*Keybank Nat'l Ass'n v. Moses Lake Indus.*,
    2010 U.S. Dist. LEXIS 22386 (E.D. Wash. Mar. 11, 2010) ............................ 23

*Madrigal v. Tommy Bahama Grp., Inc.*,
    2010 U.S. Dist. LEXIS 121573 (C.D. Cal. 2010) .................................... 24

*Martinez v. Combs*,
    49 Cal.4th 35 (2010) ................................................................ 19

*McMaster v. E. Armored Servs., Inc.*,
    780 F.3d 167 (3d Cir. 2015) ........................................................... 5

*Mejia v. Farmland Mut. Ins. Co.*,
    2018 WL 3198006 (E.D. Cal. June 26, 2018) ........................................ 14

*Miller v. Yokohama Tire Corp.*,
    358 F.3d 616 (9th Cir. 2004) ....................................................... 22

*Mowdy v. Beneto Bulk Transp.*,
    2010 U.S. Dist. LEXIS 161409 (N.D. Cal. July 7, 2010)................................ 4

*Novoa v. Charter Commc'ns, LLC*,
    100 F. Supp. 3d 1013 (E.D. Cal 2015) .............................................. 16

*Oddo v. Bimbo Bakeries U.S.A., Inc.*,
    391 F. Supp. 3d 466 (E.D. Pa. 2019) ............................................. 5, 6

*Phelps v. 3PD, Inc.*,
    261 F.R.D. 548 (D. Or. 2009) .................................................. 21, 22

*Portland Retail Druggists Ass'n v. Kaiser Found. Health Plan*,
    662 F2d 641 (9th Circ. 1981) ...................................................... 12

*Provine v. Office Depot, Inc.*,
    2012 U.S. Dist. LEXIS 93881 (N.D. Cal. July 6, 2012)............................... 15

*Regus v. Schartkoff*,
    156 Cal.App.2d 382 (1957) ........................................................ 22

*Ridgeway v. Wal-Mart Stores, Inc.*,
    2014 WL 2600326 (N.D. Cal. June 10, 2014)........................................ 14

*Robinson v. FedEx Ground Package System, Inc. et al*,
    Case No. RG17854521 (Cal. Sup. Ct. 2022)........................................... 6

*S. Pac. Transp. Co. v. I.C.C.*,
    565 F.2d 615 (9th Cir. 1977) ....................................................... 8

*Santiago v. Amdocs, Inc.*,
    2011 U.S. Dist. LEXIS 36111 (N.D. Cal. Apr. 2, 2011) .............................. 24

*Schilling v. Schmidt Baking Co.*,
  876 F.3d 596 (4th Cir. 2017) ............................................................. 6

*Senne v. Kan. City Royals Baseball Corp.*,
  2022 U.S. Dist. LEXIS 45932 (N.D. Cal. Mar. 15, 2022)........................ 16

*Sweet v. United Parcel Serv., Inc.*,
  2010 WL 11507624 (C.D. Cal., Oct. 13, 2010).................................... 6

*Travis v. Knappenberger*,
  204 F.R.D. 652 (D. Or. 2001) ........................................................... 21

*Villalpando v. Exel Direct Inc.*,
  2015 U.S. Dist. LEXIS 118065 (N.D. Cal. Sep. 3, 2015) ................ 4, 8, 9

*Wamboldt v. Safety-Kleen Sys.*,
  2008 U.S. Dist. LEXIS 20727 (N.D. Cal. Mar. 17, 2008)................. 5, 8, 10, 11

*Watkins v. Ameripride Servs.*,
  375 F.3d 821 (9th Cir. 2004) ............................................................. 5

*Wilkinson v. High Plains Inc.*,
  297 F. Supp. 3d 988 (D.N.D. 2018).................................................... 6

*Willner v. Manpower Inc.*,
  35 F. Supp. 3d 1116 (N.D. Cal. 2014) ......................................... 15, 16

**Statutes**

26 U.S.C. § 410(b)............................................................................ 18

Labor Code § 226(e)(2)(B)(iii) .......................................................... 13

Labor Code § 226(e)(2)(C) ............................................................... 13

SAFETEA-LU TECHNICAL CORRECTIONS ACT OF 2008, 110 P.L. 244, 122 Stat. 1572,
  1621, 110 P.L. 244, 2008 Enacted H.R. 1195, 110 Enacted H.R. 1195 ................. 5

**Rules and Regulations**

49 C.F.R. § 395.1(e) ..................................................................... 7, 11

49 C.F.R. § 395.3(a)(3)(ii) ................................................................ 7

Cal. Code Regs. tit. 13, § 1212(e) ..................................................... 7

Cal. Code Regs. tit. 8, § 11090(3)(L)(1)............................................. 4

Cal. Code Regs. tit. 8, § 11090(3)(L)(1)-(2)....................................... 7

Cal. Code Regs. tit. 8, § 11090, ¶¶ 11-12 ........................................ 11

California's Meal and Rest Break Rules for Commercial Motor Vehicle Drivers,
  83 Fed. Reg. 67,470 (Dec. 28, 2018) ............................................... 10

Fed. R. Civ. P. 56 ....................................................................................................... 12

Fed. R. Evid. 602 ....................................................................................................... 12

Fed. R. Evid. 901 ....................................................................................................... 12

**Other Authorities**

Bill Memorandum to Assembly Bill 1750, Jun. 24, 1963 ........................................ 14

ICC Policy Statement, 1992 MCC LEXIS 50, 8 I.C.C. 2d 470.............................. 8

Restatement (Second) of Torts § 545 ...................................................................... 21

## I. **INTRODUCTION**

Before the parties have even reached the merits discovery phase of this case, Defendant FedEx Ground Package System, Inc. ("FedEx") moves for summary judgment of the lion's share of Plaintiffs' individual claims. Even where substantial merits discovery has been conducted, parties seeking the drastic relief of cutting off a party's right to present its case to a jury bear the heavy burden of demonstrating the absence of any triable issue of material fact. But summary judgment is even more disfavored where, as here, relevant evidence is yet to be discovered. Yet, even though the parties have not proceeded beyond discovery going to Rule 23 class certification, FedEx seeks to cut off investigation on the merits of Plaintiffs' individual claims to deny them their day in court.

Given the procedural posture of the summary judgment motion, it should come as no surprise that FedEx's arguments lack grounding in the sort of robust merits discovery necessary to establish the absence of a genuine dispute, but rather depend on conclusory declarations and misinterpretations of applicable law and Plaintiffs' claims.

First, FedEx seeks summary judgment of Plaintiff Sterling's overtime and meal and rest period claims based on generalized statements about FedEx's business from a witness who lacks direct knowledge of Mr. Sterling's work; and a "demonstrative exhibit" that he did not prepare and that lacks foundation. This untested and unfounded evidence demands further investigation.

But even taken at face value, FedEx's evidence does not come close to sustaining its burden as to Mr. Sterling's overtime and meal and rest period claims. FedEx's arguments on these claims revolve around the contention that Mr. Sterling drove heavy vehicles, purportedly triggering regulation of his hours-of-service by the Department of Transportation (DOT), and consequent exclusion from protection under California's overtime and meal and rest period laws. Yet, FedEx admits that Mr. Sterling used light vehicles on at least 14% of his workdays for FedEx. Under the weight of authority that FedEx fails to cite, driving light vehicles more than a *de minimis* amount of time takes employees out of the scope of the exemption and makes them eligible for overtime. This is the same conclusion reached by Judge White in the analogous case *Hinds v. Fedex Ground Package Sys.*, 2020 U.S. Dist. LEXIS 259693 (N.D. Cal. June 1, 2020), as to a similar FedEx pickup and delivery driver who had used light vehicles only 1.33% of the time. *Id.* at *13. Likewise, as Judge

White also correctly reasoned, drivers' meal and rest period claims are not preempted by DOT hours-of-service regulations to the extent they drive light vehicles. *Id*. at *25-26.

FedEx also fails to address its own admission that Mr. Sterling comes under an exception to DOT hours-of-service for "short-haul" drivers. Again, drivers are entitled to the protections of California's overtime and meal and rest period laws if they are not subject to DOT hours-of-service regulations. This is a separate and independent reason to deny FedEx's motion as to Mr. Sterling's overtime and meal and rest period claims.

Regardless, Plaintiffs should be able to conduct further discovery into FedEx's unfounded declaration and demonstrative chart, as well as the vehicles Mr. Sterling actually used and the packages he actually transported, before his overtime and meal and rest period claims are adjudicated.

