UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SHANNON SOBASZKIEWICZ, et al.,

Plaintiffs,

v.

FEDEX CORPORATION, et al.,

Defendants.

Case No. 18-cv-07553-PJH

**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 372

Defendant's motion for summary judgment came on for hearing before this court on July 28, 2022. Plaintiffs were represented by Nathan Piller and Joshua Konecky. Defendant FedEx Ground was represented by Jessica Scott and Brandy Cody. Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby rules as follows.

## BACKGROUND

This is a wage and hour suit brought by long-haul and local delivery drivers who provided transportation and delivery services in California for defendants FedEx Ground Package System, Inc. and FedEx Corporation. Dkt. 371, ¶ 40. Plaintiffs allege that FedEx's labor force was previously made up of individual drivers that FedEx hired directly and labeled as independent contractors. Id., ¶ 7. Plaintiffs allege that, following litigation challenging the "independent contractor" classification, FedEx then pivoted to an "independent service provider" ("ISP") model. Id. Plaintiffs allege that the ISPs are "little more than job placement outfits," and that the ISP model is "just a continuation of FedEx's continuing practice of misrepresenting and obscuring the true relationship

between FedEx and its drivers: that of employer-employee." Id.

The complaint was initially filed as a class action, but class certification was denied, leaving twelve causes of action asserted on behalf of individual plaintiffs Shannon Sobaszkiewicz, Herman Overpeck, and Kevin Sterling:

(1) Common Law Fraudulent Misrepresentation;

(2) Common Law Conversion;

(3) Failure to Pay for All Hours Worked, Cal. Labor Code §§ 201, 202, 204, 221-23, and 226.2;

(4) Failure to Provide Meal Periods, Cal. Labor Code §§ 226.7, 512 and 8 Cal. Code Regs. § 11090;

(5) Failure to Provide Rest Periods, Cal. Labor Code § 226.7 and 8 Cal. Code Regs. § 11090;

(6) Failure to Pay Minimum Wages, Cal. Labor Code §§ 1182.11–82.12, 1194, and 1197–97.1;

(7) Failure to Pay Overtime Compensation, Cal. Labor Code §§ 510, 515.5, 1194, and 1198 et seq.;

(8) Failure to Keep Accurate Payroll Records, Cal. Labor Code §§ 1174–74.5;

(9) Failure to Furnish Accurate Wage Statements, Cal. Labor Code § 226;

(10) Waiting Time Penalties, Cal. Labor Code §§ 201–03;

(11) Unfair Competition and Unlawful Business Practices, Cal. Bus. & Prof. Code § 17200, et seq.; and

(12) Private Attorneys General Act violations, Cal. Labor Code § 2698, et seq.

Defendant FedEx Ground (hereafter, "FedEx") has moved for summary judgment on some, but not all, of plaintiffs' claims. The scope of FedEx's motion will be discussed below.

## DISCUSSION

A.   Legal standard

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a

reasonable jury to return a verdict for the nonmoving party. Id. "A 'scintilla of evidence,' or evidence that is 'merely colorable' or 'not significantly probative,' is not sufficient to present a genuine issue as to a material fact." United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1542 (9th Cir. 1989) (citation omitted).

Courts recognize two ways for a moving defendant to show the absence of genuine dispute of material fact: (1) proffer evidence affirmatively negating any element of the challenged claim and (2) identify the absence of evidence necessary for plaintiff to substantiate such claim. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000) ("In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial.")

"Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or by the depositions, answers to interrogatories, and admissions on file, come forth with specific facts to show that a genuine issue of material fact exists." Hansen v. United States, 7 F.3d 137, 138 (9th Cir. 1993). "When the nonmoving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact." Id.

The court must view the evidence in the light most favorable to the nonmoving party: if evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. See Tolan v. Cotton, 134 S. Ct. 1861, 1865 (2014); Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999). However, when a non-moving party fails to produce evidence rebutting defendants' showing, then an order for summary adjudication is proper. Nissan Fire, 210 F.3d at 1103 ("If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment."

B.	Analysis

    1.	Fraudulent misrepresentation (claim 1)

Plaintiffs' fraudulent misrepresentation claim is based on the theory that FedEx "misrepresented their employment status to justify writing them out" of employee benefit plans.  See, e.g., Dkt. 385 at 25.

The elements of a fraudulent misrepresentation claim are: (1) a misrepresentation, (2) knowledge of falsity (scienter), (3) intent to induce reliance, (4) reasonable reliance, and (5) damages.  Lazar v. Superior Court, 12 Cal.4th 631, 638 (1996).