Second, FedEx's motion for summary judgment as to Plaintiffs' inaccurate wage statement claims under Cal. Lab. Code § 226 depends on an outdated and mistaken interpretation of applicable law. FedEx contends that Plaintiffs have failed to show that they were injured, but again fail to address the weight of authority holding that injury is "deemed" from omission of an employer's name and address on a paystub. This authority follows the plain language of the statute following its amendment, effective in 2013. Of note, FedEx does not contend that Plaintiffs have been issued any pay stubs including its company name and address. Nor does FedEx dispute that its uniform policies prohibit drivers from being considered FedEx employees "for any purpose," or contest sworn testimony from Independent Service Providers (ISPs) that they were prohibited by FedEx from listing the FedEx name or address on driver pay statements because of this uniform requirement.

Moreover, even assuming *arguendo* that omission of an employer's name and address cannot alone give rise to an injury, Plaintiffs have provided detailed, persuasive testimony regarding the specific ways they were injured by the omission.

FedEx's next attack on the wage statement claim is to contend that Plaintiffs cannot show that any violations were "knowing and intentional." FedEx again misinterprets the law. A "knowing and intentional" violation merely requires a showing that the defendant knew that the wage statements did not contain the necessary information, not that the defendant knew the omission was unlawful or acted maliciously. Contrary to FedEx's arguments, an employer's good faith belief that it complied

with the law is not a defense to a "knowing and intentional" violation. In any event, it is well-settled that the "knowing and intentional" inquiry is a question of fact reserved for the jury.

Third, FedEx's argument for summary judgment as to the common law causes of action for fraudulent misrepresentation and conversion fundamentally misunderstands Plaintiffs' claims. FedEx contends that Plaintiffs have no basis to complain because FedEx explicitly drafted its employment benefit plans in such a way as to intentionally exclude the drivers from eligibility under the plans. But, Plaintiffs are not seeking benefits under the plans as written. Rather, Plaintiffs are alleging that FedEx misrepresented their employment status to justify writing them out of the plans in the first place. Plaintiffs maintain that this scheme violates the Internal Revenue Code's prohibition against employers like FedEx establishing benefit plans that disproportionally favor highly compensated employees. Given the sheer volume of drivers that FedEx has delivering and transporting its packages, if the FedEx drivers are in fact employees (as Plaintiffs allege they are), then FedEx's decision to write them out of the plans is unlawful because it means that the plans disproportionally benefit highly compensated employees. Plaintiffs are not seeking benefits under the plans, but rather the minimum value of the benefits to which they would be entitled if FedEx did not premise its plans on the misrepresentation that the drivers are not its employees. At a minimum, Plaintiffs should be able to conduct merits discovery regarding this claim.

There is direct precedent supporting Plaintiffs' common law claims and legal theory. In *Gray v. FedEx Ground Package Sys.*, 2014 U.S. Dist. LEXIS 123906 (E.D. Mo. Sep. 5, 2014), a jury returned a verdict in favor of the plaintiffs under an analogous fraudulent misrepresentation claim, based on expert testimony quantifying the minimum value of the benefits denied.

FedEx's contentions with respect to the payroll records and waiting time claims are equally ill-fated, for all the reasons discussed below.

For all these reasons discussed herein, FedEx's motion should be denied.

## II. <u>ARGUMENT</u>

### A. **FedEx's heavy burden to establish that no genuine dispute of material fact exists**

"On a defendant's motion for summary judgment, not only does the movant carry the burden of establishing that no genuine dispute of material fact exists, but the court also views the evidence

in the light most favorable to the non-moving party." *Ironhawk Techs., Inc. v. Dropbox, Inc.*, 2 F.4th 1140, 1159 (9th Cir. 2021) (internal markings and citation omitted). "Because summary judgment is a 'drastic device,' cutting off a party's right to present its case to a jury, the moving party bears a 'heavy burden' of demonstrating the absence of any triable issue of material fact." *Taylor v. First Advantage Background Servs. Corp.*, 207 F. Supp. 3d 1095, 1099 (N.D. Cal. 2016) (quoting *Ambat v. City & Cnty. of San Francisco*, 757 F3d 1017, 1031 (9th Cir. 2014)). Additionally, "summary judgment is disfavored where relevant evidence remains to be discovered." *Jones v. Blanas*, 393 F.3d 918, 930 (9th Cir. 2004); *see also Longwell Textiles v. Matrix Int'l Textile*, 2020 U.S. Dist. LEXIS 189373, at *2 (C.D. Cal. Sept. 4, 2020) ("In such cases, summary judgment is only appropriate where additional discovery 'would be 'fruitless' with respect to the proof of a viable claim.'") (citing Jones, 393 F.3d at 930 and *Klingele v. Eikenberry*, 849 F.2d 409, 412 (9th Cir. 1988)). Defendant fails to meet its heavy burden for the reasons discussed below.

**B.      Plaintiff Sterling does not fall under the Motor Carrier Exemption to California's overtime law.**

"Employers have the burden of proving that an employee is exempt from federal and state overtime pay requirements." *Hill v. R+L Carriers, Inc.*, 690 F. Supp. 2d 1001, 1005 (N.D. Cal. 2010). "In order to ensure that employees receive maximum coverage under the FLSA and Wage Order No. 9, exemptions are construed narrowly against the employer asserting their applicability, and the employer carries the burden of proof demonstrating that an exemption applies." *Mowdy v. Beneto Bulk Transp.*, 2010 U.S. Dist. LEXIS 161409, at *24 (N.D. Cal. July 7, 2010).

FedEx's argument for summary judgment of Plaintiff Sterling's overtime claim depends on application of one such exemption—known as the "Motor Carrier" exemption—whereby "employees whose Hours of Service are regulated by the DOT are exempt from California's overtime law." *Villalpando v. Exel Direct Inc.*, 2015 U.S. Dist. LEXIS 118065, at *102 (N.D. Cal. Sep. 3, 2015) (citing Cal. Code Regs. tit. 8, § 11090(3)(L)(1)). "The California Exemption is construed narrowly and the burden is on the employer to prove it is entitled to the exemption." *Id.*; *see also Cardenas v. UPS*, 2010 U.S. Dist. LEXIS 134269, at *18 (C.D. Cal. Dec. 9, 2010) (quoting *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 396 (1960) for the proposition that "[t]he MCA exemption is to be

construed narrowly against employers and applies only to those falling 'plainly and unmistakably within [the] terms and spirit' of the exemption.").

As FedEx points out, the DOT regulates the hours of service of only those drivers: (1) using vehicles with a Gross Vehicle Weight Rating (GVWR) of 10,001 pounds or more (2) to transport goods in interstate commerce. FXG Mtn. (Dkt. 372) at 15:15-21. FedEx fails to carry its burden as to both of these necessary elements with respect to Plaintiff Sterling. For this reason, Mr. Sterling is entitled to the protections of California's overtime law.

### 1. FedEx admits that Plaintiff Sterling's work with light vehicles was more than de minimis, which triggers his entitlement to overtime protections.

FedEx admits that Mr. Sterling drove vehicles under 10,001 pounds at least 14% of the time, but nonetheless contends that he still comes under the Motor Carrier exemption because he allegedly often drove vehicles weighing over 10,000 pounds.

However, FedEx fails to address the exception to the Motor Carrier exemption for drivers whose work is defined "in whole or in part" as that of a driver who performs duties on motor vehicles weighing 10,000 pounds or less. *See Hinds v. Fedex Ground Package Sys.*, 2020 U.S. Dist. LEXIS 259693, at *13 (N.D. Cal. June 1, 2020) (citing SAFETEA-LU TECHNICAL CORRECTIONS ACT OF 2008, 110 P.L. 244, 122 Stat. 1572, 1621, 110 P.L. 244, 2008 Enacted H.R. 1195, 110 Enacted H.R. 1195). Individuals who come under this exception for lighter vehicles are entitled to overtime protections because they do not fall within the Motor Carrier exemption. *See id*.