FedEx challenges multiple elements of the fraud claim, but the one the court finds most convincing is the argument that plaintiffs have no evidence of reliance.  Specifically, FedEx argues that plaintiffs did not change their position, to their detriment, in reliance on any alleged misrepresentation.  See Dkt. 386 at 12-13 (citing Goldilocks Corp. of S. Cal., Inc. v. Ramkabir Motor Inn Inc., 26 Fed. App'x 693, 696 (9th Cir. 2002)).

Plaintiffs' response is that reliance is a question of fact for the jury, and they cite their own declarations as being "more than sufficient to raise a triable issue of fact."  See Dkt. 385 at 30-31.  Plaintiffs argue that they "did not seek health, disability, or retirement benefits from FedEx" and "justifiably relied on FedEx's misrepresentation to believe that doing so would be futile or meaningless."  Id. at 31.  Plaintiffs further argue that "the alleged misrepresentation was so ingrained in the fabric of the scheme, that it would not even occur to drivers like plaintiffs to seek such benefits directly from FedEx, or to challenge any determination that they might not be entitled to employment benefits from FedEx."  Id.

FedEx in turn argues that "plaintiffs have never pled or testified that FedEx Ground told them they would get benefits or that they were its employees before they accepted employment with their service providers."  Dkt. 372 at 21.  Citing plaintiffs' own declarations and deposition testimony, FedEx argues that plaintiffs "understood they would not receive benefits from FedEx Ground" and that they did not make any "change in position" in reliance on any alleged misrepresentation.  Id. at 21-22.

4

The record indicates that FedEx is correct in its argument that plaintiffs never actually took any action in reliance on any misrepresentation by FedEx. Plaintiff Sobaszkiewicz stated in her declaration that "I did not feel that I was in a position to seek these benefits," and plaintiff Sterling similarly testified at his deposition that, when he was hired, he did not have any discussion about benefits. See Dkt. 372 at 22 (citing Sobaszkiewicz decl., ¶ 48; Sterling dep., 38:14-16). In short, plaintiffs have not presented any evidence that they took action or changed their position in reliance on FedEx's alleged misrepresentation.

Plaintiffs argue that their legal theory is supported by a district court opinion in Gray v. FedEx, 2014 WL 4386741 (E.D. Mo. Sept. 5, 2014), but that case involved only the narrow issue of ERISA preemption. The Gray court was not presented with the issue of whether plaintiffs had presented sufficient evidence of reliance to overcome summary judgment. Plaintiffs also argue that FedEx's benefit plans violate the Internal Revenue Code, but plaintiffs provide no support for the proposition that the Internal Revenue Code creates a private right of action that can be asserted through a fraud claim.

Thus, because plaintiffs cannot show any evidence of reliance, FedEx's motion for summary judgment is GRANTED as to plaintiffs' first cause of action for fraudulent misrepresentation.

In addition, in its previous order denying plaintiffs' motion for class certification, the court stated that it "finds persuasive the view" taken by other courts in this circuit "that the Labor Code's remedies are intended to be exclusive, and thus preclude common law claims based on the same conduct." Dkt. 362 at 9-11 (citing Santiago v. Amdocs, Inc., 2011 WL 1303395 (N.D. Cal. Apr. 11, 2011); Green v. Party City Corp., 2002 WL 553219 (C.D. Cal. Apr. 9, 2002); Madrigal v. Tommy Bahama Grp., Inc., 2010 WL 4384235 (C.D. Cal. Oct. 18, 2010); In re Wal-Mart Stores, Inc. Wage and Hour Litig., 505 F.Supp.2d 609, 618 (N.D. Cal. 2007)). This provides a further basis for granting FedEx's motion for summary judgment as to plaintiffs' claim for fraud.

2.  Conversion (claim 2)

Plaintiffs' conversion claim is based on the same theory as the fraudulent misrepresentation claim, that FedEx "misrepresented their employment status to justify writing them out" of employee benefit plans. See, e.g., Dkt. 385 at 25.

The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of property, (2) defendant's conversion by a wrongful act or disposition of property rights, and (3) damages. Lee v. Hanley, 61 Cal.4th 1225, 1240 (2015).

FedEx argues that plaintiffs cannot meet the first element of a conversion claim, because they had no right to ownership or possession of the disputed property. FedEx largely relies on a California Supreme Court case, Voris v. Lampert, 7 Cal.5th 1141 (2019). Voris involved an employee seeking unpaid wages via a conversion claim, and the court held as follows:

> The employee's claim is not that the employer has wrongfully exercised dominion over a specifically identifiable pot of money that already belongs to the employee—in other words, the sort of wrong that conversion is designed to remedy. Rather, the employee's claim is that the employer failed to reach into its own funds to satisfy its debt.