Numerous courts have held that this exception applies to drivers who use vehicles weighing under 10,001 pounds more than a "*de minimis*" amount. *See, e.g., id*., at *17-*20; *Oddo v. Bimbo Bakeries U.S.A., Inc.*, 391 F. Supp. 3d 466, 470 (E.D. Pa. 2019)[1]; *McMaster v. E. Armored Servs., Inc.*, 780 F.3d 167, 169-72 (3d Cir. 2015); *Schilling v. Schmidt Baking Co.*, 876 F.3d 596, 601 (4th

---

[1]Herein, Plaintiffs cite to cases interpreting the federal Motor Carrier exemption, which are "instructive" and "provide reliable authority" for interpretation of the California exemption. *See Watkins v. Ameripride Servs.*, 375 F.3d 821, 825 n.2 (9th Cir. 2004); *Antemate v. Estenson Logistics, LLC*, 2017 U.S. Dist. LEXIS 184502, at *10-11 (C.D. Cal. Nov. 7, 2017). Moreover, as this Court has held, "the California motor carrier exemption is narrower" than the federal exemption, and therefore where the federal exemption does not apply, the California exemption "cannot apply, either." *Wamboldt v. Safety-Kleen Sys.,* 2008 U.S. Dist. LEXIS 20727, at *23, *30 (N.D. Cal. Mar. 17, 2008) (Hamilton, J.).

Cir. 2017); *Garcia v. W. Waste Servs., Inc.*, 969 F. Supp. 2d 1252, 1260 (D. Idaho 2013); *Wilkinson v. High Plains Inc.*, 297 F. Supp. 3d 988, 995 (D.N.D. 2018); *Berry v. Best Transp., Inc.*, 2018 U.S. Dist. LEXIS 216598, at *21 (E.D. Mo. Dec. 27, 2018); *Byers v. Care Transp., Inc.*, 2015 U.S. Dist. LEXIS 128111, at *27 (E.D. Mich. Sep. 24, 2015); *Bedoya v. Aventura Limousine & Transp. Serv.*, 2012 U.S. Dist. LEXIS 128826, at *10 (S.D. Fla. Sep. 11, 2012); *Childress v. Ozark Delivery of Mo. L.L.C.*, 95 F. Supp. 3d 1130, 1137 (W.D. Mo. 2015).[2]

In the analogous case of *Hinds v. FedEx*, Judge White held that FedEx failed to demonstrate that a very similar Pickup and Delivery driver fell within the California Motor Carrier exemption, despite evidence taken in the light most favorable to the plaintiff that she used small vehicles during only 1.31% of her workdays. *Hinds*, 2020 U.S. Dist. LEXIS 259693, at *20. The Court reasoned that based on applicable law, using light vehicles on 1.31% of workdays amounted to "more than a *de minimis* amount of work on small vehicles" and therefore FedEx had "not met its burden to show [the plaintiff] falls within the MCA exemption." *Id.*; *see also, e.g.*, *Oddo, Inc.*, 391 F. Supp. 3d at 474 (finding that *de minimis* threshold for light vehicles exception satisfied by driving light vehicles 1% or more of the time).

Here, FedEx admits that Mr. Sterling used light vehicles on at least 14% of his workdays, which exceeds the *de minimis* standard under applicable law. *See id.* FedEx's evidence also shows that Mr. Sterling had long stretches in which he drove almost exclusively light vehicles. *See, e.g.*, Exh. D to Means Decl. (Dkt. 374-4) at pp. 1-4 (records showing that Mr. Sterling drove vehicles with a GVWR under 10,001 pounds on all but two workdays from 4/6/2015 to 11/25/2015). Just as in *Hinds*, FedEx fails to meet its burden under the Motor Carrier exemption because Mr. Sterling drove

_____

[2] FedEx relies on *Sweet v. United Parcel Serv., Inc.*, 2010 WL 11507624 (C.D. Cal., Oct. 13, 2010), an unreported decision available only on Westlaw, for the inverse proposition that the Motor Carrier exemption is triggered merely by drivers using heavy vehicles more than a *de minimis* amount. *Sweet* did not address the light vehicles exception to the Motor Carrier exemption and is not instructive here. FedEx's only other authority on this point, *Robinson v. FedEx Ground Package System, Inc. et al*, Case No. RG17854521 (Cal. Sup. Ct. 2022), submitted by FedEx as notice of recent authority. (Dkt. 383-1), is easily distinguished with respect to Mr. Sterling because the undisputed facts in that case demonstrated that the plaintiffs there "drove vehicles with a GVWR of less than 10,001 pounds only a *de minimis* amount of time (i.e., less than 1%)." *Cf. id.* at p. 4. *Robinson* also did not address the numerous cases holding that the light vehicles exception to the motor carrier exemption applies to drivers who use vehicles weighing under 10,001 pounds more than a "*de minimis*" amount. *Cf. id.*

light vehicles more than a *de minimis* amount. Accordingly, Mr. Sterling is entitled to the protections of California's overtime law.

### 2. Plaintiff Sterling comes under an exemption to Hours-of-Service Regulations for "short-haul" drivers, which entitles him to the protections of California's overtime law.

As FedEx concedes, drivers who are not subject to DOT hours-of-service regulations are entitled to the protections of California's overtime law. *See* D's Mtn. at 15:15-21. Both federal and California law have specific exemptions from hours-of-service regulations for "short-haul" drivers. 49 C.F.R. § 395.1(e) (applies to drivers who do not leave a 150 air-mile radius of their normal work reporting location); Cal. Code Regs. tit. 13, § 1212(e) (100 air-mile radius); *Int'l Bhd. of Teamsters, Local 2785 v. Fed. Motor Carrier Safety Admin.*, 986 F.3d 841, 853 (9th Cir. 2021) (reasoning that drivers in prior case "worked exclusively in California as short-haul drivers and were thus not even 'covered by . . . federal hours-of-service regulations.'") (citation omitted); *Dilts v. Penske Logistics, LLC*, 769 F.3d 637, 648 n.2 (9th Cir. 2014) ("Plaintiff drivers work on short-haul routes and work exclusively within the state of California. They therefore are not covered by other state laws or federal hours-of-service regulations…"); *Delgado v. Lincoln Transp. Servs. Inc.*, 2019 U.S. Dist. LEXIS 221795, at *9 (C.D. Cal. Dec. 27, 2019).

Indeed, the federal and state regulations explicitly exempt "short-haul" drivers from the requirements to log their hours-of-service and maintain records of hours-of-service. 49 C.F.R. § 395.1(e) (providing that "short-haul" drivers are exempt from requirements of 49 C.F.R. §§ 395.8 and 395.11); Cal. Code Regs. tit. 8, § 11090(3)(L)(1)-(2). "Short-haul" drivers also are exempted from hours-of-service rest time rules other than basic driving time maximums. 49 C.F.R. § 395.3(a)(3)(ii).[3]

---

[3] Even to the extent "short-haul" drivers are subject to some aspects of the "hours-of-service" rules, the California Motor Carrier exemption applies on its face to only those drivers who are subject to "hours-of-service" regulations from which "short haul" drivers are expressly exempted. Cal. Code Regs. tit. 8, § 11090(3)(L)(1)-(2) ("The provisions of this section are not applicable to employees whose hours of service are regulated by: (1) The United States Department of Transportation Code of Federal Regulations, Title 49, Sections **395.1 to 395.13, Hours of Service of Drivers**, or; (2) Title 13 of the California Code of Regulations, subchapter 6.5, Section 1200 **and the following sections, regulating hours of drivers**.") (emphasis added). The plain statutory language does not reach drivers who are subject to only some hours-of-service regulations.

Here, FedEx admits that its Pickup and Delivery drivers such as Mr. Sterling come under the "short-haul" exemption, except for a limited subset who "are Death Valley and the different locations that are a lot longer of a trip than your typical California route…" Exh. 1,[4] Tangi 30(b)(6) Dep. II at 40:18-42:2; *see also id.* at 46:14-21 (agreeing that short-haul drivers on the pickup-and-delivery side may not need to comply with the hours-of-service requirements). There is no evidence indicating that Mr. Sterling drove a route in Death Valley or made trips that took him out of a 100 air-mile radius of the FedEx locations where his routes originated. On the contrary, Mr. Sterling testified that his work was local in nature and that he did not have to drive to Death Valley. *See, e.g.,* Exh. 2, Sterling (Named P) Dep. at 118:8-22, 167:10-19, 64:9-19; Declaration of Kevin Sterling ("Sterling Decl.") ¶¶ 3, 7, 9, 11, 12, 14, 16, 18, 19, 21. Accordingly, Mr. Sterling was a "short-haul" driver exempt from hours-of-service requirements and entitled to the protections of California's overtime law.