7 Cal.5th at 1152-53.

As in Voris, this case involves no "specifically identifiable pot of money that already belongs to the employee." Instead, plaintiffs are arguing that "the employer failed to reach into its own funds to satisfy its debt." Thus, the court concludes that the California Supreme Court's opinion in Voris does indeed foreclose plaintiffs' theory of relief, and thus, FedEx's motion for summary judgment is GRANTED as to plaintiffs' second cause of action for conversion. Additionally, similar to the fraudulent misrepresentation claim, the court previously found persuasive the view that the Labor Code's remedies preclude a conversion claim based on the same conduct, and that finding provides a further basis for granting FedEx's summary judgment motion as to plaintiffs' conversion claim.

3.  Overtime (claim 7), meal breaks (claim 4), and rest breaks (claim 5)

In the parties' papers and at the hearing, the parties grouped these three claims

together because they involve related issues, and the court will do the same in this order.

          a.      Overtime

Starting with the overtime claim, certain categories of employees in California are considered "exempt" from state-law overtime protections. One of these exemptions is commonly referred to as the "motor carrier exemption," and is contained in section 3(L) of Wage Order 9 of the California Industrial Welfare Commission. The motor carrier exemption states that California's overtime pay requirements are "not applicable to employees whose hours of service are regulated by . . . the United States Department of Transportation Code of Federal Regulations." 8 C.C.R. § 11090(3)(L).

FedEx argues that the plaintiffs in this case fall within the scope of the motor carrier exemption, thus making them ineligible to assert a claim for overtime. FedEx argues that the 'hours of service' regulations apply to "all motor carriers and drivers." A "driver" is defined as "any person who operates any commercial motor vehicle." And a "commercial motor vehicle" is in turn defined as a motor vehicle with a gross vehicle weight rating of 10,001 pounds or more (sometimes also referred to as a "heavy vehicle") that is used to transport goods in interstate commerce. See 49 C.F.R. § 390.5, 395. In effect, that results in three elements to determine whether the 'hours of service' regulations apply: (1) a driver, (2) transporting goods in interstate commerce, (3) using a heavy vehicle.

As the alleged employer, FedEx bears the burden of showing that the plaintiffs are exempt from overtime pay requirements. See, e.g., Gieg v. DDR, Inc., 407 F.3d 1038, 1045 (9th Cir. 2005); Hill v. R+L Carriers, Inc., 690 F.Supp.2d 1001, 1005 (N.D. Cal. 2010). Exemptions from overtime provisions are construed narrowly. See Gieg at 1045; Ramirez v. Yosemite Water Co., Inc., 20 Cal.4th 785, 794 (1999).

As a threshold matter, plaintiffs do not appear to dispute that the motor carrier exemption applies to Sobaszkiewicz and Overpeck, both of whom drove heavy vehicles. Thus, FedEx's motion for summary judgment is GRANTED as to Sobaszkiewicz and Overpeck as to their seventh cause of action for failure to pay overtime.

However, as to plaintiff Sterling, the parties dispute whether the motor carrier exemption applies. Specifically, plaintiffs argue that a portion of Sterling's workdays did not involve use of a "heavy vehicle," and thus argue that he was not "regulated by" the 'hours of service' regulations at those times, making him eligible to recover overtime pay.

FedEx acknowledges that plaintiff Sterling drove approximately 14 percent of his routes using a "light vehicle," but argues that the 86 percent of time he spent driving a "heavy vehicle" is sufficient to bring him within the scope of the 'hours of service' regulations, thus making him overtime-exempt under California's motor carrier exemption.

The parties appear to agree on the relative proportion of time that Sterling spent driving "heavy vehicles" (approx. 86 percent) versus the time he spent driving "light vehicles" (approx. 14 percent). However, they disagree about how those percentages affect the "motor carrier exemption" analysis. FedEx's position is that Sterling's time spent driving heavy vehicles is enough to make him subject to the DOT's 'hours of service' regulations (and thus overtime-exempt) at all times, even those times when he was not driving heavy vehicles. See, e.g., Dkt. 372 at 25-27. Plaintiffs, on the other hand, argue that Sterling's time spent driving light vehicles suffices to remove him from the 'hours of service' regulations for all of his shifts, making him eligible for overtime protection even for shifts when he was driving a heavy vehicle. See Dkt. 385 at 13-15. As an alternative, plaintiffs argue that Sterling should be eligible for overtime protection at least on the days when he drove a light vehicle, even if he remains ineligible for overtime on days when he drove a heavy vehicle. See id. at 17-18.