### 3. FedEx fails to carry its burden to demonstrate that Plaintiff Sterling transported goods in interstate commerce.

"Whether transportation is interstate or intrastate is determined by the essential character of the commerce, manifested by shipper's fixed and persisting transportation intent at the time of the shipment, and is ascertained from all of the facts and circumstances surrounding the transportation." *Villalpando*, 2015 U.S. Dist. LEXIS 118065, at *103 (N.D. Cal. Sep. 3, 2015) (quoting *S. Pac. Transp. Co. v. I.C.C.*, 565 F.2d 615, 617 (9th Cir. 1977)); *see also Wamboldt v. Safety-Kleen Sys.*, 2008 U.S. Dist. LEXIS 20727, at *33 (N.D. Cal. Mar. 17, 2008) (Hamilton, J.) (denying summary judgment on analogous overtime claim and reasoning that "the issue whether deliveries are truly interstate in nature is fundamentally a factual one."). Goods are not transported "in interstate commerce" during an intrastate journey unless they are in the "practical continuity of movement" across state lines. *Id.* The "practical continuity of movement" of goods is assessed under a multi-factor test that evaluates whether the shipper has a "fixed and persistent intent" that shipments continue in interstate commerce. *Id.* at *104 (citing ICC Policy Statement, 1992 MCC LEXIS 50, *1, 8 I.C.C. 2d 470).

---

[4] Unless otherwise noted, all exhibits cited herein are attached to the Declaration of Nathan Piller in Opposition to FedEx Ground's Motion for Summary Judgment.

Here, FedEx concedes that Mr. Sterling drove exclusively in California and never transported goods across state lines. FXG Mtn. at 16:19-21. Nevertheless, FedEx maintains that he transported goods "in interstate commerce" because he purportedly "picked up and delivered packages that originated in or had final destinations in other states." *Id.* FedEx's only evidence for this contention is a generic assertion from its Senior Manager of Business Development Solutions that "[b]ecause FedEx Ground operates throughout the United States, a substantial amount of the packages picked up, delivered, or otherwise transported in California either originated from or have a final destination in other states." FXG Mtn. at 16:19-21 (citing Means Decl. (Dkt. 374) at ¶ 4.). This conclusory statement merely describes FedEx's operations generally, rather than providing any evidence specific to the goods transported by Mr. Sterling. FedEx fails to identify a single package picked up or delivered by Mr. Sterling that "originated" or had a "final destination" outside California. Nor does FedEx offer any evidence of the shipper's intent with respect to packages transported by Mr. Sterling.

FedEx's evidentiary showing is even barer than that offered by the defendant in *Wamboldt*, 2008 U.S. Dist. LEXIS 20727 (Hamilton, J.), where this Court denied summary judgment for the employer despite evidence that some material picked up by drivers was pre-routed for ultimate transport to specifically identified locations outside of California. *Cf. id.* at *32. As in *Wamboldt*, there is "a material dispute of fact as to the ultimate 'character' of the shipments that [Mr. Sterling] was delivering, and even more significantly, as to whether the deliveries can properly be 'characterize[d] … as within the 'practical continuity of interstate movement'." *Id.* at *33 (citations omitted); *see also Villalpando*, 2015 U.S. Dist. LEXIS 118065, at *111 (denying summary judgment on overtime claim based on analogous evidentiary gaps regarding whether intrastate deliveries were made in the practical continuity of interstate movement). FedEx's motion as to Mr. Sterling's overtime claim should be denied for this reason alone.

### 4. At a minimum, Plaintiff Sterling is entitled to the protections of California's overtime laws on workdays when he drove light vehicles.

Even assuming *arguendo* that Mr. Sterling was subject to the hours-of-service regulations on workdays when he drove heavy vehicles, he nevertheless would be entitled to overtime protections on days when he drove vehicles under 10,001 pounds. As this Court has reasoned: "California has a

daily overtime requirement, whereas federal law provides for a weekly overtime requirement. As such, the logical conclusion to be reached vis-a-vis the California motor carrier exemption is that California more broadly awards overtime for days in which drivers are not covered by the exemption." *Wamboldt*, 2008 U.S. Dist. LEXIS 20727, at *25.  The Department of Labor Standards Enforcement ("DLSE") manual provisions regarding overtime for truck drivers further confirms the principle that time spent performing work other than driving a commercial motor vehicle (*i.e.* one over 10,000 pounds) comes under the protections of the overtime laws. *See id*. (citing DLSE Manual, https://www.dir.ca.gov/dlse/DLSEManual/dlse_enfcmanual.pdf, at Section 50.9.2.1).   Thus, at a minimum, Mr. Sterling is entitled to the protections of California's overtime laws on days when he drove vehicles under 10,001 pounds.

### C.  Plaintiff Sterling's meal and rest period claims are not preempted.

#### 1.  Plaintiff Sterling falls outside the scope of the FMCSA preemption order because he is specifically excepted from Hours-of-Service regulations as a "short-haul" driver.

FedEx's argument for dismissal of Plaintiff Sterling's meal and rest period claims depends on the contention that the claims are preempted by the FMCSA's 2018 preemption order ("FMCSA Order").  The FMCSA Order provides that California's meal and rest break rules are preempted as applied to operators of property-carrying motor vehicles covered by the federal hours-of-service regulations. *Int'l Bhd. of Teamsters, Local 2785*, 986 F.3d at 848 (citing California's Meal and Rest Break Rules for Commercial Motor Vehicle Drivers, 83 Fed. Reg. 67,470 (Dec. 28, 2018)).

But as discussed above, "short haul" drivers such as Mr. Sterling come under an exemption to hours-of-service regulations. *See* Section II.B.2, *supra*. Accordingly, the FMCSA preemption order does not reach Mr. Sterling and he is entitled to the protections of California's meal and rest period laws. *See Delgado*, 2019 U.S. Dist. LEXIS 221795, at *9 ("…the HOS rules—and, therefore, the FMCSA Order—do not apply to local or 'short-haul' motor carriers."); *Arrellano v. XPO Port Service Inc.*, 2021 U.S. Dist. LEXIS 193382, at *7-8  (C.D. Cal., Mar. 30, 2021) (noting that employer defendant "does not dispute that the FMCSA order does not preempt meal and rest break claims that

are brought by short-haul drivers").[5]

### 2. At a minimum, Plaintiff Sterling is entitled to the protections of California's meal and rest period laws on workdays when he drove light vehicles.

Even assuming *arguendo* that the FMCSA Order reaches short-haul drivers such as Mr. Sterling, he nevertheless would be entitled to the protections of California's meal and rest period laws on days when he drove lighter vehicles and therefore was not subject to the hours-of-service regulations. Just like California's overtime laws, the meal and rest period rules obligate compliance on a daily basis. Cal. Code Regs. tit. 8, § 11090, ¶¶ 11-12. Accordingly, the logical conclusion that drivers are entitled to overtime on days when they are not covered by the Motor Carrier exemption applies with equal force to meal and rest period rights on days when drivers are do not fall within the preemptive scope of the FMCSA Order. *See Wamboldt*, 2008 U.S. Dist. LEXIS 20727, at *25. This is the same conclusion reached by Judge White in *Hinds v. FedEx*, as to an analogous FedEx Pickup and Delivery driver. *Hinds*, 2020 U.S. Dist. LEXIS 259693, at *25-26 (meal and rest period claims "are not preempted to the extent Plaintiffs have shown they drove small vehicles, which would take them outside the scope of the FMCSA's HOS regulations.").

---

[5] FedEx relies on a state court of appeal decision holding that short-haul drivers are covered by the FMCSA preemption order because they are subject to some (but not all) hours-of-service rules. *Espinoza v. Hepta Run, Inc.*, 74 Cal. App. 5th 44, 56 (2022). The *Espinoza* case is flawed. First, *Espinoza* misstates the extent to which short-haul drivers are exempted from hours-of-service rules. For instance, *Espinoza* reasons that short-haul drivers "are exempted from one rule"—the DOT rest break requirements—but are subject to all other hours of service rules. *Id.* Not so. Short-haul drivers are exempted from the DOT requirements to log their hours of service in the applicable duty status categories ("driving" "on duty not driving"; "off duty"; and "sleeper berth"), to use compliant electronic logging devices, and to maintain records of such logs for compliance and auditing. *See* Section II.B.2, *supra*. Second, *Espinoza* did not address the fact that the "rules on breaks for truck drivers" from which short-haul drivers are expressly exempt are the very rules that "form the basis for the FMCSA's 2018 decision to preempt California's MRB rules." *Int'l Bhd. of Teamsters, Local 2785*, 986 F.3d at 847. The Agency's rationale for changing its position with respect to preemption of California's meal and rest period laws is that "in 2011 [the FMCSA] had enacted specific break regulations for commercial motor vehicle drivers." *Id.* at 851 (citing FMCSA Order, 83 FR 67470, 67474). It is these same DOT rest break regulations that the agency used to justify its preemptive authority, on the grounds that the rest break regulations govern commercial motor vehicle safety. *Id.* at 852. The DOT rest break regulations that form the basis for preemption do <u>not</u> apply to short-haul drivers. 49 CFR 395.1(e)(1) & (2). For short-haul drivers, there is no incompatibility between DOT break rules and California meal and rest period requirements because there are no DOT break rules for short-haul drivers to begin with.