While the parties' papers also raise a dispute over a "de minimis" driving requirement, as well as a dispute over the relative scope of the federal motor carrier exemption versus the scope of California's motor carrier exemption, the court finds that it need not resolve those disputes in order to rule on the present motion. The touchstone of California's motor carrier exemption is whether the driver's "hours of service are regulated by" the Department of Transportation's rules. 8 C.C.R. § 11090(3)(L). And

because those DOT rules apply only to drivers who use "heavy vehicles," it follows that the DOT rules do not apply to drivers of non-heavy vehicles. And because the DOT 'hours of service' rules do not apply to those drivers of non-heavy vehicles, those drivers are outside the scope of California's motor carrier exemption, and thus the drivers are eligible to recover overtime under California law.

Additionally, because California has a daily overtime requirement, a driver may recover overtime for any workdays when he was not covered by the motor carrier exemption. See, e.g., Wamboldt v. Safety-Kleen Systems, Inc., 2008 WL 728884 (N.D. Cal. Mar. 17, 2008) ("California has a daily overtime requirement, whereas federal law provides for a weekly overtime requirement. As such, the logical conclusion to be reached vis-a-vis the California motor carrier exemption is that California more broadly awards overtime for days in which drivers are not covered by the exemption."); see also Hinds v. FedEx Ground, 2020 WL 12048882 at *7 (N.D. Cal. June 1, 2020) ("on those days" when the drivers drove light vehicles, "they were not subject to the DOT's hours of service regulations."). Thus, for the 14 percent of days when Sterling was not driving a heavy vehicle, Sterling does not fall within California's motor carrier exemption, and thus remains eligible to pursue state-law overtime claims.[1]

The parties raise another issue related to Sterling's eligibility to pursue overtime claims, separate and independent from the issue of whether Sterling drove a heavy vehicle. Plaintiffs argue that Sterling fell under a "short-haul exception" to the Department of Transportation's 'hours of service' regulations. The "short-haul exception" applies to drivers who stay within a 150-mile radius of their regular work reporting location, and those drivers need not comply with all of the DOT's 'hours of service' regulations. See 49 C.F.R. § 395.1(e).

The parties did not specifically state which portion of Sterling's workdays are

---

[1] Plaintiffs also argue that Sterling did not transport goods in interstate commerce, but both the Supreme Court and the Ninth Circuit have rejected such a narrow interpretation of the interstate commerce requirement. See, e.g., Southwest Airlines v. Saxon, 142 S.Ct. 1783 (2022); Rittman v. Amazon.com, 971 F.3d 904, 915 (9th Cir. 2020).

allegedly subject to the "short-haul exception." While the complaint's allegations suggest that most, if not all, of Sterling's shifts would qualify as "short-haul" shifts, see Dkt. 371, ¶ 42, the papers offer no additional clarity on the scope of any "short-haul exception" as applied to this case.

Additionally, the parties' papers do not address many key issues surrounding the "short-haul exception." For instance, the "short-haul exception" itself is actually made up of two separate short-haul exceptions, both set forth in 49 C.F.R. § 395(e). In that regulation, section 395(e)(1) sets forth a "short-haul exception" for drivers who stay within a 150-mile radius of their normal work reporting location, while section 395(e)(2) sets forth a standalone exception for drivers who stay within a 150-mile radius of their normal work reporting location and who drive "property-carrying commercial motor vehicles not requiring a commercial driver's license." See 49 C.F.R. § 395(e).

While the two "short-haul exceptions" have many similarities, they are different in at least one key respect relevant to this summary judgment motion. Specifically, short-haul drivers under section 395(e)(1) are taken out of the scope of § 395.8 and § 395.11 of the DOT's 'hours of service' regulations, while drivers covered by section (e)(2) are taken out of the scope of not only §§ 395.8 and 395.11, but also § 395.3(a)(2) of the 'hours of service' regulations.[2] See 49 C.F.R. § 395(e). And as discussed at length above, the applicability of the 'hours of service' regulations is central to resolving the overtime claim and the meal/rest break claims.