---

**D.** **Summary judgment of Plaintiff Sterling's overtime and meal and rest period claims is premature before discovery into Defendants' untested and unfounded representations regarding vehicle weight and interstate commerce.**

"Summary judgment should be refused where nonmoving party has not had opportunity to discover information that is essential to its opposition." *Burnside-Ott Aviation Training Center, Inc. v. United States*, 985 F.2d 1574, 1182 (Fed. Cir. 1993). "Implicit in the 'opportunity to respond' is the requirement that sufficient time be afforded for discovery necessary to develop 'facts essential to justify (a party's) opposition' to the motion." *Portland Retail Druggists Ass'n v. Kaiser Found. Health Plan*, 662 F2d 641, 645 (9th Circ. 1981) (quoting Fed.R.Civ.P. 56). Moreover, continuance of a motion for summary judgment under Rule 56(d) to allow further discovery should be granted "almost as a matter of course," absent a lack of diligence by the nonmoving party. *Burlington Northern Santa Fe R. Co. v. Assiniboine and Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767 (9th Circ. 2003).

Here, FedEx's motion as to Plaintiff Sterling's overtime and meal and rest period claims depends on conclusory, untested declaration statements and a demonstrative chart that lacks foundation. For example, FedEx's only evidence regarding the GVWR of the vehicles driven by Mr. Sterling is a "demonstrative exhibit" that contains purported vehicle weight data from FedEx's "Vehicle Management System." Means Decl. (ECF 374) at ¶ 25 & Exhibit D (ECF 374-4). Mr. Means did not himself access the GVWR data or prepare the exhibit, and does not explain how the data was accessed. *Cf. id*. at ¶¶ 23-25. Plaintiffs object to the chart attached as Exhibit D to the Means declaration and the statements associated with that chart (¶¶ 25-27) based upon a lack of foundation, lack of personal knowledge, and best evidence. See Fed. R. Evid. 602, 901; Fed. R. Civ. P. 56(e); *Faulks v. Wells Fargo & Co*., 231 F. Supp. 3d 387, 398 (N.D. Cal. 2017) (citing *Bias v. Moynihan*, 508 F.3d 1212, 1224 (9th Cir. 2007)). Other than general conjecture, there is no specific explanation of what "vehicle type" means or how it was determined for each separate date. Nor is there any foundation for why a particular "vehicle type" is associated with a particular vehicle weight.

Aside from Mr. Means' unfounded statements, FedEx itself has pointed out in this case that the GVWR data may be incomplete in many respects. *See, e.g.*, Kernen Decl. (ECF 305-2) at ¶¶ 13-14; D's Opp. to Class Cert (ECF 304) at 23:3-4. Moreover, Mr. Sterling testifies that he drove light vehicles repeatedly throughout his tenure with FedEx. Sterling Decl. at ¶¶ 8-21. As another example,

Exhibit D to the Means Declaration contains numerous entries indicating that Mr. Sterling used a "DOLLY," which is a small trailer, but Mr. Sterling testifies that he did not drive dollies or other trailers when working for FedEx. Sterling Decl. at ¶ 20. At the very least, this raises a triable issue of fact for the jury as to which evidence is more credible and persuasive.

As discussed above, the extent to which Mr. Sterling drove vehicles weighing less than 10,001 pounds dictates whether and to what extent he is entitled to the protections of California's overtime and meal and rest period laws. Summary judgment is inappropriate before Plaintiffs are afforded the opportunity to conduct adequate discovery into Mr. Means' statements and the provenance and reliability of the underlying data.

Furthermore, FedEx's evidence that Mr. Sterling transported goods "in interstate commerce" is limited to a generic statement from Mr. Means regarding FedEx's operations generally. Means Decl. (ECF 374) at ¶ 4. Summary judgment is premature before discovery into the packages actually transported by Mr. Sterling.

**E.      Summary judgment is inappropriate as to Plaintiffs' inaccurate wage statement claims under Cal. Lab. Code § 226.**

**1.      Plaintiffs are deemed injured as a matter of law by the omission of an employer's name and address.**

Labor Code § 226(a)(8) requires employers to furnish employees with wage statements showing, *inter alia*, "the name and address of the legal entity that is the employer." Under the statute, employees are "deemed to suffer injury" if they "cannot promptly and easily determine from the wage statement alone one or more of the following:… (iii) The name and address of the employer…." Labor Code § 226(e)(2)(B)(iii). "Promptly and easily determine" is defined to mean that "a reasonable person would be able to readily ascertain the information without reference to other documents or information." *See* Labor Code § 226(e)(2)(C).

Plaintiffs' claim under § 226(a)(8) is that, despite being the legal employer and extensive control over Plaintiffs' wages, hours, and working conditions, FedEx uniformly prohibits the Company from being identified as an employer on any wage statement. Indeed, FedEx's standard contracts contain the uniform requirement that drivers are not to be "treated as or considered to be [FedEx's] employees for any purpose…" *See* Ps' Mtn. for Class Cert (Dkt. 281) at 17:1-7 & Exhs. 5

& 6 to Konecky Decl. iso Mtn. for Class Cert., at § 6.2. Service providers further confirmed in deposition that these contracts preclude them from listing FedEx or its address on wage statements. *Id*.

The explicit statutory provision that the "employee is deemed to suffer injury" if subjected to a violation of § 226(a)(8) reflects that clarity on wage statements as to who bears responsibility as an employer is central to the statute's purpose. Indeed, "the Legislature amended the bill to require a name and address of the employer because it would be 'useful when grievances arise out of wages, for unemployment insurance purposes and for income tax and pension purposes.'" *Mejia v. Farmland Mut. Ins. Co.*, 2018 WL 3198006, at *6 (E.D. Cal. June 26, 2018) (citing Bill Memorandum to Assembly Bill 1750, Jun. 24, 1963). Plaintiffs here challenge Defendants' practice of obscuring their status as employers to evade their own statutory duties and mislead the Drivers as to the legal nature of the work relationship. Plaintiffs' wage statement claim thus addresses precisely the sort of employer-obfuscation and resulting harm to employees that Section 226(a)(8) was designed to prevent.

Not surprisingly, the courts have repeatedly interpreted the plain statutory language to hold that injury is presumed where required information is omitted.[6] For example, in *Carbado v. Patacsil*, 248 F. Supp. 3d 1002 (E.D. Cal. 2017), the Court held that, consistent with the plain language of Section 226 as amended, an employee is deemed to have been injured by their employer's failure to provide an accurate wage statement.[7] The Court rejected the argument that deprivation of the required information does not alone give rise to an injury, holding that the plaintiffs had shown injury because

---

[6] *See, e.g., Fodera v. Equinox Holdings, Inc.*, 2020 WL 3961985, at *3-4 (N.D. Cal. July 13, 2020); *Daugherty v. SolarCity Corp.*, 2017 WL 386253, at *21, n.4 (N.D. Cal. Jan. 26, 2017); *Garnett v. ADT, LLC*, 139 F. Supp. 3d 1121, 1131-32 (E.D. Cal. 2015); *Bates v. Leprino Foods Co.*, 2020 WL 6392562, at *6-7 (E.D. Cal. 2020).

[7] FedEx relies on *Ridgeway v. Wal-Mart Stores, Inc.*, 2014 WL 2600326, at *8 (N.D. Cal. June 10, 2014) for the proposition that omission of the required information does not alone give rise to an injury. In 2013, a statutory amendment to Section 226 became effective, and provided that an employee suffers injury when enumerated information, including employer's name and address, cannot be promptly and easily determined from the paystub. 2012 Cal. Legis. Serv. Ch. 844 (A.B.1744). While *Ridgeway* was decided after the 2013 amendment, the Court there explicitly noted that its analysis "relies upon the text of the statute effective from July 21, 2005 to December 31, 2011" – before this very amendment. *Id*. at *7 n. 6. The *Ridgeway* Court quoted *Price v. Starbucks Corp.*, 192 Cal. App. 4th 1136, 1142-43 (2011), but that case pre-dates the 2013 amendment.

they "could not 'promptly and easily determine from the wage statement alone'" the information required by Section 226. *Id*. at 1012.