Moreover, in addition to the papers' lack of clarity regarding the proportion of Sterling's shifts that potentially fall under the "short-haul exception," and the parties' failure to distinguish between the two separate "short-haul exceptions" set forth in the regulations, there is another hurdle standing in the way of a definitive resolution of this issue. Specifically, there is currently conflicting law regarding the "short-haul exception"

---

[2] While not directly relevant to this motion's outcome, the court additionally notes that short-haul drivers, under either section 395(e)(1) or (e)(2), are also taken out of the scope of § 395.3(a)(3)(ii) of the 'hours of service' regulations. See 49 C.F.R. § 395.3(a)(3)(ii).

and the question of whether short-haul drivers are considered 'covered' by the DOT's 'hours of service' regulations, given that those drivers are subject to only some, not all, of the regulations.  Compare Dilts v. Penske Logistics 769 F.3d 637, 648 n.2 (9th Cir. 2014) ("Plaintiff drivers work on short-haul routes and work exclusively within the state of California. They therefore are not covered by other state laws or federal hours-of-service regulations"); Int'l Brotherhood of Teamsters, Local 2785 v. FMCSA, 986 F.3d 841, 853 (9th Cir. 2021) ("the plaintiffs in Dilts worked exclusively in California as short-haul drivers and were thus not even 'covered by ... federal hours-of-service regulations.'") with Espinoza v. Hepta Run, Inc., 74 Cal. App. 5th 44, 57 (2022) ("the FMCSA's reasoning supports applying preemption to short haul drivers rather than excluding them.").

Because the parties did not present detailed arguments regarding the short-haul exception, and because there is conflicting law on the issue of whether short-haul drivers are eligible to pursue overtime and meal/rest break claims, and because FedEx, as the alleged employer, bears the burden of showing that Sterling is indeed exempt from overtime protections, the court concludes that FedEx's motion for summary judgment must be DENIED as to Sterling's seventh cause of action for overtime, to the extent that Sterling can show that he was either driving a short-haul route and/or driving a light vehicle.

b. Meal/rest breaks

Now, on to the meal/rest break claims.  As mentioned before, these claims involve issues that are substantively similar to the issues involved in the overtime claim, but they have a different legal foundation.  Instead of determining whether plaintiffs are "exempt" from overtime protections, here the analysis focuses on whether plaintiffs' meal/rest break claims are preempted by federal law.

Specifically, FedEx argues that plaintiffs are precluded from pursuing their meal/rest break claims due to a preemption order issued by the Federal Motor Carrier Safety Administration ("FMCSA"), which is part of the Department of Transportation.  The FMCSA issued an order in 2018 stating that "California may no longer enforce the MRB

Rules with respect to drivers of property-carrying CMVs subject to FMCSA's HOS rules." 83 Fed. Reg. 67470-01 (Dec. 28, 2018). To clarify, the "MRB Rules" refer to "meal and rest break rules," and the "FMCSA's HOS rules" refer to the same 'hours of service' rules promulgated by the Department of Transportation, of which the FMCSA is a sub-agency.

As with the motor carrier exemption in the overtime context, the scope of FMSCA preemption is defined by the applicability of the DOT's 'hours of service' rules. If the 'hours of service' rules apply, then the meal/rest break claims are preempted; but if the 'hours of service' rules do not apply, then the meal/rest break claims are not preempted.

With that background, the analysis is the same as in the overtime context. On days when plaintiff Sterling was driving a light vehicle, he was not within the scope of the DOT's 'hours of service' rules (which apply only to heavy-vehicle drivers), which means his meal/rest break claims were not preempted. Thus, summary judgment must be DENIED at least to the extent that Sterling seeks meal/rest break damages for days he drove a light vehicle.

Also, the "short-haul exception" also applies with equal force here as it did in the overtime context. Thus, for the same reasons as already stated, as to whether short-haul drivers are eligible to pursue meal/rest break claims, the court concludes that FedEx has not met its burden to show that Sterling is ineligible to pursue meal/rest break claims.

Thus, FedEx's motion for summary judgment is DENIED as to Sterling's fifth cause of action for meal breaks and sixth cause of action for rest breaks, to the extent that Sterling can show that he was either driving a short-haul route and/or driving a light vehicle. As to plaintiffs Sobaszkiewicz and Overpeck, FedEx's motion is GRANTED as to the meal/rest break claims, as plaintiffs do not dispute that they were subject to the DOT's 'hours of service' rules.[3]

---

[3] To the extent that plaintiffs argue that the FMCSA's preemption order is not retroactive, which would allow some of Sobaszkiewicz's and Overpeck's meal/rest break claims to proceed, the court concludes that the FMCSA has taken the position that the order is indeed retroactive, and in the absence of Ninth Circuit authority holding otherwise, the court will follow the FMCSA's guidance. See Dkt. 388-1 (FMCSA Legal Opinion of Chief Counsel).