> **2. Even assuming *arguendo* that injury is not deemed from omission of FedEx's name and contact information from Plaintiffs' paystubs, triable issues exist because the omission caused injury by preventing Plaintiffs from obtaining redress for issues regarding pay, working conditions, and injuries on the job.**

FedEx's policies of mandating that drivers not be considered FedEx's employees "for any purpose" and resulting requirement that its name and contact information be excluded from Plaintiffs' paystubs conveyed to Plaintiffs that FedEx would not take responsibility for issues affecting their pay and working conditions. Instead, FedEx conveyed that it had passed off responsibility for addressing workplace problems to the ISPs. This in turn prevented Plaintiffs from seeking and obtaining redress from FedEx for pay issues and problems with working conditions arising from FedEx's own policies and practices, because FedEx—and not the ISPs—had control over the conditions causing the issues. Sterling Decl. ¶¶ 38-50; Sobaskiewicz Decl. ¶¶ 38-47; Overpeck Decl. ¶¶ 26-29. In addition, the omission of FedEx's name and contact information prevented Plaintiffs Sterling and Sobaskiewicz, who both suffered serious injuries on the job, from seeking redress under FedEx's worker's compensation processes. Sterling Decl. ¶¶ 47-50; Sobaskiewicz Decl. ¶ 46. In both cases, the inability to seek redress from FedEx resulted in injury. *See id*. Plaintiff Sterling, for instance, was saddled with a costly hospital bill after suffering an injury on the job and being denied worker's compensation or other payment from his ISP. Sterling Decl. ¶¶ 49-50. Summary judgment on the issue of injury is inappropriate under the circumstances. *See, e.g.*, *Provine v. Office Depot, Inc.*, 2012 U.S. Dist. LEXIS 93881, at *22 (N.D. Cal. July 6, 2012) ("The Court finds that whether or not plaintiff suffered an injury as a result of receiving allegedly inaccurate wage statements is a disputed question of fact, and therefore that summary judgment on this ground is not appropriate.").

> **3. Wage statement inaccuracies need not be malicious to be knowing and intentional, and it is sufficient that FedEx knew Plaintiffs' paystubs omitted its name and contact information.**

To establish that a wage statement violation was knowing and intentional, a plaintiff "is not required to demonstrate that [the defendant] knew that this conduct, if otherwise proven, was unlawful." *Willner v. Manpower Inc.*, 35 F. Supp. 3d 1116, 1131 (N.D. Cal. 2014). Rather, "a

'knowing and intentional' violation requires a showing that the defendant knew that the facts existed that brought its actions or omissions within the provisions of section 226(a) – i.e., that [the defendant] knew that its wage statements did not contain" required information. *Id.*; *see also Senne v. Kan. City Royals Baseball Corp.*, 2022 U.S. Dist. LEXIS 45932, at *301 (N.D. Cal. Mar. 15, 2022) ("…the failure to comply with the wage statement requirements… was 'knowing and intentional.'…this requirement is met if the employer knew that facts existed that brought its actions or omissions within the provisions of the statute…or, in other words, was aware of the factual predicate underlying the violation...Thus, even if an employer believed, in good faith, that [it was not violating the law], this would not establish that the violation was not knowing and intentional because such a belief amounts to a mistake of law that is not excused under the statute mandating itemized wage statements.") (internal markings omitted) (quoting *Willner*, 35 F. Supp. 3d at 1131 and *Novoa v. Charter Commc'ns, LLC*, 100 F. Supp. 3d 1013, 1028 (E.D. Cal 2015)).

Here, FedEx admits that its own standard policy prohibits drivers from being considered FedEx employees "for any purpose," which prevents FedEx or its address from being listed on the Plaintiffs' paystubs. *See* Section II.E.1-2, *supra*. The violation was therefore knowing and intentional.

> **4.    The questions of whether the inaccuracies in Plaintiffs' paystubs were knowing and intentional, and whether FedEx had a good faith belief it was not violating the Labor Code, are quintessential questions of fact.**

Whether FedEx's wage statement inaccuracies were knowing and intentional, and whether it in good faith believed it was not violating the labor code, are questions of fact inappropriate for resolution on summary judgment. *See, e.g.*, *Willner*, 35 F. Supp. 3d at 1131 ("[T]he determination of whether a violation of Section 226(a) was 'knowing and intentional' is a factual one. Section 226(e)(3) explicitly refers to 'the factfinder' and to the factors that the factfinder may consider in determining whether a violation was knowing and intentional" and "whether the defendant possessed th[e] requisite awareness" that wage statements did not contain certain information "[wa]s a question of fact."); *Novoa*, 100 F. Supp. 3d at 1028 ("…no court has granted summary judgment to an employer, finding that it acted in good faith when it violated Section 226(a).") (internal markings and citation omitted).

**F.** **There are triable issues as to Plaintiffs' payroll records claims because the question of whether FedEx willfully failed to maintain such records is a question of fact that is premature for summary judgment.**

Even accepting FedEx's premise that it should not be held responsible for flaws in the ISPs' payroll records, Plaintiffs are not pursuing a theory of vicarious liability. Rather, Plaintiffs' argument is that FedEx's own policies and procedures cause the creation of inaccurate pay statements and payroll records, as well as other problems including minimum wage, overtime, and meal-and-rest period violations. Moreover, FedEx's violations regarding payroll records are knowing and intentional because (1) it is aware that its name and contact information is not listed on the pay statements; and (2) has notice of any other inaccuracies, given that it conducts payroll audits. *See* Section II.E *supra*. Defendant also provides no authority to support its contention that, as an employer, it would have no obligation to maintain payroll records because it is one of two employers.

**G.** **Summary judgment as to Plaintiffs' payroll records and waiting time claims is inappropriate because the question whether FedEx had a good faith belief it was not violating the Labor Code is a quintessential question of fact.**

As with Plaintiffs' wage statement claims, questions of good faith concerning their payroll record and waiting time claims are factual in nature and inappropriate for determination on summary judgment. *See* Section II.E.4 *supra*.

**H.** **There are triable issues as to Plaintiffs' fraudulent misrepresentation claim.**

**1.** **Plaintiffs are not claiming an entitlement to benefits under the employment benefit plans as written, but rather are seeking common law damages resulting from the misrepresentation FedEx used to unlawfully write them out of the plans in the first place.**

The overarching argument that FedEx makes against Plaintiffs' common law claims is that Plaintiffs have no basis to complain because FedEx explicitly drafted the employment benefit plans in such a way as to intentionally exclude the drivers from eligibility under the plans even if they are found to be employees of FedEx. This is a red herring, however, because Plaintiffs are not seeking benefits under the plans as written. Rather, Plaintiffs are alleging that they are the victims of a scheme by which FedEx misrepresented their employment status to justify writing them out of the plans in the first place. *See* First Amended Complaint (FAC) (Dkt. 371) at ¶¶ 27, 89, 105-109.

In fact, the only reason FedEx can have benefit plans that explicitly write out the drivers from eligibility is by violating the Internal Revenue Code in the way it set up the plans. This is because the Internal Revenue Code prohibits employers like FedEx from establishing benefit plans that disproportionally favor highly compensated employees.[8]  Given the sheer volume of drivers that FedEx has delivering and transporting its packages, if the FedEx drivers are in fact employees (as Plaintiffs allege they are), then FedEx's decision to write them out of the plans is unlawful because it means that the plans disproportionally benefit highly compensated employees.

Plaintiffs are not seeking benefits under the plans, but rather the minimum value of the benefits to which they would be entitled if FedEx did not premise its plans on the misrepresentation that the drivers are not its employees. *See* FAC at ¶¶ 105-109; *see also id.* at p. 45:22-25 (seeking order to "credit Plaintiffs" for the value of benefits "as restitution of damages incurred as a direct and proximate result of Defendants' fraudulent misrepresentation and conversion.").  Indeed, FedEx represents to the general public and to prospective employees that it provides employment benefits to its employees.  *See* Exh. 3, Deposition of Thomas Beaudoin, Managing Director of HR Service Delivery at FedEx Ground and Rule 30(b)(6) designee witness (Beaudoin (PMK) Dep.) at 91:15-25, 92:25-93:9, 93:10-94:25.  Having staked out this commitment, FedEx is accountable to Plaintiffs for the value of at least the minimum benefits it would have had to provide to Plaintiffs had it established lawful benefit plans in the first place.

Again, this is a common law claim, rather than a claim brought for benefits available under the plans as written.  Indeed, it would be futile for Plaintiffs to bring a claim for benefits under the plans as written because FedEx has explicitly written the drivers out of the plans.