### 4. Inaccurate wage statements (claim 9)

Cal. Labor Code § 226(a)(8) requires an employer to provide a wage statement showing "the name and address of the legal entity that is the employer." Plaintiffs argue that FedEx prohibits the ISPs from listing FedEx's name on the wage statements, which violates section (a)(8).

As an initial matter, FedEx's motion points out that plaintiff Overpeck was based in New Jersey for the majority of his employment, and spent only eight weeks working for a California-based ISP. See Dkt. 372 at 32. FedEx argues that Overpeck's claim must be limited to those eight weeks, and plaintiffs do not address this argument in their opposition.

As to the other plaintiffs, the primary argument in FedEx's motion is that plaintiffs have not shown evidence of any injury resulting from the omission of FedEx from the wage statements. The 'injury' requirement has previously been a source of dispute in this case, and was partially addressed in the court's class certification order:

> FedEx argues that plaintiffs, in addition to proving the element that an employer failed to provide an accurate itemized statement, must also prove that (1) the employer's failure to provide the statement was knowing and intentional and (2) the employee suffered injury. Iljas v. Ripley Entm't Inc., 403 F.Supp.3d 793, 802 (N.D. Cal. Aug. 14, 2019) (citing Willner v. Manpower Inc., 35 F. Supp. 3d 1116, 1128 (N.D. Cal. 2014)); see also Frausto v. Bank of Am., Nat'l Ass'n, 2019 WL 5626640, at *10 (N.D. Cal. Oct. 31, 2019).
>
> FedEx cites a case from this court holding that "[t]he injury requirement in section [226(e)] cannot be satisfied simply because one of the nine itemized requirements in section [226(a)] is missing from a wage statement." Ridgeway v. Wal-Mart Stores, Inc., 2014 WL 2600326, at *8 (N.D. Cal. June 10, 2014) (quoting Price v. Starbucks Corp., 192 Cal. App. 4th 1136, 1142–43) (2011)). "By employing the term 'suffering injury,' the statute requires that an employee may not recover for violations of section [226(a)] unless he or she demonstrates an injury arising from the missing information." Id. (quoting Price, 192 Cal. App. 4th at 1142–43) (emphasis in Price); see also Frausto, 2019 WL 5626640, at *11.
>
> FedEx argues that each employee would need to individually prove that they suffered an injury, thereby preventing plaintiffs' proposed class from being able to meet the commonality and/or predominance requirements.

13

> Plaintiffs cite no cases where a court has found their theory of liability under section 226(a)(8) to be viable. In the absence of any such cases, this court concludes that each plaintiff will need to separately prove their injury under section 226(a)(8).

Dkt. 362 at 11-12.

Plaintiffs have argued, and continue to argue that an injury can be 'deemed' as a matter of law from the omission of the employer's name and address. Dkt. 385 at 21-22. Plaintiffs further argue that they have presented evidence of injury, in the form of the plaintiffs being prevented from seeking and obtaining redress from FedEx for workplace violations.

However, despite plaintiffs' assertion that they were prevented from seeking and obtaining redress from FedEx, the practical reality is that the plaintiffs knew who FedEx was and knew how to contact them – the real substance of their injury is not a lack of information, it's a lack of FedEx's willingness to pay certain employment benefits. Accordingly, the court concludes that plaintiffs are not able to prove any injury as the result of FedEx's omission from the wage statement. Thus, with regard to the claim that the wage statements were inaccurate due to the omission of FedEx, FedEx's motion for summary judgment is GRANTED due to lack of injury. However, the parties' papers suggest that this claim is also partially based on the alleged failure to pay overtime and meal/rest breaks, so to the extent that those claims are viable as to plaintiff Sterling, then any wage-statement claims that derive from those claims are also viable, and summary judgment is DENIED to that extent. Additionally, this claim remains in the case to the extent that is based on time that plaintiffs spent (1) preparing their vehicles and (2) in sleeper berths, because FedEx did not move for summary judgment as to those portions of any claim.

FedEx raises one other argument in connection with the wage statement claim; namely, that it had a "good faith belief" that it was not plaintiffs' employer, and because any violation must be "knowing and intentional," FedEx argues that it cannot be liable. FedEx also raises this "good faith" argument in connection with the inaccurate wage

14

statement claim, the failure to maintain payroll records claim, and the waiting time claim.