There is direct precedent supporting Plaintiffs' common law claims and legal theory.  In *Gray v. FedEx Ground Package Sys.*, 2014 U.S. Dist. LEXIS 123906 (E.D. Mo. Sep. 5, 2014), a jury returned a verdict in favor of the plaintiffs under an analogous fraudulent misrepresentation claim. *Id.* at *2.  There, the plaintiffs "asserted state law damages claims for the value of the employee

---

[8] *See, e.g.,* 26 U.S.C. § 410(b) (providing that a qualified employee retirement plan must "benefit" at least 70% of non-highly compensated employees; or the average benefit percentage for employees who are not highly compensated must be at least 70% of the average benefit percentage of highly compensated employees).

benefits" that FedEx denied to individuals whose employees status it disclaimed. *Id*. The jury returned verdicts for 9 of the 11 plaintiffs and awarded damages for fraudulent misrepresentation. *See* Exh. 4, *Gray* Judgment. As the *Gray* Court observed in connection with FedEx's post-verdict argument, this was a common law claim that did not depend on the plaintiffs being entitled to benefits under the terms of the plan. *Gray*, 2014 U.S. Dist. LEXIS 123906 at *7. In fact, the *Gray* Court held that the plaintiffs were "not before the Court as ERISA participants." *Id*. at *8. The same is true here. That is, Plaintiffs here are seeking common law damages in the amount of the benefits they would have been able to receive if FedEx did not premise the discriminatory benefit plans on the alleged misrepresentation that the drivers are not its employees. *See* FAC at ¶¶ 105-109; *see also id*. at p. 45:22-25.

Plaintiffs are entitled to merits discovery under FRCP 56(d) to gather the evidence to support their claim. For example, Plaintiffs should have an opportunity to conduct merits discovery on the issue of whether they, as drivers, are in fact employees of FedEx. This revolves around factual questions such as the control, direct or indirect, that FedEx has over their wages, hours and/or working conditions. *Martinez v. Combs*, 49 Cal.4th 35, 64 (2010). Similarly, Plaintiffs should have the opportunity to conduct discovery into the question of whether their exclusion from the plans results in the plans failing to benefit at least 70% of non-highly compensated employees. *See* note 8, *supra*. And, Plaintiffs should be able to conduct discovery to determine what the value of the benefits would be to the Plaintiffs if FedEx had lawfully established its benefit plans with the recognition that the drivers are employees that would need to be covered for FedEx not to be unlawfully discriminating in favor of its highly compensated employees. *See, e.g., Cedillo v. Int'l Ass'n of Bridge & Structural Iron Workers*, 603 F.2d 7, 12 (7th Cir. 1979) ("…where the need for discovery in order to obtain the requisite statistical data to substantiate the [discrimination] claims asserted is clear… we hold that entry of summary judgment is inappropriate.").

In contrast, FedEx's argument boils down to the contention that it can prevent Plaintiffs from bringing common law claims based on misrepresentation by using the alleged misrepresentation to create the condition that Plaintiffs are complaining about in the first place. This is circular reasoning. If, as Plaintiffs maintain, FedEx is relying on a misrepresentation about its employment relationship

with the drivers to justify writing employee benefit plans that exclude the drivers from coverage, it should not be allowed to insulate itself from litigation about that very misrepresentation by pointing to the exclusion that was borne out of the same misrepresentation. Rather, Plaintiffs should have an opportunity to conduct merits discovery to prove that FedEx misrepresented its relationship with them. Plaintiffs should further be allowed to conduct discovery to make their case that they would have been entitled to benefits if the plans had been established with the recognition that the drivers would need to be included in the calculation for ensuring that the plans do not discriminate in favor of FedEx's highly compensated employees.

### 2. Plaintiffs allege misrepresentations of fact, and in any event the determination of whether the misrepresentations are of fact or law is itself a question of fact.

It is well-established law in California that "whether a statement is non-actionable opinion or actionable misrepresentation of fact is a question of fact for the jury." *Furla v. Jon Douglas Co.*, 65 Cal.App.4th 1069, 1080-1081 (1998). In *Furla*, the Court held that in granting summary judgment for the defendant, the trial court had erroneously resolved disputed issues as to whether statements made by the defendant were actionable misrepresentations of fact. *Id.* at 1070. Thus, adjudication of whether FedEx's representations that it was not Plaintiffs' employer were misrepresentations of fact or law is an issue for the jury to decide.

Moreover, the misrepresentations at issue are of fact, not of law. Plaintiffs' claims are that FedEx falsely represented that Plaintiffs were not employees of FedEx Ground. A business' representation that a worker is not its employee is a basic statement about whether a person works for that business or not, not a legal analysis or opinion. This is distinct from representations that individuals shall be treated for legal purposes as independent contractors rather than employees, or as exempt employees rather than non-exempt employees, which are legal conclusions.[9]

---

[9] In this connection, FedEx's reliance on *Bernal v. FedEx Ground Package Sys.*, 2015 U.S. Dist. LEXIS 91456 (C.D. Cal. July 14, 2015) is misplaced. In *Bernal*, the court distinguished between two categories of alleged misrepresentations: 1) that plaintiffs were independent contractors of FedEx (when they were actually employees of FedEx), and 2) that plaintiffs were employed by FedEx (when they were actually employed by third party trucking companies). *Id.* at *11. As to the first category, the Court found that the misrepresentations were misrepresentations of law and therefore not actionable as fraud, because "the legal conclusion of whether workers are employees or independent contractors is a question of law." *Id.* at *12. Here, there is no allegation of independent contractor

Furthermore, even representations of a legal conclusion are actionable as fraud where they "include[], expressly or by implication, a misrepresentation of fact" or where the "misrepresentation as to a matter of law is only one of opinion as to the legal consequences of facts." *See Travis v. Knappenberger*, 204 F.R.D. 652, 660 (D. Or. 2001) (quoting Restatement (Second) of Torts § 545). Here, by representing—or misrepresenting—that the drivers are not employees of FedEx, FedEx is representing (or misrepresenting) that it does not have control over the drivers. This is a factual representation. By representing—or misrepresenting—to the drivers that it is not their employer, FedEx is communicating to the drivers that they cannot seek assistance from FedEx to address any problems with their employment or working conditions. FedEx's message is instead that it is somebody else's problem or responsibility—i.e. the ISPs' problem. This is why the misrepresentation is so pernicious: As Plaintiffs allege, FedEx has extensive control over the employment conditions, and should not be passing the buck entirely to the ISPs. Yet, FedEx is representing to the drivers, including Plaintiffs, that they are not supposed to approach FedEx for assistance with any matters that relate to their employment.

Likewise, Plaintiffs maintain that FedEx's representation that Plaintiffs were not FedEx employees is a statement of opinion that Plaintiffs were justified in relying upon "to the same extent as though it were a representation of any other opinion." *See id*. The questions of whether the representations at issue are of fact or opinion rather than law depends on the circumstances, which demand further investigation. *See id*. (denying motion to dismiss fraud claim under Oregon law on the grounds that alleged misrepresentations regarding "the legal status of plaintiffs' employment classification… sufficiently state a fraud claim because whether these were representations of fact or opinion must be determined under the circumstances."); *see also Phelps v. 3PD, Inc.*, 261 F.R.D. 548, 560 n.2 (D. Or. 2009) (certifying fraud claim based on alleged misrepresentation of "the legal status of the plaintiffs' employment classification").

---

misclassification or alleged misrepresentations concerning it. The second category is the opposite of Plaintiffs' allegation in this case that FedEx tells drivers it does not employ them when it actually does. In any event, the Court in *Bernal* did <u>not</u> find the representation that the plaintiffs were employed by FedEx to be a representation of law, but rather that that the facts did not support the allegations. *Id.* at *12. This should come as no surprise, given that this second category of allegations contradicted the central contention in the case that FedEx was a legal employer of the workers there.

The questions of whether the representations at issue are of fact rather than law depends on the circumstances, which demand further investigation. *See id.* (denying motion to dismiss fraud claim under Oregon law on the grounds that alleged misrepresentations regarding "the legal status of plaintiffs' employment classification… sufficiently state a fraud claim because whether these were representations of fact or opinion must be determined under the circumstances."); *see also Phelps v. 3PD, Inc.*, 261 F.R.D. 548, 560 n.2 (D. Or. 2009) (certifying fraudulent misrepresentation claim based on alleged misrepresentation of "the legal status of the plaintiffs' employment classification").