FedEx's argument largely relies on Arroyo v. Int'l Paper Co., 2020 WL 887771 (N.D. Cal. Feb. 24, 2020). Arroyo involved a very narrow issue regarding pay statement inaccuracy – the plaintiff claimed that the wage statement was "confusing" because it was unclear about whether the 'hours worked' referred to just regular hours, or regular hours plus overtime hours. The plaintiff further claimed that the wage statement was confusing as to the rate of overtime pay. The record further showed that the employer had conducted an internal audit of its wage statement compliance and had made changes to increase clarity. Based on that record, the Arroyo court concluded that there was no evidence of a "knowing and intentional" violation, as required by section 226. Id.; see also Utne v. Home Depot U.S.A., Inc., 2019 WL 3037514 (N.D. Cal. July 11, 2019).

In contrast, in a case involving the broader issue of overtime exemption and whether the wage statements were accurate as to the employees' 'exempt' status, the court concluded that "the 'knowing and intentional requirement' merely requires that the defendant knew 'that facts existed that brought its actions or omissions within the provisions of section 226(a)—i.e., that [the employer] knew that its wage statements did not contain' the required information." Senne v. Kansas City Royals Baseball Corp., 2022 WL 783941 (N.D. Cal. Mar. 15, 2022). A plaintiff is "not required to demonstrate that [the employer] knew that this conduct, if otherwise proven, was unlawful." Id. Ultimately, the Senne court "reject[ed] Defendants' suggestion that a good faith belief that Plaintiffs are exempt would establish that their violation of Section 226 was not 'knowing and intentional.'" Id. (see also Willner v. Manpower Inc., 35 F.Supp.3d 1116, 1129-32 (N.D. Cal. 2014) ("the court concludes that a 'knowing and intentional' violation requires a showing that the defendant knew that facts existed that brought its actions or omissions within the provisions of section 226(a)").

Overall, the court concludes that FedEx's argument is an over-extension of the "knowing and intentional" requirement. The cases cited by FedEx, Arroyo and Utne, both involved narrow disputes over wage statement inaccuracies. As mentioned above,

Arroyo involved confusion over the rate of overtime pay, and Utne involved a narrow dispute over the compensability of pre-shift work time.  The court rejects FedEx's efforts to turn these narrow holdings into a blanket rule immunizing FedEx from liability stemming from the fundamental issue of employee classification.  Accordingly, to the extent that FedEx seeks summary judgment on any claim based on a "knowing and intentional" requirement or a "good faith" defense, that request is denied.

        5.        Failure to maintain payroll records (claim 8)

California Labor Code section 1174.5 requires "[a]ny person employing labor" to "maintain the records" of employment.  FedEx seeks summary judgment on this claim based on the argument that, even if it is a joint employer of plaintiffs, the statute does not specifically require a second, joint employer to maintain its own payroll records.

While there is no specific case law requiring each joint employer to maintain records, the language of the statute imposes the record-keeping requirement on "any person employing labor."  Cal. Lab. Code § 1174.5.  The issue of whether FedEx is a joint employer is still unresolved, but if FedEx were found to be a joint employer, the language of section 1174.5 indicates that FedEx would indeed be required to maintain payroll records.

It may be the case that, even if FedEx is a joint employer, it need not create a separate set of records, but rather it need only share access to the same set of payroll records maintained by its co-joint-employer.  However, in the absence of any authority on the issue, the court concludes that FedEx's motion for summary judgment must be DENIED as to the eighth cause of action for failure to maintain payroll records.

        6.        Waiting time penalties (claim 10)

FedEx moves for summary judgment on this claim solely on the basis of its "good faith" defense.  For the reasons set forth above, that argument is rejected, and FedEx's motion for summary judgment is DENIED as to the tenth cause of action for waiting time penalties.

7. <u>Failure to pay for all hours worked (claim 3) and failure to pay minimum wage (claim 6)</u>

FedEx moves for summary judgment on these claims only to the extent that they are derivative of the claims for benefits, overtime, and meal/rest breaks.  For the same reasons as set forth above, the court grants the motion to the extent that these claims are based on benefits, but denies the motion to the extent the claims are based on overtime or meal/rest break claims on behalf of plaintiff Sterling as to days when he drove light vehicles and/or short-haul routes.  The court further grants the motion to the extent that these claims are based on overtime or meal/rest break claims brought by plaintiffs Sobaszkiewicz and Overpeck.  These claims also remain viable to the extent they are based on time that plaintiffs spent (1) preparing their vehicles and (2) in sleeper berths, because FedEx did not move for summary judgment as to those portions of these claims.