And, even assuming *arguendo* that Defendants' representations are solely of law, there is an exception to the general rule that fraud cannot be predicated upon misrepresentations of law where the party making the misrepresentation has special knowledge of the law. *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 621 (9th Cir. 2004); *Regus v. Schartkoff*, 156 Cal.App.2d 382, 388-389 (1957) ("Where the party expressing the opinion, having had superior means of information, possesses a knowledge of the law and thereby gains an unconscionable advantage over one who is ignorant and has not been in a situation to become informed...the injured party is entitled to relief...on the same ground as if the misrepresentation of law were of a matter of fact."). Here, FedEx – as Plaintiffs' alleged employer and as a multinational corporation represented by sophisticated counsel – had a far superior understanding of the contours of employment law as it might relate to Plaintiffs' employment with FedEx than Plaintiffs did. Decades of litigation over the proper classification of its drivers only adds to this superior knowledge of this area of the law. *See Estrada v. FedEx Ground Package Sys., Inc.*, 154 Cal. App. 4th 1, 15 (2007); *Alexander v. FedEx Ground Package Sys.*, 765 F.3d 981, 997 (9th Cir. 2014). Indeed, FedEx decided to adopt the ISP model on which the alleged misrepresentation is premised in part because of concerns prompted by prior litigation regarding the employee status of its drivers. Exh. 5, Depo. of Todd Taylor, Staff Dir. of Legal Dept. at FedEx Corporation at 75:12-23.

### 3. Justifiable reliance is a triable issue of fact for the jury.

The question of justifiable reliance is a determination of fact that is premature for summary judgment. *See 9826 LFRCA, LLC v. Hurwitz*, 2017 U.S. Dist. LEXIS 70855, at *4 (S.D. Cal. May 9, 2017) (denying motion for summary judgment and citing *Hoffman v. 162 North Wolfe LLC*, 228

Cal. App. 4th 1178, 1194 (2014) for the proposition that justifiable reliance is generally a question of fact for the jury). Indeed, "[e]xcept in the rare case where the undisputed facts leave no room for a reasonable difference of opinion, the question of whether a plaintiff's reliance is reasonable is a question of fact." *Beckwith v. Dahl*, 205 Cal.App.4th 1039, 1067 (2012); *see also Keybank Nat'l Ass'n v. Moses Lake Indus.*, 2010 U.S. Dist. LEXIS 22386, at *6-7 (E.D. Wash. Mar. 11, 2010).

Here, Plaintiffs' accounts of their reliance on FedEx's misrepresentations are more than sufficient to raise a triable issue of fact. Sobaszkiewicz Decl. at ¶¶ 48-53; Sterling Decl. at ¶¶ 51-54; Overpeck Decl. at ¶¶ 30-33. As discussed in the Plaintiffs' declarations, FedEx told the Plaintiffs, their ISPs, and all the other drivers that they were vendors of FedEx rather than employees. As a result, until this lawsuit, Plaintiffs did not seek health, disability or retirement benefits from FedEx. They justifiably relied on FedEx's misrepresentation to believe that doing so would be futile or meaningless. The alleged misrepresentation was so ingrained in the fabric of the scheme, that it would not even occur to drivers like Plaintiffs to seek such benefits directly from FedEx, or to challenge any determination that they might not be entitled to employment benefits from FedEx. Sobaszkiewicz Decl. ¶ 53; Sterling Decl. ¶ 54; Overpeck Decl. ¶ 33. While FedEx may dispute that the Plaintiffs' reliance was justifiable, this is a question for the jury.

**I.** **Summary judgment is inappropriate as to Plaintiffs' conversion claim because there are triable issues as to whether Plaintiffs have a property interest in the minimum value of the benefits to which they would have had access if FedEx had not misrepresented their status and discriminatorily excluded them from coverage.**

FedEx's argument against the conversation claim misinterprets the claim. In essence, FedEx contends that Plaintiffs cannot bring a conversion claim because they have no property interest in benefits that FedEx excluded them from. But as discussed above, Plaintiffs maintain that the only reason FedEx can have benefit plans that explicitly write out the drivers from eligibility is by violating the Internal Revenue Code's prohibition against employers establishing benefit plans that disproportionally favor highly compensated employees. Plaintiffs further maintain that if its workforce of drivers (such as the Plaintiffs here) are employees as a matter of law (as Plaintiffs contend), the same plans would be unlawful, and thus FedEx would have to provide lower compensated employees such as the drivers with benefits to make the plans compliant. Thus,

Plaintiffs have a vested interest in being included in the plans inasmuch as the validity of the plans under the IRS rules depends on the drivers being covered. This is property Plaintiffs should have had all along.

Contrary to FedEx's arguments, the minimum value of these benefits that Plaintiffs would have to receive to bring the plans into compliance is an identifiable sum that can be demonstrated with expert testimony. *See, e.g., Gray*, 2014 U.S. Dist. LEXIS 123906, at *2 (denying FedEx's motion for judgment notwithstanding the verdict on claims seeking the value of employee benefits, as calculated by Plaintiffs' expert witness). In addition, there is no statutory remedy for Defendant's misrepresentation and deprivation of employee benefits, leaving Plaintiffs without a remedy apart from the common law. California Courts have recognized that "if the law of conversion can be adapted to particular types of intangible property and will not displace other, more suitable law, it may be appropriate to do so." *Fremont Indem. Co. v. Fremont Gen. Corp*., 148 Cal. App. 4th 97, 124 (2007); *see also Borgman v. UGA-Ass'n Field Servs.*, No. G060399, 2021 WL 4859820, at *1 (Cal. Ct. App. Oct. 19, 2021). This is just such a situation where the law of conversation should be applied to intangible property interests that are not specifically protected by statute.

## J.     The misrepresentation and conversion claims are not preempted by the Labor Code.

Defendants' argument for preemption of the common law claims depends on the mistaken premise that these claims seek the same remedy and address the same conduct as the wage claims brought under the Labor Code. Not so. The misrepresentation and conversion claims are not wage-and-hour claims, but rather seek the value of the health, retirement, and other employer-sponsored benefits that Plaintiffs were denied as a result of FedEx's misrepresentation and conversion. In contrast, all of FedEx's cases are inapposite because they addressed common law claims seeking wage-and-hour relief for which the Labor Code provides the exclusive remedy, resulting in duplication of claims. *Cf. Santiago v. Amdocs, Inc.,* 2011 U.S. Dist. LEXIS 36111, at *13 (N.D. Cal. Apr. 2, 2011) (conversion claim "based solely on statutory wage and hour violations."); *Madrigal v. Tommy Bahama Grp., Inc.*, 2010 U.S. Dist. LEXIS 121573, at *17 (C.D. Cal. 2010) ("statutorily-based claim for nonpayment of wages" could not be subject of conversion claim); *In re Wal-Mart*

*Stores, Inc.*, 505 F. Supp. 2d 609, 618 (N.D. Cal. 2007) (claim for "earned wages, actual damages, and penalty wages" could not constitute conversion claim); *Green v. Party City Corp.*, 2002 U.S. Dist. LEXIS 7750, at \*13 (C.D. Cal. Apr. 9, 2002) (conversion claim sought "statutory remedies for unpaid overtime wages"). There is no such duplication here, where the common law claims simply are not based on rights created by the Labor Code and do not seek any recovery available under the Labor Code.

**K.**    **Plaintiffs' minimum wage, wage statement, waiting time, UCL, and PAGA claims do not fail where derivative of their overtime, meal-and-rest break, and common law claims.[10]**

Plaintiffs' remaining statutory claims do not fail as derivative of their overtime, meal-and-rest break, and common law claims for the reasons discussed in Sections II.A-J *supra*.

## III.    <u>CONCLUSION</u>

For all the foregoing reasons, FedEx's motion for summary judgment should be denied.

Respectfully submitted,

Dated: June 1, 2022

**SCHNEIDER WALLACE
COTTRELL KONECKY LLP**

By:    <u>/s/ *Joshua Konecky*   </u>
JOSHUA KONECKY
Attorneys for Plaintiffs

---

[10] FedEx contends that Plaintiff Overpeck cannot pursue representative PAGA claims. Plaintiffs do not dispute this. The relevant period for Plaintiff Sterling's and Sobaszkiewicz' PAGA claims is January 29, 2019 to present.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 1, 2022, I electronically filed the foregoing document with the Clerk of the Court using the Court's CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

Dated: June 1, 2022                    /s/ *Joshua Konecky*
                                        JOSHUA KONECKY
                                        SCHNEIDER WALLACE
                                        COTTRELL KONECKY LLP