8. <u>UCL (claim 11)</u>

This claim mirrors the two claims in the previous section – FedEx moves for summary judgment only to the extent that this claim is derivative of the claims for benefits, overtime, and meal/rest breaks.  For the same reasons as above, the court grants the motion to the extent the UCL claim is based on benefits, but denies the motion to the extent the UCL claim is based on overtime and meal/rest break claims on behalf of Sterling as to days when he drove light vehicles and/or short-haul routes, and grants the motion to the extent the UCL claim is based on overtime and meal/rest break claims on behalf of Sobaszkiewicz and Overpeck.  And as before, this claim also survives to the extent it is based on time that plaintiffs spent (1) preparing their vehicles and (2) in sleeper berths, because FedEx did not move for summary judgment as to those portions of this claim.

9. <u>PAGA (claim 12)</u>

The parties appear to agree that this claim is now time-limited to alleged violations that occurred on or after January 29, 2019, and further agree that plaintiff Overpeck may no longer pursue representative PAGA claims.  To the extent that FedEx seeks further relief on this claim as derivative of the claims for benefits, overtime, and meal/rest breaks,

the court reaches the same conclusion as above. Namely, the court grants the motion to the extent the PAGA claim is based on benefits, but denies the motion to the extent the PAGA claim is based on overtime and meal/rest break claims as to drivers of light vehicles and/or short-haul routes, and grants the motion to the extent the PAGA claim is based on overtime and meal/rest break claims on behalf of drivers who drove heavy vehicles and/or long-haul routes. And as before, this claim also survives to the extent it is based on time that plaintiffs spent (1) preparing their vehicles and (2) in sleeper berths.

## CONCLUSION

For the reasons set forth above, the court rules as follows:

As to the first cause of action for fraudulent misrepresentation, FedEx's motion for summary judgment is GRANTED as to all plaintiffs.

As to the second cause of action for conversion, FedEx's motion for summary judgment is GRANTED as to all plaintiffs.

As to the third cause of action for failure to pay for all hours worked, FedEx's motion for summary judgment is GRANTED to the extent it is based on benefits claims, GRANTED as to Sobaczkiewicz and Overpeck to the extent this claim is derivative of overtime or meal/rest break claims, and DENIED as to Sterling on the same basis to the extent that he drove light vehicles and/or short-haul routes.

As to the fourth cause of action for failure to provide meal periods, FedEx's motion for summary judgment is GRANTED as to Sobaczkiewicz and Overpeck and DENIED as to Sterling to the extent that he drove light vehicles and/or short-haul routes.

As to the fifth cause of action for failure to provide rest periods, FedEx's motion for summary judgment is GRANTED as to Sobaczkiewicz and Overpeck and DENIED as to Sterling to the extent that he drove light vehicles and/or short-haul routes.

As to the sixth cause of action for failure to pay minimum wage, FedEx's motion for summary judgment is GRANTED to the extent it is based on benefits claims, GRANTED as to Sobaczkiewicz and Overpeck to the extent this claim is derivative of overtime or meal/rest break claims, and DENIED as to Sterling on the same basis to the

extent that he drove light vehicles and/or short-haul routes.

As to the seventh cause of action for failure to pay overtime, FedEx's motion for summary judgment is GRANTED as to Sobaczkiewicz and Overpeck and DENIED as to Sterling to the extent that he drove light vehicles and/or short-haul routes.

As to the eighth cause of action for failure to maintain payroll records, FedEx's motion for summary judgment is DENIED as to all plaintiffs.

As to the ninth cause of action for inaccurate wage statements, FedEx's motion for summary judgment is GRANTED, except to the extent that this claim derives from Sterling's overtime and meal/rest break claims.

As to the tenth cause of action for waiting time penalties, FedEx's motion for summary judgment is DENIED as to all plaintiffs.

As to the eleventh cause of action under the UCL, FedEx's motion for summary judgment is GRANTED to the extent it is based on benefits claims, GRANTED as to Sobaczkiewicz and Overpeck to the extent this claim is derivative of overtime or meal/rest break claims, and DENIED as to Sterling on the same basis to the extent that he drove light vehicles and/or short-haul routes.

As to the twelfth cause of action under PAGA, FedEx's motion for summary judgment is GRANTED as to all claims prior to January 29, 2019, and is further GRANTED except to the extent that the claim is based on overtime and meal/rest break claims as to drivers of light vehicles and/or short-haul routes.

To the extent that plaintiffs seek further discovery under Rule 56(d), the request is DENIED.

The parties shall appear by videoconference for a case management conference on **September 15, 2022**, at **2:00 p.m.**

**IT IS SO ORDERED.**

Dated:  September 1, 2022

    /s/ *Phyllis J. Hamilton*
PHYLLIS J. HAMILTON
United States District Judge

19